# EXHIBIT B

## Servicing Agent Agreement

This Servicing Agent Agreement (the "Agreement") is entered into as of ~~September 6~~, 2011 between Life Partners, Inc. (hereinafter "LPI") and Purchase Escrow Services, LLC, a Texas limited liability company (hereinafter the "Servicing Agent" or "PES").

### Recitals

WHEREAS, LPI is engaged in the business of acting as a "life/viatical settlement provider," and in such capacity arranges for the purchase of life insurance policies for investment on behalf of individual and institutional purchasers (hereinafter "Purchaser(s)"), said sale and purchase of life insurance policies referred to as "life settlements"; and

WHEREAS, in the course of said business, LPI requires the services of an independent Servicing Agent to provide escrow services to facilitate life settlement transactions by holding funds deposited by the Purchasers who wish to purchase life insurance policies, facilitating the closing transaction whereby title to and ownership of the policy is transferred from the previous policy owner (hereinafter "Seller(s)") to LPI as agent for the Purchasers, facilitating the payment of premiums on life settlement policies, and facilitating the payment of policy proceeds to the Purchasers upon the death of insureds of purchased policies; and

WHEREAS, previously Sterling Trust Company/UW Trust Company/UW Administrative Services, Inc. (hereinafter collectively referred to as "UW") provided these services on certain life settlements transacted by LPI; and

WHEREAS, UW has ceased providing such services, and Servicing Agent wishes to replace UW as the servicer of said previously transacted life settlements, subject to the indemnification provisions provided herein.

### Agreement

IT IS THEREFORE AGREED AS FOLLOWS:

### SERVICES OF SERVICING AGENT

1. *Appointment of Servicing Agent:* Servicing Agent is hereby appointed as the replacement servicer for LPI's life settlement transactions pursuant to the terms and conditions of this Agreement to provide the services set forth in this Section 1 pursuant to the terms and conditions of this Agreement. Servicing Agent and its successors or assigns hereby agree to refrain from knowingly honoring any instruction by LPI or any officer, employee, or agent thereof which would dispossess any Purchaser for whom LPI acts as agent of any interest in any policy for which Servicing Agent acts as Servicing Agent, except as (i) allowed under the agreements entered into by the Purchaser, (ii) expressly directed in writing by such Purchaser, or (iii) as ordered by a regulatory or judicial authority.

    a. *Transfer of Account Duties:* On or before the date hereof, LPI has required (by separate written agreement) UW to transfer to Servicing Agent all Purchaser, insured, and seller records, documentation, accounts, and information related to life settlements previously held by UW. From and after the date hereof, Servicing Agent shall be responsible for maintaining and safeguarding the records, documentation, accounts, and information so transferred.

b. *Premium Administration Duties:* The Servicing Agent shall maintain an interest-bearing account (hereinafter the "Premium Escrow Account") to hold funds escrowed for the payment of premiums on each life settlement. The Servicing Agent will be responsible for sub-accounting for each Purchaser's funds held in the Premium Escrow Account for this purpose, including accounting for each life settlement held by each such Purchaser and the amount of their escrowed funds attributable to each such life settlement.

LPI shall be responsible for ensuring that premium notices for each life settlement are sent to LPI by the issuing insurance company. LPI shall instruct the Servicing Agent in a timely manner when such premium payments must be made (which, when possible, shall be no less than thirty (30) days prior to the date the premium payment is due) and the amounts of said premium payments. Servicing Agent shall pay all premiums to the insurance company as timely instructed by LPI. Servicing Agent agrees to pay premiums as they may come due for any policy under this agreement ONLY from the funds escrowed and held by Servicing Agent for that purpose in the Premium Escrow Account. Servicing Agent and its successors or assigns hereby agree to refrain from honoring any instruction by LPI or any officer, employee, or agent thereof directing Servicing Agent to pay any amount from the Premium Escrow Account for any purpose other than to pay premiums due on a policy purchased in a life settlement transaction, either directly to the issuing life insurance company or to reimburse any other party, including LPI, which has already paid to the issuing insurance company any such premium payment, except for the repayment of unused premiums to the Purchasers of the policy or as otherwise directed in writing by a Purchaser or as ordered by a regulatory or judicial authority. Servicing Agent shall have the right, but no duty, to request reasonable evidence that a premium payment has been made to the insurance company prior to honoring any instruction from LPI to make reimbursement for said premium payments from the Premium Escrow Account.

