# EXHIBIT E-2

# LIFE PARTNERS®

Life Partners is a registered trademark of Life Partners, Inc.

P.O. Box 20034   Waco, TX 76702      phone: 800-368-5569      fax: 254-751-102      e-mail: dcarr@lifepartnersinc.com

Licensee No._____

# POLICY FUNDING AGREEMENT
# FOR PURCHASES THROUGH A RETIREMENT PLAN

**RETIREMENT PLAN ACCOUNT HOLDER:** _____

**RETIREMENT PLAN CUSTODIAN/TRUSTEE:** _____

**RETIREMENT PLAN ACCOUNT NUMBER (if known – may be completed by Agent):** _____

THIS AGREEMENT is made this _____ day of _____, 20__, by and between LIFE PARTNERS, INC. ("AGENT") and the above-referenced Retirement Plan Account Holder (hereinafter "PURCHASER"), by and through the above-referenced Custodian/Trustee for PURCHASER'S Retirement Plan.  All capitalized terms not expressly herein defined shall have the meaning given them in the Agency Agreement and Special Power of Attorney previously entered into between the parties hereto.

**WHEREAS** AGENT and PURCHASER have entered into an AGENCY AGREEMENT AND SPECIAL POWER OF ATTORNEY whereby AGENT is appointed agent of PURCHASER for the purpose of facilitating a loan(s) from the above-referenced Retirement Plan secured by the proceeds of life settlement policies; and

**WHEREAS** PURCHASER desires and directs, through the above-referenced Retirement Plan Custodian/Trustee, PURCHASER'S Retirement Plan to acquire a note secured by the proceeds of the life settlement policy identified below and PURCHASER has reviewed and approves and adopts the criteria utilized by AGENT to purchase said life settlement policy as agent; and

**WHEREAS** both parties understand and agree that their relationship is one of principal and agent and does not constitute the sale of a security;

**NOW THEREFORE**, in consideration of the mutual covenants herein, the parties agree as follows:

### I.  LOAN FOR POLICY PURCHASE DEPOSIT

1.01.      PURCHASER hereby agrees to lend the viatical/life grantor trust established in connection with the purchase and maintenance of the life settlement policy referenced below the sum of ($_____) _____ (the "Acquisition Cost") from its amounts held in the Escrow Account for the purpose of acquiring a _____**%** interest in the following life settlement policy, and paying all costs related thereto, as collateral for said note.  The note evidencing this loan shall be non-recourse and secured by and payable only from the proceeds of the life settlement policy noted below:

INSURED:                   _____

DEATH BENEFIT:      _____

POLICY NUMBER:    _____

INSURANCE CO:       _____

1.02.      This executed agreement should be sent to AGENT (via overnight mail or delivery service).  AGENT, in turn, shall execute and forward a copy of this agreement along with all other necessary documents to ESCROW AGENT who shall place the above-referenced loan proceeds into an Escrow Account and disburse such funds according to said documents.

### II.  DUTIES OF AGENT

2.01.   AGENT shall perform the following duties:
   a.   review life insurance policies referred to AGENT for purchase as a life settlement policy;
   b.   qualify life settlement policies based upon underwriting criteria and other relevant guidelines pursuant to the above referenced Agency Agreement, arrange for the purchase of the life settlement policy if it meets said criteria and guidelines, and provide information on such transaction to PURCHASER;
   c.   forward this agreement and any other necessary documents to ESCROW AGENT in accordance with Section 1.02 of this agreement;
   d.   prepare and retain a confidential PURCHASER's file containing all data and documents pertaining to the acquisition of said life settlement policy and PURCHASER'S loan relating thereto.

