# United States Bankruptcy Court
## Northern District of Texas

In re:  Life Partners, Inc.   Case No. 15-41995

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY
## FOR CERTAIN FRACTIONAL POSITIONS

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111 (a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(1), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| ASM CAPITAL V, LP | ANDRE SAFFORD |
|---|---|
| Name of Transferee | Name of Transferor |
|  | 148112 |
|  | Account #/Purchaser ID # |

Name and Address where notices to transferee should be sent:

ASM CAPITAL
7600 JERICHO TURNPIKE  SUITE 302
WOODBURY, NY 11797

Scheduled Claim Amount:    $27,804.00

Refers to Fractional Position #    127803
Policy ID #    75839
Policy Face Amount (Death Benefit)    $2,400,000
Sellers % Ownership of Policy    1.706073%

Matured Fund Payout Amt:    $40,945.75

Phone:    (516) 422-7100        Phone:
Last Four Digits of Acct. #:    N/A        Last Four Digits of Acct. #:    N/A

Name and Address where transferee payments should be sent:

ASM CAPITAL
7600 JERICHO TURNPIKE  SUITE 302
WOODBURY, NY 11797

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:    __/s/ Adam S. Moskowitz__        Date: May 17, 2016
    Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine up to $500,000 or imprisonment for up to 5 years, or both.        18 U.S.C. §§ 152 & 3571.

**ASM CAPITAL – LIFE PARTNERS HOLDINGS – MATURED FUNDS PURCHASE AGREEMENT**

**Purchase of Matured Funds.** ANDRE SAFFORD (hereinafter "Seller" or "Holder") with a principal address of 4517 CIMMARON TRAIL GRANBURY, TX 76049, for good and valuable consideration in the sum of XXXXXX (the "Purchase Price"), does hereby absolutely and unconditionally sell, convey, and transfer to ASM Capital, which may include ASM SPV L.P., ASM Capital V, L.P., ASM Insolve, L.P., Sparta Group MA LLC Series 20, and any of its successors, assigns or designees (hereinafter "Purchaser") all of Seller's right, title, benefit and interest in and to any and all of Seller's fractional interests or position, as more specifically set forth as any right to payment due to Seller's ownership percentage ("1.706073%" or "Percentage Owned") in life insurance Policy ID# 75839 ("Policy ID#"), in the face amount of $ $2,400,000 ("Face Amount") with such Seller having a Purchaser ID# of 148112 ("Purchaser ID#") (the "Matured Fund Interest"), sold by  Life Partners, Inc. ("the "Debtor"), which is undergoing bankruptcy proceedings in the United States Bankruptcy Court for the Northern District of Texas(the "Court"), Case No.15-41995 (the "Case"); and such transaction includes any voting rights and any other rights and benefits which may now exist, or come into existence in regards to the Matured Fund Interest, including all cash, securities, instruments and other property, to be paid or issued by Debtor or any other party, directly or indirectly, in connection with or satisfaction of the Matured Fund Interest, including without limitation "cure" amounts related to the assumption of an executory contract and any rights to receive all payments in respect thereof, and all rights to receive interest, penalties, fees, and any damages from any cause of action, litigation or rights of any nature against Debtor, its affiliates, any guarantor or other third party, in Court or any other court of competent jurisdiction which may exist, be paid or issued with respect to and/or in satisfaction of the Matured Fund Interest (the "Recovery"). This Matured Funds Purchase Agreement (the "Agreement") shall be deemed an unconditional purchase of the Matured Fund Interest for the purpose of collection and shall not be deemed to create a security interest. Seller represents the Matured Fund Interest represents a payout amount of not less than $ $40,945.75 (the "Payout Amount").

