

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 1, 2016**

**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 15-40289-rfn-11** |
| **LIFE PARTNERS HOLDINGS, INC.,** | § | |
| *et. al.* | § | **JOINTLY ADMINISTERED** |
| | § | **(Chapter 11)** |
| Debtors. | § | |

---

### ORDER CONFIRMING REVISED THIRD AMENDED JOINT PLAN OF
### REORGANIZATION OF LIFE PARTNERS HOLDINGS, INC., ET AL PURSUANT TO
### CHAPTER 11 OF THE BANKRUPTCY CODE

This matter having come before the Court to consider confirmation of the *Third Amended*

*Joint Plan of Reorganization of Life Partners Holdings, Inc., et al. Pursuant to Chapter 11 of the*

*Bankruptcy Code* [Dkt. No. 2498] (the "Third Amended Plan"), which was filed with the Court

on June 21, 2016 by plan proponents (collectively, the "Plan Proponents"), H. Thomas Moran II

as Chapter 11 Trustee ("Moran" or the "Chapter 11 Trustee") of Life Partners Holdings, Inc.

("LPHI"), Life Partners, Inc. ("LPI"), LPI Financial Services, Inc. ("LPIFS"), and the official

committee of unsecured creditors appointed in the above-captioned, jointly administered Chapter 11 cases (the "Committee");[1] and

(a)     the Court having previously entered an order [Dkt. No. 2593], dated June 29, 2016, approving the Plan Proponents' disclosure statement [Dkt. No. 2500] (the "Disclosure Statement") in connection with the Third Amended Plan, and an order dated June 30, 2016 [Dkt. No. 2595] (the "Solicitation Order") approving (i) form of ballots and solicitation, and election procedures, (ii) procedures relating to the confirmation of the Third Amended Plan, (iii) temporary estimation of investor claims for voting purposes, and (iv) other relief; and

(b)     the Plan Proponents having filed a plan supplement (the "Plan Supplement") with the Court on August 2, 2016 [Dkt. No. 2856] and served notice of same, as provided for in the Solicitation Order; and

(c)     an Amended Declaration of Jane Sullivan on Behalf of Epiq Bankruptcy Solutions, LLC, Regarding Voting and Tabulation of Ballots Cast on the Plan (the "Ballot Certification") having been filed with the Court on August 26, 2016 [Dkt. No. 3215]; and

(d)     all classes entitled to vote under the Third Amended Plan, except for Class B2A and Class B3A, having voted to accept the Third Amended Plan by at least a majority in number and two-thirds of dollar amount of claims voting in each class; and

(e)     the only classes rejecting the Third Amended Plan ("Dissenting Classes") being (i) the Holders of Interests in each of the Debtors (Class A5, Class B6 and Class C4), which are all deemed to have rejected the Plan under 11 U.S.C. § 1126(g) because Holders of Interests in the Debtors are to receive no Distributions under the Third Amended Plan, and (ii) Classes B2A and B3A; and

---

[1]     LPHI, LPI and LPIFS are collectively referred to as the "Debtors." Capitalized terms used but not otherwise defined herein have the meaning ascribed to such terms in the Plan.

(f)     objections (the "Objections") to the Third Amended Plan having been filed by Transparency Alliance, LLC [Dkt. No. 3010], H. Steven Hufstetler, Sr. [Dkt. No. 2995]; Black Diamond Lifeplan Fund L.P., Evergreen II Lifeplan Fund L.P., Evergreen III Lifeplan Fund, L.P., Evergreen Lifeplan Fund, L.P., Pillar 3 Life Settlement Fund, L.P., Pillar 4 Life Settlement Fund, L.P., Pillar 5 Life Settlement Fund, L.P., Pillar II Life Settlement Fund, L.P., Pillar Life Settlement Fund I, L.P. [Dkt. No. 3007], Steven Fallen [Dkt. No. 3009], the Arbitration Objectors [Dkt. No. 3010]; Certain IRA Investors [Dkt. No. 3134], and Alexandra Agencies Limited, Carteya Limited, Robin Rock Limited and Shamrock Life Settlement [Dkt. Nos. 3135 and 3149]; and

(g)     the Plan Proponents having filed a joint reply (the "Reply") in opposition to the Objections and in further support of confirmation of the Third Amended Plan on August 29, 2016 [Dkt. No. 3324]; and the Certain IRA Investors having filed a post-trial brief on October 5, 2016 [Dkt. No. 3374]; and the Plan Proponents having filed a response to the post-trial brief on October 6, 2016 [Dkt. No. 3381]; and

(h)     the Court having entered its *Order Granting the Joint Motion to Compromise Class Action Controversies, to Approve Plan Support Agreement, and for Related Relief* [Dkt. No. 2295] (the "9019 Order"); and

(i)     the District Court for the Northern District of Texas having entered its (i) *Order (I) Preliminarily Approving the Class Settlement Agreement; (II) Conditionally Certifying the Class and Appointing Class Counsel and Class Representatives; (III) Approving the Form and Manner of Notice to Class Members; (IV) Setting a Deadline for Objections to Such Preliminary and Conditional Actions; and (V) Scheduling a Hearing for the Final Consideration and Approval of Such Action*s [Dkt. No. 43 in Case No. 4:16-cv-00212-A] on June 6, 2016 (the

"Class Action Preliminary Approval Order"), and (ii) *Final Approval Order (Order Approving Class Settlement Agreement, Certifying Class and Appointing Class Counsel and Class Representatives)* [Dkt. No. 143 in Case No. 4:16-cv-00212-A] (the "Class Action Final Approval Order" and together with the Class Action Preliminary Approval Order, the "Class Action Approval Orders") on September 13, 2016; and

(j)      an evidentiary hearing on confirmation of the Plan having been held before this Court over a five-week period beginning August 29, 2016 (the "Confirmation Hearing"), and the Court finding that notice of the Confirmation Hearing was good and sufficient and consistent with the Solicitation Order; and

(k)      the Court having overruled the Objections to the extent not withdrawn or to the extent not expressly sustained as set forth in the October 7 Findings and Conclusions (as defined herein); and

(l)      the Court having considered the Third Amended Plan, the Disclosure Statement, the Ballot Certification, the Class Action Preliminary Approval Order, the Class Action Final Approval Order, the proposed modifications to the Third Amended Plan related to the Vida Plan Collaboration Agreement presented to the Court on Monday, September 26, 2016, the stipulations of certain parties announced at the Confirmation Hearing, including but not limited to the Term Sheet filed at Dkt. No. 3422 and the term sheet admitted into evidence at the Confirmation Hearing as Shamrock Life Settlements et al. Exhibit 8, the testimony and exhibits introduced into evidence at the Confirmation Hearing, the Objections, the Reply, the arguments of counsel, the post-trial briefing, and the record before it; and

(m)     the Court finding that the Plan Proponents, Vida, and their respective current officers, directors, and employees acted in good faith within the meaning of and with respect to all of the actions described in 11 U.S.C. § 1125(e); and

(n)     the Court having made the *Report and Recommendation Regarding the Joint Motion to (I) Preliminarily Approve Settlement Agreement; (II) Grant Class Certification Pursuant to Settlement Agreement; (III) Appoint Class Counsel and class Representative Pursuant to Settlement Agreement; (IV) Approve the Form and Manner of Notice to Class Members; (V) Set a Deadline for Objections to the Settlement; and (VI) Schedule Hearing for the Final Consideration and Approval of the Settlement* [Dkt. No. 55 in Case No. 15-04061-rfn] (the "Preliminary Report and Recommendation") and *Report and Recommendation with Respect to the Joint Motion to Approve Settlement Agreement, Grant Class Certification and Appoint Class Counsel and Class Representative* [Dkt. No. 71 in Case No. 15-04061-rfn] (the "Final Report and Recommendation," and together with the Preliminary Report and Recommendation, the "Reports and Recommendations"), which are incorporated fully herein by reference for all purposes; and

(o)     the Court having made the findings of fact and conclusions of law stated on the record on October 7, 2016, as clarified on the record on October 11, 2016 (collectively, the "October 7 Findings and Conclusions"), which October 7 Findings and Conclusions are incorporated fully herein by reference for all purposes; and

(p)     the Court having found that the Plan satisfies all of the applicable requirements for confirmation, including the requirements of 11 U.S.C. § 1129.

Accordingly, the Third Amended Plan, as revised at Docket No. 3427 (the "Plan") pursuant to the stipulations of certain parties, including but not limited to the Term Sheet filed at

Dkt. No. 3422 and the term sheet admitted into evidence at the Confirmation Hearing as Shamrock Life Settlements et al. Exhibit 8, and in accordance with the Court's October 7 Findings and Conclusions, and inclusive of the Plan Documents, is confirmed as provided in this order (the "Confirmation Order").

Now, therefore it is hereby ORDERED, ADJUDGED AND DECREED as follows:[2]

1. **Confirmation of the Plan.** The Plan shall be and hereby is confirmed. The Plan Documents and their terms are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

2. **Approved Modifications of the Plan.** The revisions and modifications to the Third Amended Plan reflected at Docket No. 3427 are hereby approved and are incorporated into the Plan, as confirmed by this Confirmation Order.

3. **Approval of the Vida Plan Collaboration Agreement.** The Vida Plan Collaboration Agreement at Dkt. No. 3428 is hereby approved in accordance with the Plan and this Confirmation Order.

4. **Approval of the Plan Documents.** The Court hereby authorizes and approves the execution, delivery, and performance by the Chapter 11 Trustee, Subsidiary Debtors, Reorganized Debtors, Successor Entities, Successor Trustees, Trust Boards, and Advisory Committee as applicable, of all of the agreements, documents, and instruments to be entered into before, on, or as of the Effective Date, as contemplated by, and in furtherance of, the Plan (including in each case all exhibits and attachments thereto and documents referenced therein)

---

[2] The findings of fact and conclusions of law set forth herein, in the Report and Recommendations, and the October 7 Findings and Conclusions constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the findings of fact included herein or therein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law included herein or therein constitute findings of fact, they are adopted as such.

