

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

The following constitutes the ruling of the court and has the force and effect therein described.

Signed January 17, 2017

United States Bankruptcy Judge

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 15-40289-rfn-11 |
| LIFE PARTNERS HOLDINGS, INC., | § | |
| DEBTOR | § | Hearing: December 15, 2016  1:30 p.m. |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER (Docket No. 3659) GRANTING REQUEST FOR ALLOWANCE AND PAYMENT OF SECTION 503(B) ADMINISTRATIVE CLAIM (Docket No. 3547)**

CAME ON TO BE CONSIDERED the Request For Allowance And Payment Of Section 503(b) Administrative Claim, [Docket No. 3547] (the "Application") filed by Susan B. Hersh, P.C., counsel for the Small Individual Investors Group ("Applicant") and the sole Objection filed thereto by the United States Trustee.  Upon consideration of the Application, the record in this case, the evidence presented (and docket filings and proceedings of which the Court takes judicial notice), and the arguments of counsel, and considering that no objection was filed by the statutory fiduciaries with whom Applicant worked during the case, the Court granted the Application, pursuant to the Order Granting Request for Allowance and Payment of Section 503(B) Administrative Claim, entered December 15, 2016 (Docket No. 3659).  In support of the Application and entry of the Order, the Court made its oral ruling and

findings, which are incorporated herein as additional findings, by reference. The Court further finds as follows:

## FINDINGS OF FACT

1. Applicant made a substantial contribution to the success of this case. The Court valued her contribution and her opinions before this Court. The Court's observation is that Applicant's efforts contributed to a solution and advocated for concrete improvements, which the Court, in many instances, agreed with.

2. Applicant's efforts and services and contributions made were not duplicative of the statutory fiduciaries and brought a different perspective to the case and the fiduciaries that was valuable and contributed to the success of the case.

3. Applicant, through its involvement, has provided a direct, significant and clearly demonstrable benefit to the estate. The following are specific, identifiable and tangible contributions made by Applicant—any one of which provided value for the investors and the estate in excess of the substantial contribution award being sought herein. Without limitation, Applicant:

    a. Significantly assisted in the formulation of the structure of the initial plan through substantial participation in the negotiation of the term sheet (Trial Ex. 12 and 41; Docket No. 1032-1, Exhibit A) followed by extensive participation in the negotiation of the terms of the initial plan and all subsequent iterations thereof—including supporting the separate and non-duplicative efforts of Class Counsel and the Class Plaintiffs to compromise the "Ownership Issue" and allow investors to elect to retain ownership or pool their positions going forward, creation of a trust to own a pool of insurance positions contributed, creation of a litigation trust for unsecured creditors, supporting the separate and non-duplicative efforts of Class Counsel and Class Plaintiffs to compromise of ownership issues for a percentage of all interests, the insurance trust would own and operate the servicing company and the borrowing by the estate from post-petition maturities, with 10% interest, pending confirmation of the plan (Trial Ex. 17, Docket No. 1073)—the basic structure of the plan ultimately confirmed;

b. Discovered the existence and fought for a solution to the "Pre-Petition Surprise Defaults" issue where "new" pre-petition premiums were added to an investor's account of outstanding balances as a result of the Trustee's review and reconstruction of records;

c. Advocated for and negotiated a procedure to allow investors to be able to dispute the validity of the "Pre-Petition Surprise Defaults" without first having to pay the disputed amount, including a the creation of a procedure that would be fair and accessible to an investor, which procedure was adopted fully into the plan. .;

d. Identified an error in the plan that mistakenly subtracted outstanding defaults from an investor's rescission claim --- mistake corrected and which correction benefitted all investors going into the Creditors' Trust from having an improper deduction from the amount of their respective share;

e. Advocated against the plan provision that only Post-Petition Maturities as of August 1, 2016, would be paid out to Investors who timely elected appropriately. Applicant negotiated with the Plan Proponents to amend the plan to provide that the Post-Petition Maturities that were to be paid out were those that matured within ten (10) days following confirmation -- which would be approximately November 11, 2016. The difference in maturities to be paid out between August 1, 2016 and November 11, 2016 is $24,046,239.96. This provision was formally filed as a stipulation between Applicant and others identified and the Joint Plan Proponents. (Trial Ex. 46, Docket No. 3422).

f. Applicant negotiated with the Plan Proponents to amend the plan provision so that Post-Petition Maturities would be paid to investors regardless of election (or whether any election was made). Same was formally included in stipulation with the Court that was incorporated into the revised plan. (Trial Ex. 46, Docket No. 3422). Same was reflected in the ultimate plan confirmed as amended Section 4.21.

g. Clarified that an investor could receive his Post-Petition Maturities remaining after offset.

h. One of the initial Advocates, following the filing by Class Counsel and Class Plaintiffs of the Ownership Adversary Proceeding, for the preservation of an investor's right to claim ownership interest notwithstanding his filing of a proof of claim or failure to intervene in the pending adversary (in opposition to pending motion (Trial Ex. 9, Docket # 647) attempting to create a waiver) —objection sustained and Court held investors filing a proof of claim, or not intervening, would not waive their right to claim ownership;

i. Advocated for the removal of original Schedule F blanket scheduling of fractional interest holders as contingent, disputed and unliquidated, and for a corresponding

       extension of the Bar Date. Extension of Bar Date agreed to and implemented by Trustee through amendment of LPI's Schedule F on an Investor and by-position level. (Trial Ex. 8, Docket No. 620);

   j. Initial Advocate to enable investors to fax in ballots and extension of voting deadline, over opposition to same – permission granted;

   k. Advocated against a fee payable to Vida on sold or lapsed policies as outside the terms of the Disclosure Statement – objection sustained.

