



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 22, 2019**

**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Life Partners Holdings, Inc. et al., | § | Case No. 15-40289-mxm-11 |
| | § | Jointly Administered |
| Debtors. | § | Chapter 11 |
| | § | |

## MEMORANDUM OPINION
## AND ORDER REGARDING POST-CONFIRMATION
## UNITED STATES TRUSTEE'S QUARTERLY FEES
*Relates to ECF No. 4307, 4346*

On July 17, 2019, the Court held a hearing on two motions dealing with a statutory amendment to 28 U.S.C. § 1930(a)(6), which increased the United States Trustee quarterly fee schedule effective January 1, 2018. In the first motion,[1] the Life Partners Position Holder Trust ("**PHT**") requests an order finding that the amendment (a) does not apply to Chapter 11 cases that were filed prior to the effective date of the amendment, or (b) is unconstitutional. In the second

---

[1] ECF No. 4307.

motion,[2] the U.S. Trustee asks for an order granting summary judgment and dismissing the PHT's motion, arguing that the PHT motion seeks relief that can be sought only through an adversary proceeding.

For the reasons explained below, the Court grants the PHT's motion because the statutory amendment does not apply to these Life Partners Chapter 11 cases, and even if the amendment does apply, it is unenforceable because it is unconstitutional. The Court also grants the U.S. Trustee's motion in part and converts this contested matter to an adversary proceeding for the balance of the contested issues.

## I. JURISDICTION AND VENUE

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## II. BACKGROUND FACTS

### A. Bankruptcy filing and plan confirmation

Life Partners Holdings, Inc. ("*LPHI*") filed a voluntary Chapter 11 petition on January 20, 2015. On May 19, 2015, pursuant to this Court's April 7, 2015 authorization,[3] H. Thomas Moran, II, Chapter 11 trustee (the "*Chapter 11 Trustee*"), initiated Chapter 11 bankruptcy cases for two subsidiaries of LPHI (the "*Subsidiary Debtors*"). Thereafter, the LPHI case and the Subsidiary Debtors' cases (collectively, the "*Life Partners Chapter 11 Cases*") were ordered jointly administered for procedural purposes.[4]

---

[2] ECF No. 4346.
[3] ECF No. 261.
[4] ECF No. 367.

On October 27, 2016, the Chapter 11 Trustee, the Subsidiary Debtors, and the official committee of unsecured creditors (the "***Creditors' Committee***") (collectively, the "***Plan Proponents***") filed their *Revised Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc. et. al., Pursuant to Chapter 11 of the Bankruptcy Code* (the "***Plan***").[5]

On November 1, 2016 (the "***Plan Confirmation Date***"), this Court confirmed the Plan and entered its *Order Confirming Revised Third Amended Joint Plan of Reorganization of Life Partners Holdings, Inc., et al. Pursuant to Chapter 11 of the Bankruptcy Code* (the "***Confirmation Order***").[6]

On December 9, 2016, the Plan Proponents filed their notice that the Plan became effective as of such date (the "***Effective Date***").[7]

Under the Plan, the PHT was established, in part, to administer the portfolio of life insurance policies for the benefit of thousands of investors.[8] Michael J. Quilling was appointed as successor Trustee of the PHT (the "***Position Holder Trustee***") by the Life Partners Governing Trust Board pursuant to the provisions of the Plan and Position Holder Trust Agreement.[9]

The Confirmation Order provides that all fees due under 28 U.S.C. § 1930 "shall be paid on the Effective Date" and that "the Position Holder Trustee shall (a) continue to pay all fees due and payable pursuant to [section 1930] until the closing, conversion, or dismissal of the Chapter 11 cases, and (b) provide the required post-confirmation reporting to the U.S. Trustee until the

---

[5] ECF No. 3427.

[6] ECF No. 3439.

[7] ECF No. 3615.

[8] *See generally* Plan §§ 4.09, 5.02(b), 5.02(d) & 5.04(d); Confirmation Order ¶¶ 23–25.