In the event the balance in the Premium Escrow Account for any policy is exhausted or is insufficient to pay the premium(s) due, Servicing Agent agrees to communicate this information to LPI as soon as reasonably possible in order to afford LPI the opportunity to communicate to the Purchaser the obligation to place additional funds in the Premium Escrow Account. LPI shall be solely responsible for notifying the Purchasers of the policy of the depletion of the escrowed premiums and of the amount they must submit to Servicing Agent to replenish the Premium Escrow Account. Servicing Agent shall retain such amounts in the Premium Escrow Account and sub-account for those funds in the same manner as the original escrowed amounts. Subject to force majeure, on each business day during the term of this Agreement Servicing Agent shall provide a written or electronic report to LPI of premium payments made and deposits to and withdrawals from the Premium Escrow Account.

c. *Purchaser Account Changes:* Servicing Agent agrees to make account changes and facilitate transfers and sales of policy interest ownership as instructed by Purchasers through LPI. Upon the reasonable request of Servicing Agent, LPI agrees to procure from the Purchaser(s) requesting such an account change any document or information which is necessary to effect said account change.

d. *Distribution of Death Benefits:* Servicing Agent agrees to be designated as the beneficiary of the life settlement polices for which UW was previously the escrow agent, provided that LPI shall be responsible for ensuring that Servicing Agent is so designated.

However, any designation of Servicing Agent as beneficiary is solely on behalf of the Purchasers of the life settlements. Upon the maturity of the life settlements, LPI shall obtain proof of the death of the insured, the appropriate claim forms from the issuing insurance company, and any other documents necessary to file the claim for death benefits with the insurance company. Upon request, Servicing Agent agrees to provide LPI with any reasonable aid necessary in procuring these documents. Upon receipt of these documents from LPI, Servicing Agent shall promptly file a claim for death benefits with the insurance company. Servicing Agent shall determine according to its records the percentage amount of the death benefits of the life settlement allocable to each Purchaser of the life settlement, and shall provide a report of its determination (the "Benefit Distribution Report") to LPI. Upon receipt of the Benefit Distribution Report, LPI shall reconcile the Benefit Distribution Report with LPI's records relating to the life settlement. LPI shall be responsible for ensuring that the records of LPI and Servicing Agent are reconciled prior to the distribution of the death benefits. After receipt of written confirmation from LPI that it has reconciled the Benefit Distribution Report with its records (the "Reconciliation Confirmation"), Servicing Agent shall then distribute said death benefit to the Purchasers of the life settlement according to the reconciled Benefit Distribution Report and in accordance with this Agreement, subject to any liens, judicial orders, assignments or properly issued instructions from Purchaser that have been filed with Servicing Agent. Servicing Agent shall distribute the death benefit or any other funds payable to a Purchaser pursuant to a life settlement payout within seven (7) days after the receipt of the funds and the Reconciliation Confirmation from LPI. If for any reason LPI cannot reconcile the Benefit Distribution Report with its records or fails to provide the Reconciliation Confirmation, LPI expressly acknowledges and agrees that, in addition to any other remedies it may have hereunder, Servicing Agent may elect to pursue the remedy set forth in Section 9 hereof. Should a life settlement mature prior to the premiums escrowed for such life settlement being exhausted, said remaining premium amounts shall be repaid to the Purchasers along with the death benefit of the life settlement.