### III. COSTS ASSOCIATED WITH LOAN

3.01.   AGENT'S fees for all services provided in the performance of its duties shall be complete and inclusive in the Acquisition Cost and the interest earned on the escrowed funds if the life settlement policy is held to its maturity.  **Purchaser may, however, be required to pay fees assessed by the Escrow Agent for subsequent transaction changes or other account services requested by Purchaser.**

**3.02.  PURCHASER understands that a portion of the Acquisition Cost will be deposited in a cash or cash equivalent account at JPMorgan Chase Bank, N.A. to be held for the payment of premiums on the life settlement policy.  The calculation of this amount is based on the life expectancy of the insured and the terms of the life settlement policy.  PURCHASER recognizes that he/she will be required to contribute additional amounts to the Premium Escrow Account in the event the amount retained for payment of premiums is exhausted.  In the event PURCHSASER fails or refuses to make such contributions if and when required to do so, it is specifically agreed and acknowledged by the parties that PURCHASER will be deemed to have abandoned all of PURCHASER'S interest in and to the note referred to in this agreement and the life settlement policy collateralizing said note, and all of PURCHASER'S interest in said note and life settlement policy may be offered to any other person in exchange for payment of the outstanding premium contribution amount.**  AGENT makes no representations, and PURCHASER expressly waives any right to disclosure which it may possess, regarding what specific net amount will be accepted by the seller for the sale of the policy or the specific fees which will be received by AGENT or any specific supporting entity including reviewing physicians, laboratories, attorneys, licensees and consultants as well as legal and escrow costs. After purchase, AGENT shall have no further specific duties to PURCHASER, but AGENT shall use commercially reasonable efforts to assist PURCHASER, if requested.

### IV. CONFIDENTIALITY

4.01.  PURCHASER hereby agrees to keep confidential all medical, identifying, and insurance information received in connection with the purchase of this life settlement policy, as set forth in the Agency Agreement and Special Power of Attorney.

### V. MISCELLANEOUS

5.01.  This agreement is further subject to the following provisions:

a.  This agreement shall be construed under the laws of the State of Texas and is binding upon the successors and assigns of the parties hereto. Any monies exchanged under this agreement shall not be deemed valid until collected. Each party hereby represents that it or its representative has the requisite authority to enter into this agreement.

b.  **PURCHASER understands and agrees that the note and the life settlement policy collateralizing said note is of a "buy and hold" nature, that there is no guaranteed liquidity for the note or the life settlement policy and that AGENT offers no buy-back guarantee or assurance that PURCHASER will be able to sell the note or the life settlement policy at a date prior to the maturity of the life settlement policy or that PURCHASER will be able to receive any set amount in the event of such a sale.**

c.  **PURCHASER understands and agrees that he/she has not purchased the right to receive a specific amount of funds in the future, but owns a note secured and payable by the right to receive a discrete percentage of any and all proceeds paid under the terms of the above-referenced life settlement policy.  PURCHASER further understands and agrees that any gain realized from this investment is based on the proceeds paid from the above-referenced life settlement policy and that AGENT has not guaranteed any of the following:  a specific return on investment, a specific amount to be paid to PURCHASER, payment of proceeds by the insurance carrier, or a specific date of death of the insured.**

d.  **PURCHASER hereby agrees not to reveal any identifying, medical, or other confidential information to anyone about any viator, life settlor, or insured which PURCHASER may learn under this agreement, except as necessary to enforce this agreement. PURCHASER further acknowledges that, pursuant to regulations regarding life settlements, only AGENT may contact any viator, life settlor, or insured to determine health status and PURCHASER agrees not to contact any such party unless PURCHASER registers with the appropriate Department of Insurance as a life settlement company. PURCHASER further acknowledges that unauthorized contact with a viator, life settlor, or insured may be a violation of applicable law.**

e.  **PURCHASER hereby acknowledges that he/she has either reviewed the Confidential Case History for the above-referenced life settlement policy or has entered into an agreement and power of attorney giving authority to PURCHASER'S advisor to review and select life settlement policies on behalf of PURCHASER.**

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the date first written above.

**PURCHASER/RETIREMENT PLAN ACCOUNT HOLDER          LIFE PARTNERS, INC.**

_____

_____               _____
Printed or typed name                                                            Corporate Officer

**ADDITIONAL PURCHASER SIGNATURE** (if applicable)

_____

| RETIREMENT PLAN TYPE: |
| --- |
| ☐ Traditional IRA |
| ☐ Roth IRA |
| ☐ SEP IRA |
| ☐ Pension/Profit Sharing/401K |
| ☐ Other_____ |

_____
printed or typed name

v.2.0– February 1, 2011