**Representations; Warranties and Covenants.**   Some of the representations, warranties and covenants contained herein directly relate to such definitions listed below, which come directly from the definitions contained in Debtors Joint Plan of Reorganization of Life Partners Holdings, Inc., ET AL., Dated November 28, 2015. Seller represents, warrants and covenants that, (a) Seller is a "Lending Investor", or a record owner of the Matured Fund Interest used to fund advances under the Debtor's "Matured Funds Facility"; (b) Seller does not owe any "Catch-Up Payment" due on the Matured Fund Interest or any amount owing to Debtor with regard to the Matured Fund Interest, including but not limited to for premiums, platform and/or servicing fees payable to any of the Debtors; (c) Seller does not owe any "Pre-Petition Default Amounts" with regard to the Matured Fund Interest, including but not limited to, for premiums, platform and/or servicing fees payable to any of the Debtors; (d) Seller had not given written notice to Debtor to use any portion of the Matured Fund Interest or any of the Payout Amount to make premium payments or platform and servicing fees due on other policies which Seller has invested (a "Requesting Investor"); (e) Seller owns and has sole title to the Matured Fund Interest free and clear of any and all liens, security interests or encumbrances of any kind or nature whatsoever, including without limitation pursuant to any factoring agreement, and upon the sale of the Matured Fund Interest to Purchaser, Purchaser will receive good title to the Matured Fund Interest; (f) Seller has not previously sold, assigned, transferred, or pledged the Matured Fund Interest, in whole or in part, to any third party; (g) the basis for the Matured Fund Interest is amounts validly due from and owing by the Debtor; (h) the Matured Fund Interest is a valid, undisputed, liquidated, enforceable, and non-contingent Matured Fund Interest against the Debtor for which the Debtor has no defenses and no objection to the Matured Fund Interest has been filed or threatened; (i) Seller has not engaged in any acts, conduct or omissions that might result in Purchaser receiving, in respect of the Matured Fund Interest, proportionately less payments or distributions or any less favorable treatment than other similarly situated Holders; (j) Debtor, or any other third party, has no basis to assert the Matured Fund Interest is subject to any defense, claim or right of setoff, reduction, impairment, Impairment, subordination or avoidance, including preference actions, whether on contractual, legal or equitable grounds; (k) that Seller is not "insolvent" within the meaning of Section 1-201 (23)  of the Uniform Commercial Code or within the meaning of Section 101 (32) of the Bankruptcy Code; and (l) Seller is not an "insider" of the Debtor, as set forth in the United States Bankruptcy Code § 101(31), or a member of any official or unofficial committee in connection with the Case. Seller acknowledges and unconditionally agrees any misrepresentation or breach by Seller may cause Purchaser irreparable harm and accordingly, Purchaser shall be entitled to all available remedies as may be available to Purchaser for any such misrepresentation, breach or threatened breach, including but not limited to the immediate recovery of money damages ("Restitution") including without limitation a "Restitution Payment", as further defined below.

**Execution of Agreement.**   This Agreement shall become effective and valid when (a) Seller executes this Agreement and it is received by Purchaser and; (b) the Agreement is executed by a proper representative of Purchaser.

**Consent and Waiver.**  Seller hereby acknowledges and consents to all of the terms set forth in this Agreement and hereby waives its right to raise any objections thereto pursuant to Rule 3001 of the Rules of Bankruptcy Procedure.

**Matured Fund Interest or Payout Amount Impaired.**  If all or any part of the Matured Fund Interest or Payout Amount is (a) avoided, disallowed, subordinated, reduced, or otherwise impaired, for any reason whatsoever including without limitation a breach of any of the terms or conditions of this Agreement; or (b) the Payout Amount is subsequently scheduled by Debtor or is amended such that all or any portion of the Matured Fund Interest is listed on the Debtor's amended schedule of liabilities in a lesser amount than the Payout Amount (each (a) and (b) an "Impairment"), then Seller, shall make immediate Restitution and repayment of the proportional Purchase Price equal to the ratio of the amount of the Impairment divided by the Payout Amount ("Restitution Payment"), no later than 30 days after receiving notice of such Impairment. Such Restitution Payment shall be made together with interest, calculated at the rate of nine (9%) percent per annum, from the date of Seller's execution of this Agreement until the date that such Restitution Payment is received by Purchaser. For clarity purposes, this paragraph pertains only to the validity of the Matured Fund Interest and Payout Amount and *not* the ultimate Recovery received by ASM. If the Matured Fund Interest and Payout Amount remains the same as listed in the Agreement, the ultimate Recovery received on that Payout Amount does not affect the Seller.

**Notices (including Voting Ballots) Received by Seller; Further Cooperation.**  Seller agrees to immediately forward to Purchaser any and all notices received from Debtor, the Court or any other court or governmental entity or any third party regarding the Matured Fund Interest assigned herein and to take such other action, with respect to the Matured Fund Interest, as Purchaser may request from time to time. More specifically, Seller shall take such further action as may be necessary or desirable to effect the transfer of the Matured Fund Interest and to direct any payments or distributions, or any form of Recovery on account of the Matured Fund Interest to Purchaser, including the execution of appropriate voting ballots, transfer powers and consents at Purchaser's sole discretion.