(the "Plan Documents"), including but not limited to the following: (i) the Position Holder Trust Agreement [Exh A, Dkt. No. 3427], (ii) the Creditors' Trust Agreement [Exh. B, Dkt. No. 3427], (iii) the Servicing Agreement [Exh. A, Dkt. No. 3428], (iv) the New IRA Notes Indenture [Dkt. No. 2856-1], (v) the form of New IRA Note [Dkt. No. 2856-1], (vi) the New IRA Notes Security Agreement [Dkt. No. 2856-2], (vii) the Securities and Deposit Account Agreement and Securities and Deposit Account Control Agreement [Dkt. No. 2856-3], (viii) the Maturity Funds Security Agreement [Dkt. No. 2856-4], (ix) the Vida Plan Collaboration Agreement [Dkt. No. 3428], (x) the Exit Loan Facility Agreement [Dkt. No. 2856-6], (xi) the Revolving Line of Credit Agreement [Dkt. No. 2856-7], (xii) the Portfolio Information License Agreement [Dkt. No. 2856-18], (xiii) the amended and restated Governance Documents of Life Partners, Inc. [Dkt. No. 2856-19], (xiv) the amended and restated Governance Documents of Life Partners Holdings, Inc. [Dkt. No. 2856-20], (xv) the amended and restated Governance Documents of LPI Financial Services, Inc. [Dkt. No. 2856-21], (xvi) the IRA Partnership, LLC formation documents [Dkt. No. 2856-23], (xvii) the form of Statement of Maturity Account [Dkt. No. 2856-24], and (xviii) the Newco formation documents (to the extent necessary or appropriate to effectuate the transactions contemplated by the Vida Plan Collaboration Agreement). Without need for further order or approval of this Court, the Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, Successor Trustees, and their respective successors are authorized and empowered to make any and all modifications to any and all of the Plan Documents that do not adversely affect in a material way the treatment of Holders of Claims or Interests and are consistent with the Plan and this Confirmation Order; *provided, however*, any modification to any such Plan Document that increases fees payable by Continuing Fractional Holders, or by the

Position Holder Trust in its capacity as the registered Holder of Beneficial Ownership in Policies, will be subject to Court approval.

5. **Binding Effect.** Subject to the occurrence of the Effective Date, on and after the Effective Date, the provisions of the Plan shall bind the Debtors, all current and former Holders of a Claim against or asserted against, or Interest in, the Debtors, including, without limitation, all Investors, and such Holders' respective successors and assigns, whether or not the Claims or Interests of such Holders are Impaired under the Plan, whether or not such Holders accepted the Plan, and whether or not such Holders are entitled to any Distribution under the Plan.

6. **Incorporation of the October 7 Findings and Conclusions.** The October 7 Findings and Conclusions are incorporated into this Confirmation Order as if fully set forth herein.

7. **Incorporation of the Report and Recommendations.** The Report and Recommendations are incorporated into this Confirmation Order as if fully set forth herein.

8. **Incorporation of the Class Action Approval Orders.** The Class Action Approval Orders and Class Action Settlement Agreement are incorporated into this Confirmation Order as if fully set forth herein. The Class Action Settlement Agreement is approved as part of the Plan pursuant to 11 U.S.C. § 1123(b).

9. **Distributions Under the Plan.** Except as otherwise provided for in this Confirmation Order, all Distributions under the Plan shall be made in accordance therewith, including but not limited to Articles III and X of the Plan.

10. **Deemed Substantive Consolidation for Distribution Purposes.** The Debtors are deemed substantively consolidated solely for purposes of Distributions to be made under the Plan as set forth in Section 4.06 of the Plan.

11. **Administrative Claims.**

(a)     All requests for payments of Administrative Claims shall be Filed with the Court, and served on the parties as provided in the Plan, by the Administrative Claims Bar Date, which is: (i) 30 days after the Effective Date with respect to General Administrative Claims, including claims made by a creditor or entity described under 11 U.S.C. § 503(b)(3)(D) and/or related claims for professional fees under 11 U.S.C. § 503(b)(4), and (ii) 45 days after the Effective Date with respect to Professional Fee Claims.  Any requests for payment of Administrative Claims filed after the Administrative Claims Bar Date shall automatically be barred and disallowed without the need for any hearing or order of the Court.

(b)     Notwithstanding the foregoing, any claim of Vida, as lender under that certain financing (the "DIP Financing") approved by the *Order Granting: (A) Motion of The Trustee and Subsidiary Debtors for Order Authorizing the Debtors to Obtain Post-Petition Secured Financing Pursuant to 11 U.S.C. § 364; (B) Security Interest and Superpriority Administrative Expense Claim and (C) Related Relief* [Dkt. No. 2924] (the "DIP Financing Order") shall be paid in full in cash on the Effective Date pursuant to the terms of the DIP Financing and DIP Financing Order, without the need for any further requests or orders of any kind.

(c)     All Administrative Claims that become Allowed Administrative Claims prior to or on the Effective Date shall be paid in full in cash on the Effective Date, and all Administrative Claims that become Allowed Administrative Claims after the Effective Date shall be paid in full in cash within ten (10) days after becoming an Allowed Administrative Claim; *provided, however*, (i)  that any General Administrative Claim that is based on a liability incurred by the Debtors in the ordinary course of business after the Petition Date may be paid pursuant to the terms and conditions of the particular transaction or agreement that gives rise to such General

Administrative Claim without any further notice to or approval by the Bankruptcy Court, and (ii) that the Interim Compensation Order shall govern any interim allowance and payment of fees and expenses of Professionals incurred on or before the Effective Date.  For the avoidance of doubt, Professionals shall continue to follow the Interim Compensation Order with respect to (A) any monthly fee statements for fees and expenses incurred on or before the Effective Date, and (B) the Interim Fee Applications due on November 14, 2016 (for fees and expenses incurred through September 2016); however, no further Interim Fee Applications shall be due after those due November 14, 2016.  To the extent any fees and expenses incurred by Professionals have not been paid pursuant to the Interim Compensation Order or any other order of the Bankruptcy Court, such fees and expenses shall be included in the respective Professionals' Final Fee Applications to be filed on or before the Administrative Claims Bar Date.

12.     **No Impairment of Class Action Litigants' Counsel Fees.**  Notwithstanding anything in the Plan or this Confirmation Order, Class Action Litigants' Counsel Fees shall be determined, awarded and paid in accordance with the Class Action Settlement Agreement and applicable court orders.  Nothing in the Plan or this Confirmation Order, including, without limitation, paragraph 48 of this Order, shall impair or limit the payment of Class Action Litigants' Counsel Fees, on account of a common fund or otherwise, from assets and property Distributed or to be Distributed under the Plan, in accordance with the Class Action Settlement Agreement and applicable court orders.

13.     **Post-Effective Date Professional Fees and Expenses.**  With respect to all professional fees and expenses incurred after the Effective Date in accordance with the Plan by the Chapter 11 Trustee, Reorganized Debtors, Position Holder Trust, IRA Partnership, Position Holder Trustee, and Position Holder Trust Governing Trust Board, as applicable, the Position

Holder Trust shall, in the ordinary course of business and without the necessity for any approval by this Court, pay all such professional fees and expenses upon approval by the respective fiduciary (or fiduciaries) on account of whom such services were rendered or fees were incurred. With respect to all professional fees and expenses incurred after the Effective Date in accordance with the Plan by the Creditors' Trust, the Creditors' Trustee, and the Creditors' Trust Governing Trust Board, as applicable, the Creditors' Trust shall, in the ordinary course of business and without the necessity for any approval by this Court, pay all such professional fees and expenses upon approval by the respective fiduciary (or fiduciaries) on account of whom such services were rendered or fees were incurred.

14.     **Implementation of the Plan.**

(a)     The Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, Successor Trustees, Trust Boards, and Advisory Committee are authorized and approved to take all actions necessary to implement the Plan, and the Reorganization Transactions provided for in the Plan are approved in all respects.

(b)     On the Effective Date, the Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, Successor Trustees, Trust Boards, and Advisory Committee are authorized to sign all of the Reorganization Documents and take all other actions they determine to be necessary or appropriate in order to effectuate and implement the Reorganization Transactions as provided for in the Plan, the Plan Documents and this Confirmation Order. The Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, and Successor Trustees are hereby authorized to grant, issue, execute, deliver, file, or record all such certificates, notes, contracts, instruments, bills of sale, assignments, releases, and other documents and agreements, and to take all such other actions as may be necessary to effectuate and further evidence the terms,

conditions, and consummation of the Plan, including all of the Reorganization Transactions provided for therein or herein, including, without limitation, executing and delivering, or causing to be executed and delivered: (i) all instruments, conveyances, bills of sale, assignments, and other documents and agreements necessary or appropriate to effectuate and implement all of the contributions and Distributions contemplated by the Plan, and the sale of assets contemplated by the Vida Plan Collaboration Agreement, and (ii) all Continuing Fractional Interest Certificates and New IRA Notes to be Distributed pursuant to the Plan, and any certificates representing Position Holder Trust Interests or IRA Partnership Interests requested by Investors entitled to receive them under the Plan and the Plan Documents.

(c)     As of the Effective Date, the Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, Successor Trustees, and their respective directors, officers, members, managers, agents, attorneys, financial advisors, and other professional advisors are authorized and empowered pursuant to 11 U.S.C. § 1142 and applicable state laws (i) to grant, issue, execute, deliver, file, or record any agreement, document, or instrument, including any of the Plan Documents, in substantially the form provided for in the Plan or this Confirmation Order, as applicable, as may be modified, amended, and supplemented as the Plan Proponents determine to be necessary or appropriate and in a manner consistent with this Confirmation Order; (ii) to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms; and (iii) to take or cause to be taken all corporate, trust, limited liability company, or other actions  necessary or appropriate to implement all provisions of, and to consummate, the Plan and all of the Reorganization Transactions provided for therein or herein prior to, on, and after the Effective Date.