4. Applicant's participation was an integral and significant part of the formulation of resolution of the case when the case was otherwise at a critical and fatal impasse and which formulation was the bedrock of the confirmed plan.

5. Applicant was, as aforementioned, instrumental in formulating the first financing available to the Estate, by using post-petition maturities, (Trial Ex. 13, 17, and 16, Docket No's. 958, 1073 and 1079) which was necessary to pay ongoing premium obligations, costs of administration and professional fees –when no other source of funding was available – and gaining support from the greater creditor body to support the reorganization efforts and interim financing mechanism.

6. Applicant, as aforementioned, advocated for and obtained the improvements in the confirmed plan, as set forth in that certain stipulation and resolution of certain plan objections (Trial Ex. 46, Docket No. 3422), which terms were incorporated into the confirmed plan –which, at a minimum, caused an additional $24 million to be distributed to investors from post-petition maturities, along with other economic improvements.

7. Applicant made a substantial contribution in the present case and the record in this case supports that Applicant has satisfied the standards of Section 503(B).

8. The contributions attributable to Applicant flow directly from Applicant's active involvement in this case.

9. The contributions attributable to Applicant benefitted all investors in this case.

10. The fees approved herein are reasonable, in terms of the time spent, the nature and extent and value of such services and are far less than the cost of comparable services being charged the estate in this case for a professional of similar experience and ability. The fees sought represent "actual and necessary" fees incurred in rendering the services outlined in the Application.

11. Applicant had an overall positive effect on the outcome of this case.

12. The fact that Applicant might proceed to make a request for compensation for substantial contribution under 503(b) was duly noticed to all creditors in the approved Disclosure Statement (Docket No. 2500, Section 4.04, fn. 28) at solicitation of approval of the plan.

13. The Applicant substantially and materially complied with Guidelines for estate professionals under Local Bankruptcy Rules for the Bankruptcy Courts of the Northern District of Texas ("Guidelines").

14. Applicant has also waived rights to pursue reimbursement of expenses ordinarily provided to estate professionals retained under 11 U.S.C. §327 under the Guidelines, such as, waiver of expenses for application preparation and defense which were substantial; courier; postage; filing fees; parking and air transportation. The Court recognizes these concessions as material recognition by Applicant that the Guidelines are not directly applicable to substantial contribution claims under 503(b) because of the difficulty to trace causal connection with such expenses with substantial benefit.

## CONCLUSIONS OF LAW

15. The Applicant made a substantial contribution, which benefitted the bankruptcy proceedings under 11 U.S.C. 503§(b)(4) by providing professional services of an attorney to an 11 U.S.C. 503(b)(3) creditor group formed under Bankr. R. 2019. *In re DP Partners, Ltd.* 106 F.3d 667 (5th Cir. 1997).

16. This court has expertise and the substantial base to evaluate the Application made by Applicant from observations of its conduct at trial and evidence adduced with respect to out-of-court conduct, which was no doubt of the same level of advocacy and proficiency. *American Beneficial Life Ins. Co. v. Baddock (In re First Colonial Corp.)*, 544 F.2d 1291 (5th Cir. 1977).

17. The Applicant need not prove as a condition to recovery for substantial benefit that it had no self-deprecating, altruistic interest. *DP Partners, Supra.*

18. The Applicant's efforts are endorsed by prevailing 5th Circuit precedent to promote, under exceptional circumstances when required, meaningful contributions by non-estate professionals. Such exceptional circumstances here warranted the meaningful contributions made by Applicant as detailed in the findings. *In re Consolidated Bancshares, Inc.*, 785 F.2d 1249 (5th Cir. 1986).

19. The Applicant's efforts were not duplicative and in fact were at times adverse to the efforts of the formal committee and the Chapter 11 trustee toward the common objective of a plan of reorganization. *In re Mirant Corp.* 334 B.R. 113 (N.D. Tex. Ft. Worth Div. 2006).

20. The Applicant's efforts were of benefit to all creditors of the Estate and not limited to its clients. *Lebron v. Mechem*, 27 F.3d 937 (3rd Cir. 1994).

21. The Applicant's efforts were actual and necessary, and reasonable under *In re First Colonial, Supra*, and Johnson v. Georgia Highway Express, Inc., 488 F. 2d 714 (5th Cir. 1974).

22. To the extent applicable, a finding of fact shall be considered also as a conclusion of law and *vice-versa*.

******END OF ORDER*******.