[9] *See* Plan §§ 5.04, 9.03; Position Holder Trust Agreement § 6.03.

Chapter 11 Cases are closed."[10]  As required under the Plan, the Position Holder Trustee files the Post Confirmation Quarterly Operating Reports and pays the assessed U.S. Trustee's fees owing for each of the Life Partners Chapter 11 Cases.

When the Plan was confirmed in 2016, § 1930 of title 28 provided that the payment of quarterly fees to the U.S. Trustee would range between $6,500 and $30,000.  In no event would the quarterly fee ever exceed $30,000 regardless of the amount of the disbursements for any given calendar quarter.[11]

In accordance with the existing U.S. Trustee fee regime in place on the Plan Confirmation Date, the Life Partners Chapter 11 Cases were assessed, and the Position Holder Trustee paid, the following U.S. Trustee fees during 2017:

- 2017 Quarter 1:  $6,500.00
- 2017 Quarter 2:  $6,500.00
- 2017 Quarter 3:  $13,000.00
- 2017 Quarter 4:  $30,000.00
- ***Total 2017 U.S. Trustee Fees paid:  $56,000***

**B. Dramatic increase in United States Trustee quarterly fees**

In October 2017, Congress amended 28 U.S.C. § 1930(a)(6) (the "***2017 Amendment***") to increase the U.S. Trustee quarterly fees when (i) a Chapter 11 debtor's disbursements equal or exceed $1 million during a quarter, and (ii) the United States Trustee System Fund balance was below $200 million in the most recent fiscal year.[12]  From January 1, 2018 onward, the U.S.

---

[10] Confirmation Order ¶ 42, at 34.
[11] 28 U.S.C. § 1930(a)(6) (2008) (amended by Pub. L. No. 115–72, Div. B, § 1004(a), 131 Stat. 1232 (2017)).
[12] 28 U.S.C. § 1930(a)(6) (2019).

Trustee has assessed and continues to assess fees based upon the increased fee schedule in all open Chapter 11 cases that are subject to the U.S. Trustee program, regardless of when such cases were filed.

The details of the 2017 Amendment, and the history of the statute, are detailed in *In re Buffets, LLC*[13] and *In re Circuit City Stores, Inc.*[14] As those opinions note, the U.S. Trustee argues that in districts that are part of the U.S. Trustee program (the "***U.S. Trustee districts***"), the increased fees apply to all Chapter 11 cases, regardless of when they were filed.  In contrast, in the six federal judicial districts in Alabama and North Carolina that operate under the Bankruptcy Administrator Program (the "***BA districts***"), the increased fees apply only to Chapter 11 cases that are filed on or after October 1, 2018.

As a result, for the first three quarters of 2018, the U.S. Trustee assessed the Life Partners Chapter 11 Cases (which are filed in a U.S. Trustee district) the following amounts for U.S. Trustee fees:[15]

- 2018 Quarter 1:  $197,694.00
- 2018 Quarter 2:  $207,202.00
- 2018 Quarter 3:  $250,000.00
- 2018 Quarter 4:  $[unknown]
- ***Total:  $654,896.00 (plus unknown assessment for the fourth quarter of 2018)***

---

[13] 597 B.R. 588 (Bankr. W.D. Tex. Feb. 8, 2019).

[14] Case No. 08-35653-KRH, 2019 WL 3202203 (Bankr. E.D. Va. July 15, 2019).

[15] These figures are not binding on the parties but are included to demonstrate roughly the magnitude of the fee increase.

By comparison, had the Life Partners Chapter 11 Cases been filed in a BA district, the fee increase would not have applied to the Life Partners Chapter 11 Cases because they were filed prior to October 1, 2018. So the maximum fees the Life Partners Chapter 11 Cases could have been assessed in a BA district was $30,000 for each quarter in 2018 and beyond until the cases are closed.