2. **Investment of Escrowed Funds**: The Servicing Agent may invest escrowed funds only in a cash or cash equivalent account with an FDIC insured financial institution or such accounts or investments as specifically instructed in writing by the Purchasers through a duly executed AA and/or PFA and shall have no independent investment discretion.

3. **Liability of Servicing Agent:** The duties and obligations of the Servicing Agent pursuant to this Agreement will be determined solely by the provisions of this Agreement and any subsequent written agreements between the parties hereto and the laws of the State of Texas. The Servicing Agent shall only have those duties expressly set forth herein or in other written agreements with LPI, Sellers, or Purchasers with respect to a particular life settlement transaction(s). Servicing Agent is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of the subject matter of any life settlement, documentation or funds related thereto, or any part thereof, or for the form or execution thereof; for the identity or authority of any person executing or depositing it; or for the accuracy, validity, or sufficiency of any instructions, information, or documents submitted to the Servicing Agent. The Servicing Agent shall have no implied duties or obligations to determine or inquire into the happening or occurrence of any event or contingency, or the performance or failure of performance of any of the parties to this Agreement. In the event that the Servicing Agent is required to take certain action upon the occurrence of any event or contingency, the time prescribed for action by the Servicing Agent shall, in all cases, be reasonable time after written notice to the Servicing Agent of the occurrence of such event or contingency. Under no circumstances shall Servicing Agent be

liable for any general or consequential damages or damages caused, in whole or in part, by the action or inaction of LPI, UW, or any of their respective affiliates, members, officers, directors, representatives, agents or employees

4. *Full Indemnification by LPI.* In addition to the limitations set forth above, LPI AGREES TO INDEMNIFY AND HOLD HARMLESS THE SERVICING AGENT, ITS AFFILIATES, AND ITS MEMBERS, OFFICERS, DIRECTORS, EMPLOYEES, AND THEIR REPRESENTATIVES FROM AND AGAINST AND IN RESPECT OF ALL DIRECT AND INDIRECT CLAIMS, LOSSES, LIABILITIES, DAMAGES, COSTS, AND EXPENSES OF ANY KIND AND NATURE (INCLUDING, BUT NOT LIMITED TO, REASONABLE ATTORNEY FEES) INCURRED BY THE SERVICING AGENT BY REASON OF OR RELATING TO (I) ACTIONS OR OMISSIONS BY UW OR LPI OCCURRING PRIOR TO THE EFFECTIVE DATE OF THIS AGREEMENT, OR (II) ACTIONS OR OMISSIONS BY SERVICING AGENT OR LPI OCCURRING ON OR AFTER THE DATE OF THIS AGREEMENT, INCLUDING TO THE EXTENT ANY SUCH ACTION OR OMISSION IS ATTRIBUTABLE TO ANY NEGLIGENCE BY SERVICING AGENT, BUT NOT TO THE EXTENT OF ANY GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF SERVICING AGENT. LPI acknowledges and agrees that the foregoing indemnity is material consideration for Servicing Agent's entry into this Agreement, and Servicing Agent would not be willing to enter into this Agreement absent LPI's covenant to indemnify Servicing Agent on the terms described herein. In the event indemnification is provided by LPI for attorney's fees associated with an action as described above, LPI retains the absolute right to control such litigation including, but not limited to, selection and retention of counsel, prosecution of claims, counter-claims, defenses, waiver, settlement, and all other strategic and tactical decisions made in connection with or effecting such litigation.

5. *Reliance of Servicing Agent:* The Servicing Agent will be entitled to rely upon and will be protected in acting in reliance upon (i) any instructions, directions or information furnished to it in writing by LPI pursuant to the provisions of this Agreement or by any Purchasers or Sellers as set forth in any agreements with them or (ii) upon any written notice, request, waiver, consent, certificate, receipt, authorization, power of attorney or other paper or document which the Servicing Agent in good faith believes to be genuine and what it purports to be. The Servicing Agent is hereby authorized to rely upon the representations of LPI as to its authority to execute and deliver this Agreement, notifications, receipts or instructions hereunder and as to relationships among persons, including persons authorized to receive delivery hereunder. Written notice of any succession or assignment of any interest of any party specified herein shall be given to the Servicing Agent, and shall not be effective until received by the Servicing Agent.