**Recovery (including Cure Payments) Received or Delayed by Seller.** In the event Seller by its' actions or omissions (including not forwarding proper notices as stated above), (i) receives any interim or final distribution of the Recovery, or any portion thereof, made payable on or after the date of Seller's execution of this Agreement; or (ii) delays or impairs Purchaser's right to Recovery for any reason (each (i) and (ii) a "Delayed Recovery Event"), then Seller agrees to (a) accept any Recovery the same as Purchaser's agent and to hold the same in trust on behalf of and for the sole benefit of Purchaser and shall promptly deliver the same forthwith to Purchaser in the same form received, or in a form reasonably requested by Purchaser, free of any withholding, set-off, claim or deduction of any kind and/or (b) settle or cure the reason for the Delayed Recovery Event (each (a) and (b) a "Settlement") within ten (10) business days of the Delayed Recovery Event (the "Settlement Date"). Seller shall pay Purchaser interest, calculated at the rate of nine (9%) percent per annum of any amount or portion of Recovery that incurs a Delayed Recovery Event, for each day after the Settlement Date until such Recovery is received by Purchaser.

**Governing Law, Personal Jurisdiction and Service of Process.** This Agreement shall be governed by and construed in accordance with the laws of the State of New York, USA, notwithstanding any contrary choice of law that would otherwise apply under the choice of law principles of that or any other jurisdiction. Any action arising under or relating to this Agreement must be brought in a State or Federal court located in New York County or Nassau County, in the State of New York. Seller consents to and confers personal jurisdiction over Seller by any such court and agrees that Purchaser may validly effect service of process upon Seller by mailing a copy of said process to Seller's address set forth hereof in this Agreement. In any action hereunder Seller waives the right to demand a trial by jury.

**Indemnification.** Seller further agrees to reimburse Purchaser for all losses, costs and expenses, including reasonable legal fees at the trial and appellate levels incurred by Purchaser as a result of, in connection with, or related to any (a) Impairment, (b) Seller's breach of this Agreement, including without limitation any misrepresentation by Seller, and/or (c) litigation arising out of or in connection with this Agreement or in order to enforce any provision of this Agreement.

**Miscellaneous.** Seller agrees that this Agreement and all its terms are confidential and may not be disclosed without the prior written consent of Purchaser. Purchaser shall have the right to all remedies including specific performance and other injunctive and equitable relief without a showing of irreparable harm or injury and without posting a bond. Each party expressly acknowledges and agrees that it is not relying upon, any representations, promises, or statements, except to the extent that the same are expressly set forth in this Agreement, and that each party has the full authority to enter into this Agreement and that the individuals whose signatures appear below hereby expressly represent that they have the authority to bind the party for which they sign this Agreement. The parties hereby mutually agree and stipulate that this Agreement is the result of negotiations between the parties and terms hereof are negotiated terms. Accordingly, any rules of interpretation, construction or resolving ambiguity against the drafter that otherwise apply, shall not apply hereto. This Agreement (i) may not be modified, waived, changed or discharged, in whole or in part, except by an agreement in writing signed by the parties; (ii) constitutes the entire agreement and understanding between the parties hereto with respect to the subject matter hereof and (iii) supersedes all prior agreements, understandings and representations pertaining to the subject matter hereof, whether oral or written. Seller hereby acknowledges that Purchaser may at any time resell or assign the Matured Fund Interest, or any portion thereof, together with all right title and interest received by Purchaser in and to this Agreement. Seller shall not assign or otherwise transfer its rights or obligations under this Agreement without the prior written consent of Purchaser. This Agreement shall be binding upon any prospective successor of Seller (whether by operation of law, merger or otherwise) or on any purchaser of all or substantially all of Seller's assets ("Transfer"). In connection with any such Transfer, the purchaser, successor or assignee of Seller shall be bound by the terms and conditions of this Agreement. All representations and warranties made herein shall survive the execution and delivery of this Agreement and any Transfer. This Agreement may be signed in counterparts and by telecopy, or other commonly acceptable form of electronic transmission, each of which shall be deemed an original and all of which taken together shall constitute the Agreement. Failure or delay on the part of Purchaser to exercise any right, power or privilege hereunder shall not operate as a waiver thereof.

**ANDRE SAFFORD ("Seller")**

| | | | |
|---|---|---|---|
| Signature: | /s/   Andre Safford | Telephone: | _____ |
| Print Name/Title: | _____ | Fax: | _____ |
| Date: | 3/25/2016 | E-Mail: | _____ |

**ASM Capital ("Purchaser")**

**7600 Jericho Turnpike - Suite 302, Woodbury, New York 11797**

Adam Moskowitz - Managing General Partner

| | | | |
|---|---|---|---|
| Signature: | /s/ Adam Moskowitz | Telephone: | (516) 422-7100 |
| Date: | 3/25/2016 | Fax: | (516) 422-7118 |