(d)     Without limiting the generality of the authorizations and approvals set forth in this Confirmation Order, prior to the Effective Date, the Chapter 11 Trustee and the Debtors are authorized and, from and after the Effective Date, the Position Holder Trustee, the IRA Partnership Manager, and Reorganized LPI are authorized, to (i) take any action necessary or appropriate to effectuate and implement registration under the Securities and Exchange Act of 1934 (as amended, the "1934 Act") of the Continuing Fractional Interests, the Position Holder Trust Interests, and the IRA Partnership Interests, and, if required, the New IRA Notes and the Creditors' Trust Interests, including, but not limited to, filing any required registration statement, (ii) to cause such registration to be effective on or as soon after the Effective Date as reasonably practicable, and (iii) to otherwise comply with the 1934 Act and other federal and state securities laws, rules, and regulations as may be applicable to the Continuing Fractional Interests, the Position Holder Trust Interests, the IRA Partnership Interests, the New IRA Notes, and the Creditors' Trust Interests.

(e)     The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Chapter 11 Trustee, Debtors, Reorganized Debtors, Successor Entities, or Successor Trustees, or their respective directors, officers, members, managers, agents, attorneys, financial advisors, or other professionals to take any and all actions necessary or appropriate to implement, effectuate, and consummate all of the Reorganization Transactions contemplated by the Plan or this Confirmation Order pursuant to 11 U.S.C. § 1142.  All such actions taken or caused to be taken shall be deemed to have been authorized and approved by this Court without further approval, act, or action under any applicable law, order, rule, or regulation.

(f)     Pursuant to 11 U.S.C. § 1142, to the extent that, under applicable non-bankruptcy law, any of the foregoing actions otherwise would require the consent or approval of the members, managers, shareholders, or board of directors or board of managers of the Debtors, Reorganized Debtors, Successor Entities, or Successor Trustees, this Confirmation Order shall constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the decision-making entity or individual of the Debtors, Reorganized Debtors, Successor Entities, or Successor Trustees; *provided, however*, that nothing herein is intended to modify, amend, or adversely affect the rights, powers, or duties of the Trust Boards as provided in the Plan or Successor Trust Agreements.

(g)     Any and all documents contemplated herein or in the Plan or any of the other Reorganization Documents shall be accepted by each Insurance Company (as defined in paragraph 15(f) below) and state filing offices, and recorded, if required, in accordance with applicable state law, and shall become effective in accordance with their terms and the provisions of state law.

15.     **Vesting of Certain Assets.**

(a)     On the Effective Date, (i) Beneficial Ownership of Continuing Fractional Interests registered in the name of Continuing Fractional Holders shall be vested in the Continuing Fractional Holders, subject to the terms of the Plan and the Position Holder Trust Agreement; (ii) the Vested Assets (including, but not limited to, legal title and the right to designate the holder of record title to all of the Policies (as defined herein) and the Continuing Position Holder Contributions) shall vest in the applicable Reorganized Debtors, free and clear of all Liens, Claims, and encumbrances, save and except for (A) the Maturity Funds Liens, if any (and only until all of the Maturity Funds Loans outstanding on the Effective Date are paid in full as

provided in the Plan), and the Continuing Fractional Interests outstanding after the Effective Date, (B) the Liens on the New IRA Note Collateral to be established pursuant to the New IRA Note Collateral Documents, and (C) the Liens to be established pursuant to the documentation for the financing to be obtained pursuant to the Vida Plan Collaboration Agreement on and after the Effective Date as provided for in the Plan (the "Exit Financing"), which will continue subject to the terms of the Plan, the Position Holder Trust Agreement, the New IRA Note Collateral Documents, the Maturity Funds Collateral Agreement, and the documents providing for the Exit Financing (the "Exit Financing Agreements"); and (iii) the Maturity Funds Loans outstanding on the Effective Date shall be assumed by the Position Holder Trust as provided in Section 4.02(b) of the Plan, and (iv) the assumed contracts on the Assumed Executory Contract and Unexpired Lease List (the "Assumed Contracts") shall be assumed by the applicable Successor Entities as provided in Article XIII of the Plan and vest in the applicable Successor(s). In addition, following completion of the Catch-Up Reconciliation, all Beneficial Ownership related to Fractional Positions with respect to which Position Holder Trust Elections are deemed to have been made as provided in Section 4.13 of the Plan, or which relate to Disputed Claims or Interests to the extent such Disputed Claims or Interest are ultimately disallowed as to any Fractional Position, shall automatically vest in the Position Holder Trust, effective as of the Effective Date.

(b) Except as otherwise set forth in the Plan (including any of the Plan Documents) or this Confirmation Order, from and after the Effective Date, (i) the respective Successor Entities shall perform and pay when due liabilities under, or related to the ownership or operation of, the Vested Assets, the Maturity Funds Loans, and the Assumed Contracts to be contributed to or assumed by each of them as provided herein and therein, and (ii) none of the Successor Entities

shall be responsible for any liabilities relating to Vested Assets contributed to, or contracts assumed by, any other Successor Entity or for any liabilities of any of the Debtors or Reorganized Debtors, other than liabilities expressly assumed by a Successor Entity, for which a Successor Entity is otherwise expressly liable under the Plan, or relating to Vested Assets contributed to a Successor Entity. The Reorganized Debtors and the Successor Entities shall operate free of any restrictions of the Bankruptcy Code.

(c)     This Confirmation Order approves, authorizes, and directs the assignment or transfer of the Vested Assets, the Maturity Escrow Account, and the Escrowed Funds as provided in the Plan.

(d)     After the Effective Date, each Successor Trustee, as applicable, may present a copy of this Confirmation Order for Filing in the records of every county or governmental agency where the Vested Assets are or were located, or with any third party (including, without limitation, any Insurance Company) by whom record title to any of the Vested Assets or custody of any portion of the Maturity Escrow Account or the Escrowed Funds is maintained or that is obligated to pay any Maturity Funds that have not yet been paid, accompanied by instructions that provide that such property is to be (i) conveyed to or vested in the Reorganized Debtors or the Successor Entities, (ii) transferred to an account designated by the Position Holder Trustee for Distribution in accordance with the Plan, or (iii) transferred to (A) the Escrow Agent to be held in accordance with the terms of the Escrow Agreement and the Position Holder Trust Agreement or (B) the Securities Intermediary designated by the Position Holder Trustee to be held by the Securities Intermediary in accordance with the terms of the applicable Plan Document(s). Any Lien, Claim, encumbrance, or other interest in or as to any of the Vested Assets, funds in the Maturity Escrow Account, or Escrowed Funds is hereby extinguished,

except as expressly provided otherwise in the Plan and this Confirmation Order. The Plan and this Confirmation Order are hereby deemed adequate notice of (x) title to the Vested Assets, (y) the Position Holder Trustee's rights to direct the assignment and transfer of record title to the Policies, the funds in the Maturity Escrow Account, and the Escrowed Funds, and (z) the extinguishment of any Lien, Claim, encumbrance, or other interest thereon or therein, and no notice other than by this Confirmation Order need be or shall be given before the presentation of such instructions.

(e)     Any person having a Lien, Claim, encumbrance, or other interest against any Vested Asset shall be conclusively deemed to have consented to the transfer, assignment, and vesting of such Vested Assets free and clear to the Reorganized Debtors and through them to the Successor Entities by failing to object to Confirmation of the Plan, except as otherwise provided for in this Confirmation Order with regard to the Maturity Funds Liens to be outstanding from time to time on and after the Effective Date, the Continuing Fractional Interests to be outstanding from time to time after the Effective Date, the Liens on the New IRA Note Collateral to be established pursuant to the New IRA Note Collateral Documents, and Liens to be established pursuant to the Exit Financing Agreements, which will continue or be created on the Effective Date subject to the terms of the Plan, the Position Holder Trust Agreement, the New IRA Note Collateral Documents, the Maturity Funds Collateral Agreement, and the Exit Financing Agreements.

(f)     This Court finds that due and adequate notice of the transfer to the Position Holder Trust of legal title to the life insurance policies acquired by LPI prior to the Petition Date (the "Policies"), including, but not limited to, each life insurance policy identified on **Exhibit "A"** attached hereto, and the transfer of record ownership of the Policies to the Position

Holder Trust (or to the Securities Intermediary designated by the Position Holder Trust) has been provided to all interested parties, including the insurers who issued or are currently obligated under such Policies (each an "Insurance Company"), and that no further notice or opportunity to object is required.

(g)     Without limiting the generality of the foregoing provisions of this Confirmation Order, the transfer of record ownership of the Policies to the Securities Intermediary on behalf of the Position Holder Trust shall be a legal, valid, and effective transfer of record ownership of the Policies and shall vest good and valid record title in the Securities Intermediary in and with respect to all of the Policies vested in the Position Holder Trust pursuant to the Plan and this Confirmation Order, subject to the Plan and the Plan Documents.  Other than the Reorganized Debtor, any person, including, without limitation, any holder of record or registered title to any Policy, any holder of any beneficial interest relating to any Policy, any irrevocable or other named beneficiary of any Policy, any employer with respect to a group Policy, any insured under any Policy, or any former holder of any interest in any Policy, and each Insurance Company or other entity that issued or is obligated under any Policy, and the successors and assigns of any of the foregoing asserting any ownership, Lien, Claim, encumbrance, or other interest of any kind or nature against any Policy arising out of, in connection with, or in any way relating to the Debtors, any Policy, or the transfer of the Policies to the Position Holder Trust or the Securities Intermediary on behalf of the Position Holder Trust, or any of their successors or assigns designated by the Position Holder Trust, shall be, and hereby are, forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such ownership, Lien, Claim, encumbrance, or other interest against the Position Holder Trust, Securities Intermediary, any employer with respect to a group Policy, or any Insurance Company, or any of their

respective successors or assigns, or any subsequent owner of any Policy, and from failing or refusing to recognize the Position Holder Trust or any Securities Intermediary the Position Holder Trust designates as the owner of record and named beneficiary of each Policy.