### III. PROCEDURAL POSTURE

On February 19, 2019, the PHT filed its *Position Holder Trust's Motion to Determine Liability for Post-Confirmation United States Trustee's Quarterly Fees and to Partially Disgorge Trustee Quarterly Fees Paid in 2018 with Brief in Support* (the "**PHT Motion**").[16] The PHT Motion requests an order finding that (a) the 2017 Amendment does not apply to the Life Partners Chapter 11 Cases since each of the cases was filed prior to the enactment of the amendment, or (b) the 2017 Amendment is unconstitutional. Also on February 19, 2019, the PHT filed its *Notice of Constitutional Question under Fed. R. Civ. P. 5.1*.[17]

On April 26, 2019, the U.S. Trustee filed his *United States Trustee's Motion for Summary Judgment on Position Holder Trust's Motion to Determine Liability for Post-Confirmation United States Trustee's Fees and to Partially Disgorge Trustee Quarterly Fees Paid in 2018* (the "**U.S. Trustee Motion**").[18] Through this motion, the U.S. Trustee asks for an order granting summary judgment and dismissing the PHT Motion, arguing that the PHT Motion seeks relief that can be sought only through an adversary proceeding.

---

[16] ECF No. 4307. The PHT Motion also seeks disgorgement from the United States for overpayment of assessed fees from the Plan Confirmation Date through the third quarter of 2018. The parties, however, agreed to defer this dispute to a later date.

[17] ECF No. 4308.

[18] ECF No. 4346.

The Court held a hearing on both motions on July 17, 2019. The Court has considered the PHT Motion, the U.S. Trustee Motion, and each party's oral arguments, briefs, responses, replies, and supplemental papers.[19]

### IV. ANALYSIS

Although the legal issues in dispute concerning the 2017 Amendment are relatively new, the Court has the benefit of the *Buffets* and *Circuit City* decisions. Rather than re-creating the wheel, the Court adopts in this Order the legal analysis and conclusions in those opinions, except where noted below.

**A. It is questionable whether the relief requested in the PHT Motion—as limited by the parties at the hearing—requires an adversary proceeding, but the Court will convert this contested matter to an adversary proceeding out of an abundance of caution for the balance of the contested issues.**

Citing Bankruptcy Rule 7001, the U.S. Trustee argues that an adversary proceeding is required for this matter because the PHT seeks (i) to "recover" money from the United States, (ii) to determine the validity of the government's "interest in property," and (iii) a declaratory judgment on those matters.[20] The PHT argues, in contrast, that Bankruptcy Rule 2020 governs this contested matter.[21]

At the July 17, 2019 hearing, the parties argued the merits of the PHT Motion without pressing the issue of whether an adversary proceeding is required. In addition, the parties agreed to continue for another day the determination of the U.S. Trustee fees owed for each of the Life

---

[19] ECF Nos. 4348, 4357, 4358, 4364, 4365, 4366, 4385.

[20] *See* Fed. R. Bankr. P. 7001(1) (adversary proceeding required to recover money), (2) (adversary proceeding required to determine an interest in property), (9) (adversary proceeding required to obtain a declaratory judgment for the matters listed in Bankruptcy Rule 7001(1)-(8)).

[21] *See* Fed. R. Bankr. P. 2020 ("A proceeding to contest any act or failure to act by the United States trustee is governed by Rule 9014.").

Partners Chapter 11 Cases and whether and how the PHT could recover previous overpayments, if any, to the United States. It thus appears that the Court can resolve the ripe contested issues addressed in this Memorandum Opinion and Order based on uncontested facts and legal interpretation of the law.

Out of an abundance of caution, although this Memorandum Opinion and Order resolves the statutory and constitutional issues regarding the 2017 Amendment, the Court will convert this contested matter to an adversary proceeding for the balance of the contested issues—that is, the appropriate calculation of U.S. Trustee fees owed for the Life Partners Chapter 11 Cases, and whether and how the PHT can recover any previously paid excess quarterly fees.