## CONSIDERATION

6. *"Cost Plus" Reimbursement:* In consideration of Servicing Agent's performance of the services set forth in Section 1 above, LPI agrees to compensate Servicing Agent as follows:

    a. LPI shall pay to PES the sum of Sixty Thousand and No/100 Dollars ($60,000.00) annually, due in monthly installments of Five Thousand and No/100 Dollars ($5,000.00) per month, on the first (1st) day of each calendar month; and

    b. LPI shall reimburse Servicing Agent for all documented costs and expenses relating to the administration of Servicing Agent's business to the extent such costs and expenses exceed the revenue earned from such business (the "Reimbursed Costs"); provided, however, the monthly payments set forth in Section 6(a) above shall be excluded from

the calculation of Servicing Agent's revenue for purposes of calculating the Reimbursed Costs. Servicing Agent agrees to provide to LPI, on a monthly basis and within five (5) business days following the close of each calendar month, an itemized statement of all revenue, costs and expenses and an invoice for the Reimbursed Costs, with supporting documentation available upon request. LPI shall pay Servicing Agent the total amount of the Reimbursed Costs on the first day of the second calendar month following the month for which the invoice was provided. (By way of example and for purposes of illustration only, for all revenue, costs and expenses received or incurred by Servicing Agent for the month of January, 2011, Servicing Agent would deliver the statement and invoice for said items to LPI on or before February 7, 2011, and LPI would reimburse the Reimbursed Costs on March 1, 2011.) Failure of LPI to pay the Reimbursed Costs shall be subject to late interest charges of five percent (5%) per annum, imposed on the unpaid balance of any unpaid invoices; and

c. LPI, or as applicable, the individual life/viatical settlement purchasers, shall pay to Servicing Agent the separate Fees as set forth in Section 13 hereunder. For any such which are paid by LPI, PES shall itemize and include such fees in the monthly invoices described in subsection (b) above, and which fees shall be due and payable by LPI as described in subsection (b) above.

## MISCELLANEOUS

7. **Term:** The term of this Agreement shall be one (1) year, to be renewed automatically unless terminated in accordance with Section 21 herein.

8. *Put Right*

   a. The parties agree that the sole member of PES, Hugh Brady (or his assigns) shall have the right to require LPI to purchase all of Hugh Brady's interest in PES (the "PES Ownership Interest") upon twenty (20) days' written notice by PES to LPI, with the twenty (20) day time period to commence upon the date of delivery of such written notice to LPI (the "Put Notice"). On or before the expiration of the twenty (20) day period after the Put Notice, LPI may appoint a person or business entity to purchase the PES Ownership Interest by written notice to PES, provided, however, if no such notice is delivered on or before the expiration of the twenty (20) day period, or if the person or business entity designated by LPI refuses to purchase the PES Ownership Interest, then LPI shall purchase the PES Ownership Interest.

   b. LPI or its appointee shall purchase the PES Ownership Interest for $100.00 (the "Purchase Price").

   c. The closing of the sale and purchase of the PES Ownership Interest pursuant to the put right herein (the "Put Purchase Closing") shall occur within ten (10) days following the expiration of the twenty (20) day period referenced in subsection (a) above. At the Put Purchase Closing, (i) PES will cause Hugh Brady to deliver an assignment of the PES Ownership Interest and PES shall cause to be taken all such other action as may be reasonably necessary in order to transfer the PES Ownership Interest to LPI or its designee, and (ii) LPI will pay PES the Put Purchase Price in immediately available good funds, together with all reasonable attorneys' fees incurred by PES and/or Hugh Brady with respect previous agreements relating to this transaction (including, but not limited

to, a Capital Advance and Cost Reimbursement Agreement) and PES's negotiations with LPI regarding this Agreement.

    d. LPI agrees to indemnify and hold harmless Hugh Brady (or his assigns) for all losses, damages, judgments, claims, expenses, costs and liabilities imposed upon or incurred by or asserted against Hugh Brady, including without limitation reasonable attorneys' fees and expenses, in connection with this Agreement, including specifically the exercise of the Put Right hereunder.