(h)     Each of the Insurance Companies is authorized and directed to record the Securities Intermediary designated by the Position Holder Trust (or any successor or assign designated by the Position Holder Trust) as the record owner/absolute assignee and named beneficiary of each of the Policies issued by such Insurance Company without the necessity of further instruction, consent (including the consent of any insured or beneficiary), or authorization, and each Insurance Company is authorized and directed to rely on this Confirmation Order as authority to do so without the necessity of signatures or consents from existing record owners/assignees and named beneficiaries, whether recorded on the Insurance Company's records as revocable or irrevocable beneficiaries, and whether or not any such beneficiary or any insured has consented to such change.   All Insurance Companies are authorized and directed to remit all proceeds of the Policies, including death claim proceeds, to the Securities Intermediary or other beneficiary designated by the Position Holder Trust.

(i)     Each Insurance Company shall recognize the authority of the servicing company designated by the Position Holder Trust from time to time (the "Servicing Company") to obtain information, to receive documents about, and generally service, maintain, and administer the Policies, and no Insurance Company shall refuse to work with, refuse to provide information to, or in any other way inhibit or hinder the ability of the Servicing Company, the Position Holder Trust, the Securities Intermediary, or any of their successors or assigns to service, maintain, or administer the Policies, or collect the death benefits or other maturity proceeds of the Policies. No Insurance Company shall require further or additional authorization from the Position Holder

Trust, the Securities Intermediary, or the Servicing Company with respect to any of such matters, other than this Confirmation Order.

16. **Cancellation of Existing Liens.**

(a) Save and except for the Maturity Funds Liens, and the Liens provided under the DIP Financing Order, which are treated in subsection (b) of this paragraph, and except as expressly provided otherwise in the Plan and this Confirmation Order with respect to (i) Allowed Claims in Classes A1, B1, and C1, (ii) the New IRA Note Collateral, and (iii) the Liens securing the Exit Financing, any Lien, Claim, or encumbrance encumbering any of the Debtors' property shall be deemed released and the Holder of such Allowed Secured Claim shall deliver to the applicable Debtor (or Reorganized Debtor) any collateral or other property of any Debtor (or Reorganized Debtor) held by or for such Holder, and any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Secured Claim that may be reasonably required in order to terminate any related financing statements, mortgages, mechanic's liens, or lis pendens.

(b) Upon payment of all outstanding Maturity Funds Loans and repayment of the DIP Financing, respectively, (i) any Lien or other security interest encumbering any of the Debtors' property pursuant to the Financing Order or the DIP Financing, respectively, shall be deemed released, (ii) any protections, benefits, and priorities granted pursuant to the Financing Order or the DIP Financing, respectively, shall be deemed satisfied, and (iii) the lender under the DIP Financing shall deliver to the applicable Debtor (or Reorganized Debtor) any termination statements, instruments of satisfaction, or releases of all Liens or other security interests with respect to its collateral securing repayment of the DIP Financing that may be reasonably required

in order to terminate any related financing statements, mortgages, or lis pendens, or other notice of the attachment or perfection of such Lien or security interest.

(c)       The Court finds and determines that there was never any transfer of ownership of any Fractional Interest, or other interest, in any Policy made to any Original IRA Note Issuer. The Court further finds and determines that none of the Original IRA Note Issuers held any property interest in any Fractional Interest or otherwise in any Policy, and therefore was not able to, and in fact did not, grant any Lien to any IRA Holder.  Therefore, no IRA Holder ever received any interest in any Policy by conveyance, Lien, security interest, or otherwise.

17.       **Payment of Maturity Funds Loans and Post-Effective Date Maturity Funds Facility.**  As provided in Section 4.04 of the Plan, and subject to Section 10.07 of the Plan, on or about the Effective Date, the Position Holder Trust shall pay in full all Maturity Funds Loans reflected on the Statements of Maturity Account provided to Current Position Holders who hold Fractional Positions relating to Matured Policies, plus interest calculated as provided in the Financing Order.  From and after the Effective Date, the procedures set forth in Section 4.04 of the Plan and the Maturity Funds Collateral Agreement shall govern the application of the Maturity Funds Facility.  Notwithstanding anything to the contrary contained in the Plan or in this Confirmation Order, until the Maturity Funds Loans outstanding on the Effective Date have been paid in full as provided in the Plan, the Financing Order and all of the liens, protections, benefits, and priorities provided thereunder shall survive and continue in full force and effect.

18.       **Survival of Provisions of DIP Financing Order.**  Notwithstanding anything to the contrary contained in the Plan or in this Confirmation Order, until the claims of the lender under the DIP Financing have been paid in full in cash, (i) the DIP Financing Order and all of the liens, protections, benefits, and priorities provided the lender thereunder and pursuant to the DIP

Credit Agreement (as defined in the DIP Financing Order) shall survive and continue in full force and effect, and (ii) the terms and conditions of the DIP Credit Agreement and other Financing Agreements (as defined in the DIP Financing Order) shall continue in full force and effect, including, but not limited to, the conditions of borrowing, interest rate, payment, collateral, priority of liens, events of default, and maturity date.

19. **Liens Securing Exit Financing.** As of the Effective Date, all of the Liens or other security interests to be granted in accordance with the Exit Financing Agreements: (i) are hereby approved, (ii) are legal, binding, and enforceable first priority Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Financing Agreements, and (iii) shall be perfected as of the Effective Date, subject only to such prior Liens or other security interests as may be permitted under the Exit Financing Agreements; *provided, however*, that, with respect to any Fractional Interest related to a Fractional Position that is subject to the Catch-Up Reconciliation and/or that is subject to dispute resolution pursuant to Section 4.13(d) of the Plan as of the Effective Date, any and all such Liens or other security interests to be granted in accordance with the Exit Financing Agreements shall attach to the affected Fractional Interest if and only to the extent that the Beneficial Ownership of the affected Fractional Interest vests in the Position Holder Trust following the Catch-Up Reconciliation or resolution of the dispute. The lender under the Exit Financing Agreements is hereby authorized, directly or through an agent, to make all filings and recordings, and to obtain governmental approvals and consents necessary, to establish and perfect such Liens or other security interests under the provisions of state, federal, or other law (whether domestic or foreign) that would be applicable in the absence of the Plan and this Confirmation Order (it being understood that perfection shall occur automatically as of the Effective Date by virtue of the entry of this

Confirmation Order, and any such filings, recordings, approvals and consents shall not be required), and the Position Holder Trustee shall cooperate with the lender with respect to such actions.

20. **Treatment of Certain Investor Claims.**

(a) The Claims of Investors who owed a Pre-Petition Default Amount with respect to a Fractional Position shall be governed, with respect to such Fractional Position, by Section 4.13(c) and Section 14.06 of the Plan, as applicable, unless the Investor delivered voluntary abandonment instructions with respect to such Fractional Position. Notice of the Pre-Petition Default Payment Deadline shall be included in the Notice of Confirmation Order (defined herein below).

(b) The Claims of Former Position Holders and/or all other Investors who are not Class Action Class Members with respect to one or more Fractional Positions shall be treated as Class B4 Claims, and the allowance or disallowance of such Claims shall be governed by the Plan with respect to General Unsecured Claims.

21. **Assumption or Rejection of Executory Contracts and Unexpired Leases.**

(a) The provisions of Article XIII of the Plan governing executory contracts and unexpired leases are hereby approved.

(b) Except to the extent the Debtors, the Estates, or Chapter 11 Trustee (i) previously have assumed or rejected an Executory Contract or Unexpired Lease on or prior to the Effective Date (including, but not limited to, the building lease for the Waco headquarters of the Debtors), or (ii) prior to the Effective Date, have Filed or do File a motion to assume (or reject) an Executory Contract or Unexpired Lease on which the Bankruptcy Court has not ruled, the

Debtors' Executory Contracts and Unexpired Leases are hereby deemed rejected as of the Effective Date.

(c)       Unless otherwise provided by an order of the Bankruptcy Court,[3] any Proof of Claim asserting Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases rejected or assumed pursuant to the Plan or otherwise must be Filed no later than the date that is thirty (30) days following the later of the Effective Date or the date a Final Order is entered granting such rejection; *provided, however*, any and all Claims for rejection damages resulting from the rejection of the Investment Contracts are hereby deemed satisfied by the Class Action Settlement and, therefore, no Claim may be filed on account of the rejection of any Investment Contract.   Any Proof of Claim arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases that is not timely Filed shall be disallowed automatically, forever barred from assertion, and shall not be enforceable against any Debtor, Reorganized Debtor, or Successor Trust, without the need for any objection by any Person or further notice to or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease is hereby deemed fully satisfied, released, and discharged, notwithstanding anything in the Bankruptcy Schedules or a Proof of Claim to the contrary.   Any Allowed Claims arising from the rejection of the Debtors' Executory Contracts and Unexpired Leases shall be classified as General Unsecured Claims asserted against the Estate of the particular Debtor in question and shall be treated in accordance with the particular provisions of the Plan for such Debtor; *provided, however*, if the Holder of an Allowed Claim for rejection damages has an unavoidable security interest in any collateral or a right of offset that secures obligations under such rejected Executory Contract or Unexpired Lease, the

---

[3] This Confirmation Order does not extend any prior deadline that is, or was, otherwise applicable to the timely filing of a Proof of Claim, including but not limited to asserting Claims arising from the rejection, prior to the Effective Date, of any Executory Contract or Unexpired Lease with any Debtor.

Allowed Claim for rejection damages shall be treated as a Secured Claim to the extent of the value of such Holder's interest in the collateral or right of offset, with the deficiency, if any, treated as a General Unsecured Claim.