**B. The 2017 Amendment does not apply to Chapter 11 cases filed in U.S. Trustee districts before the amendment's enactment.**

Although the *Buffets* and *Circuit City* decisions are both well-reasoned, the Court finds the *Buffets* opinion more persuasive on the issue of whether the 2017 Amendment—by its terms—applies to cases that were already pending in U.S. Trustee districts on October 26, 2017, when the 2017 Amendment was enacted. For the reasons stated in the *Buffets* opinion, while the increase applies only to disbursements made on or after January 1, 2018, nothing in the statute or legislative history indicates that Congress intended the 2017 Amendment to apply to pending cases as of the amendment date.

The U.S. Trustee criticizes *Buffets* for this conclusion, noting that the statute applies "[d]uring each of fiscal years 2018 through 2022"[22] and applies to "disbursements made in any

---

[22] 28 U.S.C. § 1930(a)(6)(B).

calendar quarter that begins on or after the date of enactment" of the amendment.[23] But those statutory quotes simply beg the question: Disbursements in which cases?

The U.S. Trustee also points to an October 12, 2017 Congressional Budget Office estimate analyzing the proposed legislation that would increase quarterly fees paid by "businesses involved in ongoing Chapter 11 bankruptcy cases."[24] But does the term "ongoing" cases necessarily include pending cases? The term "ongoing" cases just as plausibly could mean open (*i.e.*, non-closed) cases. But which open cases? Open cases filed after the amendment date? Or pending open cases as well? The CBO estimate is not so clear.

Congress certainly knows how to be *crystal* clear when it wants quarterly-fee amendments to apply to pending cases. Before 1996, § 1930(a)(6) required the payment of quarterly fees "in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) *until a plan is confirmed* or the case is converted or dismissed, whichever occurs first."[25] On January 27, 1996,

---

[23] Bankruptcy Judgeship Act of 2017, Pub. L. No. 115-72, § 1004(c) (uncodified).

[24] U.S. Trustee *Supplement*, ECF No. 4364 (quoting October 12, 2017 CBO estimate). The U.S. Trustee also points to an earlier, May 18, 2017, CBO estimate—for earlier proposed legislation—that used the same verbiage regarding proposed increased fees for "businesses involved in ongoing Chapter 11 bankruptcy cases." *Id.* But as the U.S. Trustee notes, the May 2017 estimate elsewhere described the increased fees as applying to "entities that are currently in Chapter 11 bankruptcy," and to "entities that are already in bankruptcy." *Id.* The Court does not know why the October 2017 CBO estimate used just the more limited phrase "ongoing" cases without referring to entities that "are currently in Chapter 11 bankruptcy," or that "are already in bankruptcy." The Court also does not know why the increased fees' estimated impact on net revenues decreased from $5 million to $3 million between the May and October CBO reports. But given (a) the different language in the two different CBO estimates, (b) the even more limited language in the actual October 2017 legislation, and (c) Congress's previous and current use of more precise language when applying bankruptcy amendments to pending cases (discussed next), the Court concludes that the CBO estimates do not tip the scales in the U.S. Trustee's favor.

The U.S. Trustee *Supplement* also attaches web pages from two bankruptcy courts (E.D. Pa. and M.D.N.C.) that allegedly reflect those courts' position that a 2007 increase in quarterly fees applied to pending cases. These web pages concerning a 2007 fee increase—even if construed as the U.S. Trustee suggests—are not materially helpful in addressing the now hotly contested issue that is fully argued and briefed by adverse parties.

[25] 28 U.S.C. § 1930(a)(6) (1995) (emphasis added) (amended by Balanced Budget Downpayment Act, Pub. L. No. 104–99, § 211, 110 Stat. 26, 37-38 (1996)).