9. *Interpleader:* Notwithstanding anything herein to the contrary, in the event Servicing Agent shall be in doubt as to what action it should take hereunder at any time during the term of this Agreement, Servicing Agent shall have the right, in its sole and absolute discretion, to file an interpleader action in the District Court of McLennan County, Texas, and interplead all documents, instruments and funds held by it into the registry of said Court, and in such event, all costs, expenses and attorney's fees incurred by Servicing Agent in filing such interpleader action shall be paid by LPI. The rights of Servicing Agent under this paragraph are cumulative to all other rights which it may have by law or otherwise.

10. *Joint Prosecution:* From time to time, LPI will find it necessary to bring lawsuits regarding or arising out of life insurance policies purchased in a life settlement transaction, both against the insurance company and other parties; and Servicing Agent, as named beneficiary of these policies, may be an indispensable or necessary party to some or all of these lawsuits. Whenever LPI deems it necessary to bring suit to enforce rights and obligations regarding or arising out of a life insurance policy which is the basis of a life or viatical settlement transaction facilitated by LPI for which Servicing Agent acts as the independent Servicing Agent in said transaction, Servicing Agent authorizes LPI and any attorney representing LPI in said action to represent Servicing Agent and to bring suit on behalf of Servicing Agent solely in Servicing Agent's capacity as independent Servicing Agent if Servicing Agent is an indispensable or necessary party to said cause of action. LPI will be solely responsible for the payment of the institution of all such suits, including all attorneys' fees, and shall provide Servicing Agent with copies of all pleadings in such suits.

11. *Notices:* All notices, requests, demands, or other communications with deliveries required or permitted to be given pursuant to this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally, sent by facsimile transmission, or deposited for mailing by first class mail, postage prepaid, sent either registered or certified mail as follows:

    If to LPI:                         Life Partners, Inc.
                                         204 Woodhew Dr.
                                         Waco, Texas 76712
                                         Fax: (254) 751-1025

    If to the Servicing Agent:      Purchase Escrow Services, LLC
                                         510 North Valley Mills Drive, Suite 505
                                         Waco, Texas 76710
                                         Attn: Bill Helton, Manager

                                         with a copy to:

                                         Purchase Escrow Services, LLC
                                         c/o Hugh Brady

P.O. Box 13132
Austin, Texas 78711-3132
(512)473-0003

or to such other address as may designated in writing by LPI or Servicing Agent from time to time.

In the event the Servicing Agent is authorized or directed under the terms hereof to deliver the subject matter of the escrow, or any part thereof, to any agent or employee of the undersigned, such delivery may be made by depositing the same in the United States mail in an envelope addressed to the person to whom such delivery is to be made at his address as shown in this Paragraph of this Agreement.

12. *Holidays:* Whenever under the terms of this Agreement, the performance date of any provision hereof shall fall on a holiday of the Servicing Agent, the performance thereof on the next successive business day of the Servicing Agent shall be deemed to be in full compliance with this Agreement.

13. *Fees:* The Servicing Agent shall receive fees in accordance with the attached schedule for the administration of the Premium Escrow Account. This schedule shall be subject to change only by mutual, written agreement between the parties hereto, with ninety (90) days written notice. In addition to the fees set forth in the attached schedule, Servicing Agent shall receive a portion of the interest earned on escrowed funds, in a percentage amount as agreed upon between the parties hereto by separate agreement.

14. *Texas Law to Apply:* This Agreement shall be construed in accordance with the laws of the State of Texas, and all obligations of the parties created hereunder are performable in McLennan County, Texas.