22. **Approval of the Compromise.**

(a) The Compromise, including the Intercompany Settlement, embodied by the Plan: (i) is approved, and (ii) shall be binding on the Debtors, the Reorganized Debtors, all Current Position Holders, all other Holders of Claims and Interests, the Position Holder Trust, the Position Holder Trustee, the Creditors' Trust, the Creditors' Trustee, the IRA Partnership, the IRA Partnership Manager, and the Servicing Company. To the extent not previously approved by separate Order, this Confirmation Order constitutes the Bankruptcy Court's approval of the Compromise and its determination that the Compromise is in the best interests of the Debtors, the Estates, and all Creditors and other parties in interest, is fair and equitable, and is a reasonable exercise of the Chapter 11 Trustee's and the Subsidiary Debtors' business judgment.

(b) Certain of the Plan Documents providing for the Reorganization Transactions being completed as part of the Compromise contain specific releases and assignments of claims against one or more of the settling parties, which may be held by, among others, the Debtors, and/or the Holders of Claims and Interests. The releases and assignments provided for in the Compromise are granted in consideration of, among other things, the settling parties' obligations under each of the agreements evidencing the Compromise (including the Reorganization Documents), which obligations and Compromise comprise essential and critical benefits provided to or for the Debtors and the Estates. Upon the occurrence of the Effective Date, these releases and assignments shall be binding to the fullest extent set forth in the Plan Documents.

(c)     In exchange for the SEC's consent to the treatment of the SEC Claim under the Plan, within a reasonable time after the Effective Date, LPHI shall move to voluntarily dismiss its appeal of the SEC Judgment, which appeal is currently pending in the United States Court of Appeals for the Fifth Circuit.

23.     **The Position Holder Trust.**  The parties to the Position Holder Trust Agreement are hereby authorized and directed, on the Effective Date, to execute and enter into the Position Holder Trust Agreement, and the Position Holder Trust thereby shall be created pursuant to the Plan and the Position Holder Trust Agreement.   On and after the Effective Date, all of the Position Holder Trust Assets shall be transferred, assigned, and contributed to, and vested in, the Position Holder Trust as provided in the Plan, including, without limitation, Section 4.09, Section 5.02(b), and Section 5.02(d) of the Plan.   Upon the contribution of all of the Position Holder Trust Assets, the Position Holder Trust shall be in possession of, and have title to, all of the Position Holder Trust Assets.   On the Distribution Date, Position Holder Trust Interests shall be issued to the Holders of Allowed Claims entitled to receive Distributions of Position Holder Trust Interests as of the Distribution Record Date, and New IRA Notes shall be issued to the Holders of Allowed Claims entitled to receive Distributions of New IRA Notes as of the Distribution Record Date. The Position Holder Trust is hereby authorized to issue additional Position Holder Trust Interests and New IRA Notes after the Distribution Date as provided in the Plan and the Position Holder Trust Agreement.

24.     **New IRA Notes.**

(a)     The interest rate on the New IRA Notes shall be 3%.

(b)     The stated principal amount of each New IRA Note shall be an amount equal to 32% of the dollar amount of death benefits associated with the Beneficial Ownership represented

by the Fractional Interest related to the IRA Note with respect to which the Continuing Holder Election to receive a New IRA Note was made.

25. **The Position Holder Trustee.** Effective as of the Effective Date, Mr. Eduardo S. Espinosa is hereby appointed the Position Holder Trustee. The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy.

26. **The Creditors' Trust.** The parties to the Creditors' Trust Agreement are hereby authorized and directed, on the Effective Date, to execute and enter into the Creditors' Trust Agreement, and the Creditors' Trust thereby shall be created pursuant to the Plan and the Creditors' Trust Agreement. On and after the Effective Date, all of the Creditors' Trust Assets (except for any Cash contributions to be made by the Position Holder Trust after the Effective Date pursuant to Section 6.02(b) of the Plan) shall be transferred, assigned, and contributed to, and vested in, the Creditors' Trust, as provided in the Plan, the Class Settlement Agreement, and the MDL Settlement Agreement. Upon the contribution of all of the Creditors' Trust Assets, the Creditors' Trust shall be in possession of, and have title to, all of the Creditors' Trust Assets. Notwithstanding anything to the contrary herein, the transfer or assignment of claims to the Creditors' Trust fully preserves, and does not diminish, any rights and defenses a defendant would have if such claims had been retained by the Debtors. On the Distribution Date, Creditors' Trust Interests shall be issued to the Holders of Allowed Claims entitled to receive Distributions of Creditors' Trust Interests as of the Distribution Record Date. The Creditors' Trust is hereby authorized to issue additional Creditors' Trust Interests after the Distribution Date as provided in the Plan and the Creditors' Trust Agreement.

27. **The Creditors' Trustee.** Effective as of the Effective Date, Mr. Alan M. Jacobs is hereby appointed the Creditors' Trustee. The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy.

28. **The IRA Partnership.** The parties to the IRA Partnership Agreement are hereby authorized and directed, on or before the Effective Date, to execute and enter into the IRA Partnership Agreement, and take all other necessary actions to cause the IRA Partnership to be formed as a Texas limited liability company. On and after the Effective Date, the IRA Partnership shall (a) enter into all of the Reorganization Documents to which the IRA Partnership is a party, (b)(i) accept all contributions from Assigning IRA Holders and Continuing IRA Holders, and (ii) make all contributions to the Position Holder Trust provided for in the Plan, the IRA Partnership Agreement, and the Position Holder Trust Agreement, and (c) take all other actions necessary or appropriate to effectuate and consummate all of the Reorganization Transactions and implement other provisions of the Plan, all as provided in the Plan. On the Distribution Date, IRA Partnership Interests shall be issued to the Holders of Allowed Claims entitled to receive Distributions of IRA Partnership Interests as of the Distribution Record Date. The IRA Partnership is hereby authorized to issue additional IRA Partnership Interests after the Distribution Date as provided in the Plan and the IRA Partnership Agreement.

29. **Appointment of Initial IRA Partnership Manager.** Effective as of the Effective Date, Mr. Eduardo S. Espinosa is hereby appointed the initial manager of the IRA Partnership. The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy.

30. **Appointment of CFH Agent Under Securities and Deposit Accounts Agreement.** Effective as of the Effective Date, Vida Capital, Inc. is hereby appointed the initial CFH Agent for purposes of the Securities and Deposit Accounts Agreement. The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy. Thereafter, any vacancy in the CFH Agent position shall be filled by the Position Holder Trustee.

31. **Discharge of the Chapter 11 Trustee From Duties.** Following the occurrence of the Effective Date, and continuing until the filing of the notice of substantial consummation, the Chapter 11 Trustee's duties shall include: (i) the filing of the Notice of Substantial Consummation, (ii) review and approval of the Chapter 11 Trustee's professional's invoices, (iii) overseeing and assisting with the Catch-Up Reconciliation, (iv) preparing and filing any required Chapter 11 reports, (v) assisting with the transition of the Debtors' operations and vested assets in accordance with the Plan, Confirmation Order and Reorganization Documents to the Position Holder Trust, Creditors' Trust, and IRA Partnership, (vi) assisting with the transition of servicing of the Policies and administration of Investor accounts pursuant to the Servicing Agreement, and (vii) such other matters as requested by the Successor Trustees or IRA Manager, with Trust Board oversight in accordance with the applicable Plan Documents, to facilitate carrying out their duties in accordance with the Reorganization Documents. The Chapter 11 Trustee shall be discharged from his duties in these Chapter 11 Cases upon the filing of a notice of substantial consummation in the Chapter 11 Cases as provided in Section 15.03 of the Plan, and the Chapter 11 Trustee's retention of professionals shall terminate effective as of such date. The Chapter 11 Trustee, upon discharge, shall cancel his trustee bond. Discharge of the Chapter 11 Trustee shall not affect or impair the Chapter 11 Trustee's right to seek a final ruling on any request for

statutory compensation and reimbursement of expenses made in connection with the LPHI Chapter 11 Case, or any request for his compensation and reimbursement of expenses made in connection with the LPI and LPIFS Chapter 11 Cases.

32. **Dissolution of the Committee.** The Committee shall continue in existence through the Effective Date to exercise those powers and perform those duties specified in 11 U.S.C. § 1103. Unless otherwise ordered by the Bankruptcy Court, on the Effective Date, (a) the Committee shall be dissolved and their members shall be released of all their duties, responsibilities, and obligations in connection with the Chapter 11 Cases, the Plan and the implementation of the same, save and except for their respective duties, responsibilities, and obligations as members of the Trust Boards under the Successor Trust Agreements, and (b) the Committee's retention of Professionals shall terminate as of such date, other than with respect to the submission and prosecution of applications for compensation and/or reimbursement by the Committee's Professionals and/or its members.

33. **Creation of Position Holder Trust Governing Trust Board.** On the Effective Date, the Position Holder Trust Governing Trust Board shall be formed pursuant to the Position Holder Trust Agreement.

34. **Appointment of Position Holder Trust Governing Trust Board.** Effective as the Effective Date, Bert Scalzo, Robert "Skip" Trimble, Mark Redus, Philip Loy, and Nate Evans are appointed as members of the Position Holder Trust Governing Trust Board. The Court finds and determines that such appointment is consistent with the interests of Holder of Claims and Interests and with public policy.

35.  **Creation of Creditors' Trust Governing Trust Board.**  On the Effective Date, the Creditors' Trust Governing Trust Board shall be formed pursuant to the Creditors' Trust Agreement.

36.  **Appointment of Creditors' Trust Governing Trust Board.**  Effective as of the Effective Date, Bert Scalzo, Robert "Skip" Trimble, Mark Redus, Philip Loy, and Nate Evans are appointed as members of the Creditors' Trust Governing Trust Board.  The Court finds and determines that such appointment is consistent with the interests of Holders of Claims and Interests and with public policy.