9

Congress enacted the Balanced Budget Downpayment Act (the "*1996 Amendment*"),[26] which amended § 1930(a)(6) to require the payment of quarterly fees "in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed whichever occurs first."[27] The 1996 Amendment removed the words "until a plan is confirmed."[28]

Based on the 1996 Amendment and its legislative history, some courts held that the amendment imposed quarterly fees upon all Chapter 11 debtors, including those whose plans of reorganization had already been confirmed.[29] Other courts, on the other hand, held that the imposition of quarterly fees upon a case with a plan confirmed before January 27, 1996 would be improper retroactive legislation.[30]

Apparently in response to this split in the cases interpreting the 1996 Amendment, Congress enacted the Omnibus Consolidated Appropriations Act on September 30, 1996. This legislation was explicit in making the 1996 Amendment applicable to debtors whose plans were confirmed before and after the prior amendment's effective date. Section 109(d) of that Act reads:

> Section 101(a) of Public Law 104–91, as amended by section 211 of Public Law 104–99, is further amended by inserting ": Provided further, That, notwithstanding any other provision of law, the fees under 28 U.S.C. 1930(a)(6) shall accrue and be payable from and after January 27, 1996, *in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans*" after "enacted into law".[31]

---

[26] Pub. L. No. 104–99, § 211, 110 Stat. 26, 37-38 (1996).

[27] 28 U.S.C. § 1930(a)(6) (1996) (later amended, as noted below).

[28] *In re Huff*, 207 B.R. 539, 541 (Bankr. W.D. Mich. 1997) (citing H.R.Rep. No. 104–196, 104th Cong., 1st Sess. at 16–17 (1995)).

[29] *In re Huff*, 207 B.R. at 541 (citing cases).

[30] *Id.* (citing cases).

[31] Pub.L. No. 104–208, 110 Stat. 3009 (emphasis added).

In contrast, the 2017 Amendment contains no such express language making the increased fees payable regardless of when a case is filed and regardless of when a plan is confirmed. Given the 833% increase in maximum quarterly fees under the 2017 Amendment to this *same* statute, the Court would expect Congress to have made its intent explicit—as it did in September 1996—had it intended the increased fees to apply to *pending* cases.

Indeed, in the very same legislation[32] that amended § 1930 to increase U.S. Trustee fees, Congress enacted amendments to Chapter 12 of the Bankruptcy Code, and those amendments *expressly* apply to cases filed after enactment of the amendment and to *certain* cases filed before enactment of the amendment:

> (c) EFFECTIVE DATE.—The amendments made by this section [1005] shall apply to—
>
> > (1) any bankruptcy case—
> >
> > > (A) that is pending on the date of enactment of this Act;
> > >
> > > (B) in which the plan under chapter 12 of title 11, United States Code, has not been confirmed on the date of enactment of this Act; and
> > >
> > > (C) relating to which an order of discharge under section 1228 of title 11, United States Code, has not been entered; and
> >
> > (2) any bankruptcy case that commences on or after the date of enactment of this Act.[33]

Again, Congress knows how to be *crystal* clear when it wants bankruptcy legislation to apply to all pending cases (as it did in September 1996 concerning U.S. Trustee fees) or to certain pending cases (as it did in 2017 concerning Chapter 12 of the Bankruptcy Code). No such clear

---

[32] Bankruptcy Judgeship Act of 2017, 2017, Pub. L. 115-72, October 26, 2017, Division B, 131 Stat 1224.

[33] *Id.* § 1005, 131 Stat 1224, 1232-34. Section 1004 of the Bankruptcy Judgeship Act of 2017 dealt with the U.S. Trustee fee increase.

language exists for the 2017 Amendment regarding U.S. Trustee fees. The lack of such clear language is striking.

The Court is not willing to fill in the gaps in the statute and legislative history by applying the amendment to cases that were pending as of the 2017 Amendment date, especially given the astronomical increase in fees. Therefore, based on the well-reasoned analysis in *Buffet*, which this Court adopts, the Court concludes that the 2017 Amendment does not apply to the Life Partners Chapter 11 Cases.