15. *Parties Bound:* This Agreement shall be binding upon and insure to the benefit of the parties hereto, and their respective heirs, executors, administrators, legal representatives, successors and assigns.

16. *Legal Construction:* In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable, the remaining provisions shall not be affected thereby, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

17. *Prior Agreements Superseded:* This Agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understanding or written or oral agreements between the parties respecting the within subject matter, save and except those agreements entered into contemporaneously herein and as are referred to herein.

18. *Headings:* The headings used in this Agreement have been included only in order to make it easier to locate the subject covered by each provision and are not used in construing this Agreement.

19. *Counterparts:* This Agreements may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be and original.

20. *Modifications, Amendments, or Assignment:* This Agreement may not be modified, assigned, or amended except by a written instrument signed by the parties hereto and referring specifically to this Agreement. This Agreement will be binding upon and inure to the benefit of any successor of Servicing Agent or LPI, including any entity emanating from either or both parties. Any such successor will be deemed substituted for the party from which it emanated under the terms of this Agreement for all purposes. For this purpose, "successor" means any person, firm, corporation, or other business entity which at any time, whether by purchase, merger, spinoff, or otherwise, directly or indirectly acquires all or substantially all of the stock, securities, assets, or business of the party from which it emanates.

21. *Other Instruments:* Each party shall, upon the request of the other party, execute, acknowledge and deliver any and all instruments reasonably necessary or appropriate to carry into effect the intention of the parties as expressed in this Agreement.

22. *Termination:* This Agreement may be terminated by either party upon no less than thirty (30) days' prior written notice. Upon termination of this Agreement, all funds and related records held in the Premium Escrow Account shall be transferred to a successor Servicing Agent appointed by LPI within six (6) months of the notice of termination. Servicing Agent shall provide such reasonable support and cooperation as is necessary to facilitate such a transfer. The successor Servicing Agent shall assume all duties and obligations of the Servicing Agent and the Servicing Agent shall have no further duties or liability regarding the transferred funds and records and shall have no liability for the acts of the successor Servicing Agent.

*[Remainder of page intentionally left blank; signature page follows.]*

EXECUTED to be effective as of the date first written above.

LIFE PARTNERS, INC.

By: _____
    R. Scott Peden, President
Date: Sept 6, 2011

PURCHASE ESCROW SERVICES, LLC
a Texas limited liability company

By: _____
    Bill Helton, Manager
Date: Sept 6, 2011

Joined into as of this 6th of September, 2011, solely for purposes of Section 8 above:

_____
Hugh Brady

## FEE SCHEDULE

- Resale - $100 per Outgoing or Incoming Purchaser, whichever is greater, capped at $1,000 per resale transaction.

- Account Changes

    - Due to Death of Purchaser - $100 per Purchaser
    - Due to Divorce - $100 per Purchaser
    - Account Re-Registration (change account designation/category) $100 per Purchaser
    - Mandatory Distribution from IRA - $25.00 per Purchaser
    - Name Change Only Due to Marriage or Divorce – no charge

- Cashier's Certified Check - $25.00
- Certified Mail – Return Receipt Requested - $4.40
- Overnight Delivery – Domestic - $18.00
- Overnight Delivery – Foreign - $30.00
- Overnight Delivery Address Changes - $10.00
- Wire Fee – Domestic - $25.00
- Wire Fee – Foreign - $50.00
- Wire Retrieval – Domestic - $25.00
- Rejected Wire - $25.00
- Rejected Wire – Foreign - $50.00
- Refund of Premium Payment requested in error - $10.00
- Foreign Bank Draft - $25.00
- Returned Check - $25.00
- Special Processing (used for miscellaneous special projects requested by LPI) - $50.00/hr.
- Servicing Agent checks on closings – first three checks are free, $10.00 per check thereafter
- Stop Payments - $25.00
- Tax Form Changes for Revised 1099's (due to wrong TIN number provided by Seller, Purchaser, or Beneficiary) - $50.00.