37.  **Creation of the Advisory Committee.**  On the Effective Date, the Advisory Committee shall be formed pursuant to the IRA Partnership Agreement.

38.  **Appointment of Advisory Committee.**  Effective as of the Effective Date, Bert Scalzo, Robert "Skip" Trimble, Mark Redus, Philip Loy, and Nate Evans are appointed as members of the Advisory Committee.  The Court finds and determines that such appointment is consistent with the interests of Holders of Claims Interests and with public policy.

39.  **Payment of Claim of the Texas Comptroller.**  Notwithstanding anything else to the contrary in the Plan or this Confirmation Order, the provisions of this paragraph will govern the treatment of the Second Amended Claim No. 24235 filed by the Texas Comptroller of Public Accounts (the "Texas Comptroller") in the Life Partners Holdings, Inc. case and the affiliated First Amended Claim No. 1492 filed in the Life Partners, Inc. case (collectively, the "Texas Comptroller's Claim"), and any Allowed administrative expense priority claim the Texas Comptroller may file.  The provisions of the Plan and this Confirmation Order supplement these terms where not inconsistent herewith.

(a)     Nothing provided in the Plan or this Confirmation Order shall: (1) affect or impair any statutory or common law setoff rights of the Texas Comptroller in accordance with 11 U.S.C. § 553, (2) affect or impair any rights of the Texas Comptroller to pursue any non-debtor third parties other than the Successor Entities for tax debts or claims, or (3) be construed to preclude the payment of interest on the Texas Comptroller's Allowed administrative expense priority claims, if any.

(b)     To the extent that interest is payable with respect to any Allowed administrative expense, priority, or secured tax claim of the Texas Comptroller, the interest rate shall be the applicable statutory rate of interest.

(c)     The Texas Comptroller is not required to file a motion or application for payment of administrative expense priority claims, as the Texas Comptroller's administrative expense priority claims are Allowed upon Filing pursuant to 11 U.S.C. § 503(b)(1)(D), subject to objection on substantive grounds.

(d)     Allowed Priority Tax Claims of the Texas Comptroller shall be paid in full within sixty (60) months of the Subsidiary Petition Date.  Payments shall be in monthly installments of principal and accrued interest.  The first installment is due within thirty (30) days after any such Claim becomes an Allowed Claim.  The Texas Comptroller's Allowed Priority Tax Claims, if any, shall accrue interest at the applicable statutory rate from the Effective Date until paid in full.

(e)     The automatic stay under 11 U.S.C. § 362 and the injunction contained in the Plan are hereby modified to allow the Texas Comptroller and its agents to proceed with the administrative hearing(s) for the liability that is the subject of the Texas Comptroller's Claim. The Debtors' and their Estates' rights and defenses with respect to any allegations and claims asserted against the Debtors or their Estates arising from or related to the Texas Comptroller's

Claim are hereby preserved and, notwithstanding the Texas Comptroller's Claim, the final Allowed Claim amount shall be determined based on the outcome of the resolution of the redetermination request filed by Debtors for the tax periods included in the Texas Comptroller's Claim.

40.     **Compliance With the Requirements of the Texas Department of Insurance.** Before any Servicing Company may begin servicing the Policies, the Servicing Company shall agree in the Servicing Agreement to comply with all applicable non-bankruptcy laws, including, without limitation, Texas life settlement laws and all applicable privacy laws and regulations, and will hold a life settlement broker license or a life settlement provider license granted by the Texas Department of Insurance ("TDI"). During any transition period prior to retention of a properly licensed Servicing Company, servicing of the Policies (to the extent it involves regulated activities) must be performed by either (i) Reorganized LPI only to the extent that it is entitled to do so under applicable nonbankruptcy law, using its existing amended license from TDI, or (ii) another properly licensed life settlement broker or provider.

41.     **Approval of Compensation and Reimbursement of Expenses for Persons Appointed Pursuant to the Plan.** The Court finds and determines that the provisions of the Plan and the Plan Documents providing for the post-Effective Date payment of compensation and reimbursement of expenses to the Position Holder Trustee, Creditors' Trustee, IRA Partnership Manager, Position Holder Trust Governing Trust Board, Creditors' Trust Governing Trust Board, and Advisory Committee are fair and reasonable for the services to be provided and are hereby approved in the best interests of the Estates, the Reorganized Debtors, and all creditors.

42. **Payment of Statutory Fees.** All fees due and payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by this Court, shall be paid on the Effective Date without the need to file any applications with this Court. The Position Holder Trustee shall (a) continue to pay all fees due and payable pursuant to Section 1930 of Title 28 of the United States Code until the closing, conversion, or dismissal of the Chapter 11 Cases, and (b) provide the required post-confirmation reporting to the U.S. Trustee until the Chapter 11 Cases are closed.

43. **Governmental Approvals Not Required.** This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan Documents, the Disclosure Statement, and any amendments or modifications thereto.

44. **Exemption From Transfer Taxes.** Pursuant to 11 U.S.C. § 1146(a), the issuance, transfer, or exchange of a security, or delivering an instrument of transfer, including any transfers effected pursuant to the Plan or by any of the Reorganization Documents from the Debtors or the Reorganized Debtors to the Position Holder Trust, the Creditors' Trust, Vida, or any other Person or Entity pursuant to the Plan, as applicable, may not be taxed under any law imposing a stamp tax or similar tax, and all appropriate state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

45. **Exemption From Securities Registration.** The issuance of the Trust Interests, the IRA Partnership Interests, and the New IRA Notes, to the extent they involve the issuance of "securities" for purposes of the Securities Act, are entitled to the exemption from registration provided under 11 U.S.C. § 1145 for securities issued pursuant to the Plan by a Successor to the Debtors in exchange for Claims against the Debtors. The terms of the Plan declaring the ownership of the Continuing Fractional Interests and the issuance of the Fractional Interest Certificates representing them, to the extent the Fractional Interests are "securities" for purposes of the Securities Act, is hereby deemed an issuance of securities pursuant to the Plan for purposes of the exemption from registration under the Securities Act provided under 11 U.S.C. § 1145, for securities issued by a successor to the Debtors in exchange for Claims against the Debtors.

46. **Satisfaction of Claims Against the Debtors.**

(a) The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for, and in complete satisfaction of, all Claims and Interests against the Reorganized Debtors, the Estates, and their assets, properties, or interests in property, whether known or unknown, including demands, liabilities, and Causes of Action that arose before the Effective Date, and all debts of the kind specified in 11 U.S.C. §§ 502(g), 502(h), or 502(i), in each case, whether or not: (i) a Proof of Claim or Interest based upon such debt, right, Claim, or Interest is Filed or deemed Filed pursuant to 11 U.S.C. § 501; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed pursuant to 11 U.S.C. § 502; or (iii) the Holder of such a Claim or Interest has accepted the Plan. Subject to the terms of the Plan, and/or this Confirmation Order, any default by the Debtors with respect to any Claim or Interest

that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed satisfied as to the Reorganized Debtors and the Estates on the Effective Date.

(b)     Except as otherwise provided in the Plan, the Financing Order, the DIP Financing Order, the Class Settlement Agreement, the MDL Settlement Agreement, and/or this Confirmation Order, on the Effective Date, all Claims and Interests shall be deemed satisfied against the Reorganized Debtors and Estates, and the terms of the Plan, the Financing Order, the DIP Financing Order, the Class Settlement Agreement, the MDL Settlement Agreement, and/or this Confirmation Order shall be a judicial determination of the satisfaction of all liabilities of the Reorganized Debtors and the Estates.

(c)     Nothing in the Plan or this Confirmation Order shall be construed to release, impair, compromise, waive, relinquish, or limit in any way the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor Causes of Action and other Causes of Action that will be assigned or transferred to the Creditors' Trust or the Position Holder Trust, as applicable, including the right of the Creditors' Trust or Position Holder Trust, as applicable, to prosecute, compromise, settle, assign, receive proceeds from, or otherwise control those Causes of Action, pursuant to the terms of the Plan, the Class Settlement Agreement, or the MDL Settlement Agreement.

47.     **Releases/Permanent Injunction Relating to Claims/Interests.**

(a)     <u>Releases by Debtors and Estates</u>.  Except as otherwise expressly provided in this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each of the Debtors and the Reorganized Debtors on its own behalf and as the representative of its respective Estate, shall and is hereby deemed to completely and forever release, waive, void, extinguish, and discharge unconditionally each and

all of the Chapter 11 Trustee, the Committee and its current and former members (collectively, the "Exculpated Parties") of and from any and all Claims, Causes of Action, other obligations, suits, demands, judgments, damages, debts, rights, remedies, and liabilities of any nature whatsoever, and/or any Interest, or other right of a Holder of an equity security or other ownership interest that is terminated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors, or their respective assets, property, and Estates, the Chapter 11 Cases, proposed financing or the financing transaction evidenced by the Financing Motion and Financing Order, the DIP Financing Order, or the proposal, negotiation, or pursuit of confirmation of the Plan or any other potential plan of reorganization (or approval of a related disclosure statement), including, but not limited, to the Term Sheet, the Reorganization Transactions, or the Vida Plan Collaboration Agreement or the transactions contemplated thereby, that may be asserted by or on behalf of any of the Debtors, the Reorganized Debtors, or their respective Estates, except insofar as they are assigned to the Creditors' Trust or the Position Holder Trust, as applicable, pursuant to the terms of the Plan, the Class Action Settlement Agreement, and/or the MDL Settlement Agreement. Notwithstanding the foregoing or any other provision of this paragraph, no Exculpated Party shall be released from any acts constituting criminal conduct, willful misconduct, fraud, or gross negligence that proximately causes damages.