**C. Even if the 2017 Amendment applies to the Life Partners Chapter 11 Cases, the statute is unconstitutionally non-uniform because Chapter 11 debtors in BA districts are not required to pay the higher quarterly fees unless their cases were filed on or after October 1, 2018.**

Even if Congress intended for the 2017 Amendment to apply to Chapter 11 cases that were filed prior to its enactment, the 2017 Amendment is unenforceable because it is unconstitutionally non-uniform. For the reasons stated in *Buffets* and *Circuit City*, whether the quarterly fees are viewed as a tax or as a user fee, the 2017 Amendment violates the Uniformity Clause[34] and the Bankruptcy Clause[35] of the U.S. Constitution because Chapter 11 debtors in U.S. Trustee districts will be forced to pay the higher quarterly fees regardless of when their cases were filed, but Chapter 11 debtors in BA districts will pay the higher quarterly fees only if those debtors filed their bankruptcy cases on or after October 1, 2018.[36]

---

[34] U.S. Const. art. I, § 8, cl. 1.

[35] U.S. Const. art. I, § 8, cl. 4.

[36] The Judicial Conference Committee on the Administration of the Bankruptcy System recommended "that the quarterly fee calculation changes in 28 U.S.C. § 1930(a)(6)(B) should apply in BA districts beginning in the first quarter of fiscal year 2019 (that is, for any chapter 11 case filed on or after October 1, 2018, *and not for cases then pending*." U.S. Trustee Ex. O, *Summary of the Report of the Judicial Conference Committee on the Administration of the Bankruptcy System* (Sept. 2018), at 20 (emphasis added). The Judicial Conference Executive Committee approved, on behalf of the Judicial Conference, "imposing quarterly fees in chapter 11 cases filed in bankruptcy administrator districts in the amounts specified in 28 U.S.C. § 1930(a)(6)(B) *for cases filed on or after October 1,*

12

In support of the 2017 Amendment, the U.S. Trustee makes three additional arguments that are not specifically addressed in *Buffets* and *Circuit City*. None of the arguments are persuasive.

First, the U.S. Trustee argues that the increased fees are uniform because 28 U.S.C. § 1930(a)(7) *mandates* that any fees charged in the BA districts *must* be the same as those prescribed in (a)(6) for U.S. Trustee districts. According to the U.S. Trustee, any *ultra vires* failure of the Judicial Conference to enforce § 1930(a)(7) does not violate the Bankruptcy Clause because the Bankruptcy Clause requires only uniform laws, not uniform implementation.

Contrary to the U.S. Trustee's argument, § 1930(a)(7) is not mandatory. That subsection provides that in BA districts, "the Judicial Conference of the United States *may* require the debtor in a case under chapter 11 of title 11 to pay fees equal to those imposed by paragraph (6) of this subsection."[37] The statute does not say that the Judicial Conference "shall" or "must" require BA district debtors to pay uniform fees. It says the Judicial Conference "may" require BA district debtors to pay uniform fees. Congress's use of the permissive word "may" in subsection (a)(7) contrasts with the legislators' use of the mandatory word "shall" six other times in § 1930(a)(1)-(6).[38] And in a nod to the permissive language in subsection (a)(7), the Judicial Conference *did not* require uniform fees for cases filed before October 1, 2018. As previously noted, if the Life Partners Chapter 11 Cases had been filed in a BA district rather than in a U.S. Trustee district, the

---

*2018* for any fiscal year in which the U.S. Trustee Program exercises its authority under that statute, and pursuant to any future extensions of that or similar authority." U.S. Trustee Ex. N, *Report of the Proceedings of the Judicial Conference of the United States (September 13, 2018)* (the "***Judicial Conference Report***"), at 11-12 (emphasis added).

[37] 28 U.S.C. § 1930(a)(7) (emphasis added).