(b) <u>Releases by Holders of Claims and Interests</u>. Except as otherwise expressly provided in this Confirmation Order, on the Effective Date, for good and valuable consideration, to the fullest extent permissible under applicable law, each Person that has held, currently holds or may hold a Claim, Cause of Action, or any other obligations, suits, demands, judgments, damages, debts, rights, remedies, or liabilities of any nature whatsoever, and/or any Interest, or other right of a Holder of an equity security or other ownership interest that is terminated, shall be deemed to completely and forever release, waive, void, extinguish and discharge unconditionally each and all of the Exculpated Parties of and from any and all Claims, Causes of Action, or any other obligations, suits, demands, judgments, damages, debts, rights, remedies, or liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), and/or any and all Interests or other rights of a Holder of an equity security or other ownership interest, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are or may be based in whole or part on any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date (including before the Petition Date) in connection with or related to any of the Debtors, the Reorganized Debtors, or their respective assets, property, and Estates, the Chapter 11 Cases, proposed financing or the financing transactions evidenced by the Financing Motion and Financing Order, the DIP Financing Order, or the proposal, negotiation, or pursuit of confirmation of the Plan or any other potential plan of reorganization (or approval of a related disclosure statement), including, but not limited to, the Term Sheet, the Reorganization Transactions, or the Vida Plan Collaboration Agreement or the transactions contemplated thereby, except insofar as they are assigned to the Creditors' Trust or the Position Holder Trust,

as applicable, pursuant to the terms of the Plan, the Class Action Settlement Agreement, and/or the MDL Settlement Agreement. Notwithstanding the foregoing or any other provision of this paragraph, no Exculpated Party shall be released from any acts constituting criminal conduct, willful misconduct, fraud, or gross negligence.

(c)     Nothing in the Plan or this Confirmation Order shall be construed to release, impair, compromise, waive, relinquish, or limit in any way the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor Causes of Action and other Causes of Action that will be assigned or transferred to the Creditors' Trust or the Position Holder Trust, as applicable, including the right of the Creditors' Trust or Position Holder Trust, as applicable, to prosecute, compromise, settle, assign, receive proceeds from, or otherwise control those Causes of Action, pursuant to the terms of the Plan, the Class Settlement Agreement, or the MDL Settlement Agreement.

(d)     <u>No Governmental Releases</u>. Nothing in this Confirmation Order or the Plan shall discharge, release, resolve, exculpate, preclude, or enjoin any action with respect to any liability to the United States or any state or local authority that is not a "claim" as defined in 11 U.S.C. § 101(5), including, but not limited to, a claim for violation of any criminal laws of the United States or any state or local authority against any party or person, and nothing in this Confirmation Order divests any tribunal of any jurisdiction it may have under police or regulatory power to interpret this Confirmation Order or to adjudicate any defense asserted under this Confirmation Order; *provided, however*, that the claims of the Texas Comptroller relating to pre-petition tax periods shall be governed by paragraph 39 of this Confirmation Order and claims of the Internal Revenue Service relating to pre-petition tax periods shall be limited to the proofs of claim filed by the Internal Revenue Service and their resolution shall be governed by the Plan

and the Form 870-AD, Offer to Waiver Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment, accepted by the Internal Revenue Service on September 6, 2016, for the withholding tax issues and by the settlement that is in process on the income tax issues following the Appeals Conference held on June 30, 2016.

48. **Permanent Injunction Relating to Assets Transferred Pursuant to the Plan.**

(a)     Except as provided in this Confirmation Order, as of the Effective Date: (i) all Persons or Entities that hold, have held, or may hold a Claim or any other obligation, suit, judgment, damages, demand, debt, right, remedy, Cause of Action, or liability of any nature whatsoever, or any Interest or other right of a Holder of an equity security or other ownership interest relating to any of the Debtors or the Reorganized Debtors or any of their respective assets, property, and Estates; and (ii) all other parties in interest are, and shall be, permanently, forever, and completely stayed, restrained, prohibited, barred, and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, Causes of Action, or liabilities of any nature whatsoever, or any Interests or other right of a Holder of an equity security or other ownership interest:

(A)     commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding (including, without limitation, any judicial, arbitral, administrative, or other proceeding) in any forum against the Debtors, the Reorganized Debtors, the Chapter 11 Trustee, the Committee or its current or former members, any Successor Entity, or any other party that seeks a determination of the ownership or any other rights as of the Effective Date or any prior date, of the Policies or any property of the Estates or any Fractional Positions or other property transferred or assigned to the Reorganized Debtors, Position Holder Trust, Creditors' Trust, IRA Partnership, or Vida pursuant to the terms of the Plan and the Plan Documents;

(B)     enforcing, attaching (including, without limitation, any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order that may be enforced against assets that are to be transferred or

assigned by any of the Debtors, Reorganized Debtors, or Successor Entities, or are to be administered under the Plan or any Plan Document;

(C) creating, perfecting, or in any way enforcing in any manner, directly or indirectly, any Lien against assets that are to be Distributed, contributed or otherwise assigned or transferred by the Debtors, Reorganized Debtors, or Successors Entities, or are to be administered under the Plan or any Plan Document;

(D) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any property to be Distributed, contributed or otherwise transferred or assigned by the Debtors, Reorganized Debtors, or Successor Entities, or are to be administered under the Plan or any Plan Document;

(E) commencing or continuing in any manner any judicial, arbitration, or administrative proceeding in any forum against the Debtors or any Exculpated Parties that does not comply with, or is inconsistent with, the provisions of the Plan, any Plan Document, and/or this Confirmation Order; and

(F) the taking of any act in any manner and/or in any place that is inconsistent with, conflicts with, or violates the provisions of the Plan, any Plan Document, and/or this Confirmation Order.

(b) Nothing in the Plan or this Confirmation Order shall be construed to release, impair, compromise, waive, relinquish, or limit in any way the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor Causes of Action and other Causes of Action that will be assigned or transferred to the Creditors' Trust or the Position Holder Trust, as applicable, including the right of the Creditors' Trust or Position Holder Trust, as applicable, to prosecute, compromise, settle, assign, receive proceeds from, or otherwise control those Causes of Action, pursuant to the terms of the Plan, the Class Settlement Agreement, or the MDL Settlement Agreement.

49. **Exculpation and Permanent Injunction Relating to Exculpated Parties.**

(a) Notwithstanding anything to the contrary contained in this Confirmation Order, and to the maximum extent permitted by applicable law, the Exculpated Parties shall not have or incur any liability to any holder of a Claim or Interest for any act or omission in connection with,

related to, or arising out of, or be liable for any claims or Causes of Action in connection with, related to, or arising out of any matter related to the Chapter 11 Cases, including, without limitation: (i) negotiations regarding or concerning the Plan, the Term Sheet, the Disclosure Statement, and any and all alternate plans of reorganization (and related disclosure statements), or underlying transactions, whether or not actually proposed by any Person in these Chapter 11 Cases, (ii) the Vida Plan Collaboration Agreement and the transactions contemplated thereby, (iii) proposed financing transactions or financing transactions actually entered into by the Chapter 11 Trustee, the Debtors or any Successor Entity, (iv) any settlement or agreement in the Chapter 11 Cases, (v) the pursuit of confirmation of the Plan or opposing any other plan, (vi) the consummation of the Plan, including, with respect to the Chapter 11 Trustee, carrying out duties following the Effective Date, (vii) the offer, issuance, and distribution of any securities issued or to be issued pursuant to the Plan, whether or not such distribution occurs following the Effective Date, (viii) the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor Causes of Action or other Causes of Action that will be transferred or assigned to the Successor Entities, or (ix) the administration of the Plan or property to be distributed under the Plan, except for actions found by Final Order to be willful misconduct, gross negligence, fraud, breach of fiduciary duty, or criminal conduct, any of which proximately causes damages. The Exculpated Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

(b)     Except as otherwise expressly provided in the Plan, the Financing Order, or this Confirmation Order, all Persons or Entities who have held, hold, or may hold Claims against, or Interests in, the Debtors are permanently enjoined, as of and after the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or integrated after

the Effective Date, from commencing or continuing in any manner any claim or Cause of Action against any of the Exculpated Parties for any act or omission in connection with, related to, or arising out of any matter related to the Chapter 11 Cases, including, without limitation: (i) negotiations regarding or concerning the Plan, the Term Sheet, the Disclosure Statement, and any and all alternate plans of reorganization and related disclosure statements, or underlying transactions, whether or not actually proposed by any Person in these Chapter 11 Cases, (ii) the Vida Plan Collaboration Agreement and the transactions contemplated thereby, (iii) proposed financing transactions or financing transactions actually entered into by the Chapter 11 Trustee, the Debtors, or any Successor Entity, (iv) any settlement or agreement in the Chapter 11 Cases, (v) the pursuit of confirmation of the Plan or opposing any other plan, (vi) the consummation of the Plan, including, with respect to the Chapter 11 Trustee, carrying out duties following the Effective Date, (vii) the offer, issuance, and distribution of any securities issued or to be issued pursuant to the Plan, whether or not such distribution occurs following the Effective Date, (viii) the Assigned Causes of Action, the Additional Assigned Causes of Action, or any of the Investor Causes of Action or other Causes of Action that will be transferred or assigned to the Successor Entities, or (ix) the administration of the Plan or property to be distributed under the Plan, except for actions found by Final Order to be willful misconduct, gross negligence, fraud, breach of fiduciary duty or criminal conduct, any of which proximately causes damages.