[38] *Cf. Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("Congress' use of the permissive 'may' in § 3621(e)(2)(B) contrasts with the legislators' use of a mandatory 'shall' in the very same section. Elsewhere in § 3621, Congress used 'shall' to impose discretionless obligations . . . ."); *Cisneros v. Corpus Christi Indep. Sch. Dist*., 560 F.2d 190, 191 (5th Cir. 1977) (noting that statutes under consideration used the permissive word "may" instead of the unconditional "shall").

increased fees would *never* apply to the Life Partners Chapter 11 Cases because they were filed in 2015.

Second, the U.S. Trustee argues that even if there were a statutory difference in quarterly fees, such a difference would not violate the Bankruptcy Clause because it is rationally justified. Citing *In re Prines*,[39] the U.S. Trustee argues that any difference in bankruptcy fees is rationally justified because the only lack of uniformity is between districts over which the U.S. Trustees have authority and those over which they do not. That argument made sense in *Prines* but not here. The *Prines* court was reviewing Congress's decision to make Chapter 11 debtors in U.S. Trustee pilot districts pay quarterly fees a year sooner than Chapter 11 debtors in non-pilot U.S. Trustee districts. The court concluded that Congress was rationally justified in providing that different treatment because Chapter 11 debtors in pilot districts began receiving U.S. Trustee supervision and support a year sooner than did Chapter 11 debtors in non-pilot districts.[40] In other words, Congress was rationally justified in (a) making Chapter 11 debtors in U.S. Trustee pilot districts pay for the services the U.S. Trustee was providing in those districts, while (b) not charging Chapter 11 debtors in non-pilot U.S. Trustee districts until they received the same supervision and support. The *Prines* court did not address the issue this Court now faces: Whether Chapter 11 debtors that filed bankruptcy in U.S. Trustee districts before October 1, 2018 should pay significantly higher fees for the duration of their cases (which could last years) while Chapter 11 debtors that filed bankruptcy in BA districts before October 1, 2018 will continue to pay the significantly lower fees for the duration of their cases, all for the functionally equivalent support

---

[39] 867 F.2d 478, 480 (8th Cir. 1989).

[40] *Prines*, 867 F.2d at 485.

and supervision.[41] Congress has provided no justification—rational or otherwise—for that different treatment.

Third, the U.S. Trustee argues that § 1930 is not a law "on the subject of Bankruptcies" within the meaning of the Bankruptcy Clause, but instead is merely a judicial administration funding mechanism for bankruptcy matters. The Court disagrees. The Supreme Court has defined bankruptcy as the "'subject of the relations between an insolvent or nonpaying or fraudulent debtor and his creditors, extending to his and their relief.'"[42] The fees required by § 1930 are granted administrative claim status in bankruptcies, so any increase or decrease in fees payable to the U.S. Trustee affects the amount of funds available for distribution to lower-priority creditors and the debtor.[43]

In addition, the Court agrees with the Ninth Circuit, which rejected the argument that the U.S. Trustee system is merely administrative in nature and not subject to the Bankruptcy Clause. Section 1930 is critical to funding the U.S. Trustees, who have "extensive discretion to appoint interim and successor trustees, monitor and supervise bankruptcy proceedings, examine debtors,

---

[41] For this reason, the unconstitutional non-uniformity does not last for only nine months (from January 1, 2018, when the higher fees were assessed in U.S. Trustee districts, to October 1, 2018, when the higher fees were assessed in BA districts). In other words, Chapter 11 debtors in BA districts will pay the higher fees *only if* their cases were filed on or after October 1, 2018. *See* Judicial Conference Report, *supra* note 36. Chapter 11 debtors in BA districts that filed for bankruptcy in 2015, for example, will *never* have to pay the higher fees. Therefore, Chapter 11 debtors in U.S. Trustee districts that filed their cases before October 1, 2018 (like Life Partners did) likewise should never have to pay the higher fees.