50. **Preservation of Rights and Causes of Action.**

(a)      In accordance with 11 U.S.C. § 1123(b), except to the extent such rights, Claims, Causes of Action, defenses, and counterclaims are expressly and specifically released in connection with the Plan, any settlement agreement approved during the Chapter 11 Cases (including, but not limited to, the Class Action Settlement and the MDL Settlement), any

contract, instrument, release, indenture or other agreement entered into in connection with the Plan and/or this Confirmation Order: (i) any and all rights, Claims, Causes of Action (including Avoidance Actions), defenses, and counterclaims of or accruing to the Debtors or their Estates shall be automatically preserved, reserved, assigned, and/or transferred to the Creditors' Trust (or the Position Holder Trust, to the extent that such Causes of Action are included in the Policy Related Assets), whether or not litigation relating thereto is pending on the Effective Date, whether or not such rights, Claims, Causes of Action, defenses, and counterclaims may be asserted or assertable against the Holder of an Allowed Claim, and whether or not any such rights, Claims, Causes of Action, defenses and counterclaims have been scheduled, listed, or referred to in the Plan, the Disclosure Statement, the Plan Supplement, the Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court; and (ii) neither the Creditors' Trustee nor the Position Holder Trustee waives, relinquishes, or abandons (nor shall either be estopped or otherwise precluded from asserting) any right, Claim, Cause of Action, defense, or counterclaim that constitutes property of the Estates, the Position Holder Trust, or the Creditors' Trust, or any of them, by transfer, assignment, or otherwise, whether or not: (A) such right, Claim, Cause of Action, defense, or counterclaim has been, scheduled, listed, or referred to in the Plan, the Disclosure Statement, the Plan Supplement, the Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court, (B) such right, Claim, Cause of Action, defense, or counterclaim is currently known to the Debtors, or (C) a defendant in any litigation relating to such right, Claim, Cause of Action, defense, or counterclaim Filed a Proof of Claim in the Chapter 11 Cases, Filed a notice of appearance or any other pleading or notice in the Chapter 11 Cases, voted for or against the Plan, or received or retained any consideration under the Plan.

(b)     Without in any manner limiting the generality of the foregoing, notwithstanding any otherwise applicable principle of law or equity, including, without limitation, any principles of judicial estoppel, res judicata, collateral estoppel, issue or claim preclusion, or any similar doctrine, the failure to list, disclose, describe, identify, or refer to a right, Claim, Cause of Action, defense, or counterclaim, or potential right, Claim, Cause of Action, defense, or counterclaim, in the Plan, the Disclosure Statement, the Plan Supplement, the Bankruptcy Schedules, the Bankruptcy SOFAs, or any other document Filed with the Bankruptcy Court, and/or the scheduling of a Claim in the Bankruptcy Schedules as undisputed, liquidated, and noncontingent, shall in no manner waive, eliminate, adversely impact, modify, release, prevent, or alter any Estate's or either Successor Trust's right to commence, prosecute, defend against, compromise, settle, assign, receive proceeds from, realize upon, or otherwise control any right, Claim, Cause of Action, defense, or counterclaim that a Debtor or its Estate has, or may have, as of the Effective Date.  The Creditors' Trustee may, subject to the Plan and the Creditors' Trust Agreement, commence, prosecute, defend against, compromise, settle, assign, receive proceeds from, realize upon, or otherwise control any right, Claim, Cause of Action, defense, and counterclaim assigned, transferred, and/or contributed to it, as provided in the Plan, the Class Action Settlement Agreement, the MDL Settlement Agreement, and the Creditors' Trust Agreement, in accordance with what is in the best interests, and for the benefit, of the Creditors' Trust Beneficiaries.  The Position Holder Trustee may, subject to the Plan and the Position Holder Trust Agreement, commence, prosecute, defend against, compromise, settle, assign, receive proceeds from, realize upon, or otherwise control any right, Claim, Cause of Action, defense, and counterclaim included in the Policy Related Assets, as provided in the Plan and the

Position Holder Trust Agreement, in accordance with what is in the best interests, and for the benefit, of the Position Holder Trust Beneficiaries.

51. **Modification of the Plan.** Subject to the restrictions set forth in 11 U.S.C. § 1127 and to the October 7 Findings and Conclusions, the Plan Proponents have reserved, and are hereby granted, the right to alter, amend, or modify the Plan and the other Reorganization Documents at any time after Confirmation and before the Plan is substantially consummated (subject to the terms of the Reorganization Documents, as applicable). Prior to substantial consummation, appropriate technical adjustments and modifications to the Plan and other Reorganization Documents may be made without further order or approval of this Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests (subject to the terms of the Reorganization Documents, as applicable); *provided, however*, any such modification to the Reorganization Document that increases fees payable by Continuing Fractional Holders, or by the Position Holder Trust in its capacity as the registered Holder of Beneficial Ownership in Policies, will be subject to Court approval.

52. **Notice of Entry of Confirmation Order.** Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Claims Agent shall file and serve notice of entry of this Confirmation Order (the "Notice of Confirmation Order") on all parties entitled to receive notice in the Chapter 11 Cases by causing the Notice of Confirmation Order to be delivered to such parties by first-class mail, postage prepaid, within ten (10) Business Days after entry of this Confirmation Order; *provided, however*, that the Notice of Confirmation Order shall not be served on any person or entity to whom the Plan Proponents were excused from serving the Confirmation Hearing Notice by the *Order Approving (I) Form of Ballots and Solicitation,*

*Voting, Balloting, and Election Procedures; (II) Procedures Relating to the Confirmation of the Amended Plan; (III) Temporary Estimation of Investor Claims for Voting Purposes; and (IV) Other Relief Relating to the Plan Solicitation and Plan Confirmation Process* [Dkt. No. 2595] and any person or entity for which the Confirmation Hearing Notice was returned by the United States Postal Service or other carrier as undeliverable (collectively, the "Undeliverable Address Parties"), unless the Debtors have been informed in writing by such person or entity of that person or entity's new address. The Notice of Confirmation Order shall include the Pre-Petition Default Payment Deadline, which runs 30 days after the Confirmation Date. Such notice of the entry of the Confirmation Order is adequate under the particular circumstances and no other or further notice is necessary.

53. **Notice of Effective Date.** Within three (3) Business Days after the occurrence of the Effective Date, the Chapter 11 Trustee shall file notice of the occurrence of the Effective Date (the "Notice of Effective Date") and shall serve a copy of same on all parties entitled to receive notice in the Chapter 11 Cases; *provided, however*, that the Notice of Effective Date shall not be served on any Undeliverable Address Party, unless the Chapter 11 Trustee has been informed in writing by such person or entity of that person or entity's new address. The Notice of Effective Date shall include notice regarding the deadlines fixed by the Effective Date, which include: (a) the Distribution Record Date, (b) the deadline to file proofs of claim with respect to the rejection of executory contracts or unexpired leases, (c) the Administrative Claims Bar Date, (d) the Catch-Up Cutoff Date, and (e) the Claims Objection Deadline. Such notice is adequate under the particular circumstances and no other or further notice is necessary.

54. **Conditions to Confirmation.** All conditions precedent to Confirmation set forth in Section 15.01 of the Plan have been satisfied or waived in accordance with Section 15.04 of the Plan.

55. **Conditions to Effective Date.** The Plan shall not become effective unless and until the conditions set forth in Section 15.02 of the Plan have been satisfied or waived in accordance with Section 15.04 of the Plan. The determination to make any such waiver shall be in the discretion of the Plan Proponents and shall not require any further notice, approval, or order of the Court. To the extent the Plan Proponents determine to waive any condition set forth in Section 15.02 of the Plan, not less than three days prior to the anticipated Effective Date, the Plan Proponents shall File a notice of waiver to clarify what condition has been waived; *provided, however*, such notice shall be served only via CM/ECF.

56. **Retention of Jurisdiction.**

(a) Upon the Effective Date, this Court may properly retain, and, if appropriate, shall exercise jurisdiction over the matters set forth in Article XVII of the Plan and 11 U.S.C. § 1142.

(b) The Court hereby further retains exclusive jurisdiction to consider any and all claims against any of the Exculpated Parties or Professionals involving or relating to: (i) the administration of the Chapter 11 Cases, (ii) any rulings, orders, or decisions in the Chapter 11 Cases, (iii) any aspects of the Debtors' Chapter 11 Cases, including, without limitation, the decision to commence the Chapter 11 Cases, the development, implementation, or rejection of any potential chapter 11 plan or restructuring transaction, including not limited to the Plan, the Vida Plan Collaboration Agreement and the transactions contemplated thereby, the proposed financing transactions or financing transactions actually entered into by the Chapter 11 Trustee or the Debtors and actions taken or not taken during the Chapter 11 Cases, (iv) any asserted

claims based upon or related to prepetition obligations, Claims or Interests administered in the Chapter 11 Cases, and (v) ownership of the Fractional Positions, including, without limitation, any claims related to any determination whether Fractional Positions belong to the Debtors' estates, the Position Holders Trust or any other parties.

(c)    The Court hereby further retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Confirmation Order.

57.    **Enforceability.**  Each term and provision of the Plan, as it may have been altered or interpreted by this Court, is valid and enforceable pursuant to its terms.

58.    **Conflicts Between Confirmation Order, the Plan, and Plan Documents.**  The failure to specifically include any particular provision of the Plan in this Confirmation Order, the Class Action Final Approval Order, or any further order of this Court contemplated by this Confirmation Order will not diminish the effectiveness of such provision, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.  The provisions of the Plan Documents, the Class Action Final Approval Order, this Confirmation Order, and any further order of this Court contemplated by this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided, however*, that if there is any inconsistency between the provisions of the Plan, the Plan Documents, the Class Action Final Approval Order, this Confirmation Order, or any further order of this Court contemplated by this Confirmation Order, the terms and conditions contained in the Class Action Final Approval Order, this Confirmation Order, or such further order of this Court shall govern and shall be deemed a modification to the Plan and shall control and take precedence.  The provisions of this Confirmation Order are integrated with each other and are

non-severable and mutually dependent, unless expressly stated by further order of this Court, and the titles, captions, and headings contained in this Confirmation Order have been included only as a matter of convenience.

59. **Immediate Effectiveness of Confirmation Order.** The requirements under Bankruptcy Rule 3020(e) that an order confirming a plan is stayed until the expiration of 14 days after entry of the order are hereby waived. This Confirmation Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 3020(e), 6004(g), 6006(d), 7062, or otherwise.

##End of Order##