[42] *Ry. Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 466 (1982) (quoting *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502, 513–14 (1938)).

[43] *See* 11 U.S.C. § 507(a)(2) (granting second-priority status to and any fees and charges assessed against the estate under chapter 123 of title 28, which includes § 1930).

15

advise the bankruptcy courts, and even, in some circumstances, to seek dismissal of cases."[44] This statute thus has an effect on the rights and liabilities of both creditors and debtors.[45]

Taken to its logical extreme, the U.S. Trustee's argument would permit Congress to amend § 1930(a)(3) and (a)(6) to increase the filing fee for Chapter 11 debtors in South Dakota to $1 million (leaving it at $1,167 in the other forty-nine states), or to increase maximum Chapter 11 quarterly fees only for Chapter 11 debtors in Texas to $500 million, effectively killing bankruptcy relief in those states. The Bankruptcy Clause and Uniformity Clause would not permit such extreme non-uniform legislation, just as they do not permit the less extreme—but still significant— non-uniform legislation at issue before this Court. For all these reasons, the Court concludes that § 1930 is a law on the subject of bankruptcies within the meaning of the Bankruptcy Clause.

**D. Even if the 2017 Amendment is constitutionally uniform, the amendment's application to cases that were filed prior to the enactment of the amendment violates the Due Process Clause.**

For the reasons stated in *Buffets*, the amendment's possible application to cases that were filed prior to the enactment of the 2017 Amendment also violates the Due Process Clause. If the fee increase were a modest increase (or even anything close to a modest increase) as it has been in the past, the Court would be more inclined to agree with the U.S. Trustee that Chapter 11 debtors have no constitutional right to insist that quarterly fees will remain static. But Congress crossed the line when (as the U.S. Trustee interprets the amendment) it applied an ***833%*** increase in

---

[44] *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1530-31 (9th Cir. 1994) (holding that 1990 amendments to § 1930 that excluded the BA districts from the fees charged in the U.S. Trustee districts violated the Bankruptcy Clause). The Ninth Circuit used the term "Uniformity Clause" for what the Court has defined as the "Bankruptcy Clause," U.S. Const. art. I, § 8, cl. 4.

[45] *Id.* The U.S. Trustee admits in its papers that § 1930(a)(6) quarterly fees help offset the cost of the U.S. Trustee program, which is "integral" to the bankruptcy system. *United States Trustee's Objection to Position Holder Trust's Motion to Determine Liability for Post-Confirmation United States Trustee's Fees and to Partially Disgorge Trustee Quarterly Fees Paid in 2018 with Brief in Support* [ECF No. 4348] ¶¶ 35-36, at 7.

maximum quarterly fees to the Life Partners Chapter 11 Cases *after* the creditors and parties in interest heavily negotiated the terms of the Plan, *after* the Plan was confirmed, and *after* the three successor entities under the Plan—including the PHT—were charged with monetizing the reorganized Debtors' remaining assets and making distributions to creditors. "With the knowledge of the increased fees, future debtors may select pre-packaged plans or choose to restructure debts outside of bankruptcy to avoid the quarterly fees. The Reorganized Debtors in this case had no such opportunity."[46] Therefore, the Court concludes that the 2017 Amendment violates the Due Process Clause.

## V. CONCLUSION

For the reasons stated above, the Court **ORDERS** as follows:

1. The U.S. Trustee quarterly fees applicable in these Life Partners Chapter 11 Cases are those fees in effect prior to the 2017 Amendment.

2. This contested matter is hereby converted to an adversary proceeding for the balance of the contested legal and factual issues. The Clerk of the Court is directed to open an Adversary Proceeding number for this proceeding.

3. Although this Order disposes of fewer than all claims of the parties, this Order is a final and immediately appealable order and judgment because there is no just reason for delay.

### ### END OF ORDER ###

---

[46] *In re Buffets, LLC*, 597 B.R. 588, 597 (Bankr. W.D. Tex. Feb. 8, 2019).