UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Life Partners Holdings, Inc. | § | 4:15-bk-40289 |
| | § | |
| Debtor (s) | § | Bankruptcy Case No. |
| | § | |

### APPLICATION FOR PAYMENT OF UNCLAIMED FUNDS

Comes now the undersigned, to make application for an order directing payment of unclaimed funds now on deposit in the Treasury of the United States. Claimant is a _X_ creditor __ debtor (check one) in the above captioned bankruptcy case and on whose behalf these funds were deposited:

| | | |
|---|---|---|
| 1. | **Name of Claimant(s)** | Dilks & Knopik, LLC as assignee to The Ralph A. Douglas & Lamoyan B. Douglas ILT |
| 2. | **Name and Title of Authorizing Officer or Representative** | Andrew T. Drake – Vice President |
| 3. | **Current Mailing Address** | 35308 SE Center St, Snoqualmie, WA 98065 |
| 4. | **Telephone Number** | 425-836-5728 |
| 5. | **SS#** *(last 4 digits only)* **or EIN #** | 74-3049851 |
| 6. | **Amount Being Claimed** | $31,319.55 |

I, Andrew T. Drake, do hereby state under penalty of perjury that I am legally entitled to claim these funds for whom the unclaimed funds were deposited into the treasury in the above referenced bankruptcy case. I certify to the best of my knowledge that all information submitted in support of this claim is true and correct.


Date: July 12, 2023    Claimant Signature:


Subscribed and Sworn to Before Me this 12th day of July, 2023


Notary Public

MATTHEW ZETTLEY
NOTARY PUBLIC #197679
STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 19, 2026

In and for the State of WASHINGTON

My commission expires February 19, 2026

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Life Partners Holdings, Inc. | § | 4:15-bk-40289 |
| | § | |
| Debtor (s) | § | Bankruptcy Case No. |
| | § | |

### CLAIMANT HISTORY

The original disbursement was not presented for payment within 90 days after issuance because:

Dividends were not collected by the creditor, The Ralph A. Douglas & Lamoyan B. Douglas ILT.

The Original Trustee's for The Ralph A. Douglas & Lamoyan B. Douglas Irrevocable Trust were Raalph A. Douglas and Lamoyan B. Douglas, and upon the end of their terms, Rhonda S. Cellner and Karen L. Patterson, as evidenced by Exhibit A. The founding Trustee's, Ralph A. Douglas and Lamoyan B. Douglas have died, as evidenced by Exhibit B and C. One of the two successor Trustee's, Rhonda S. Cellner died on 7/26/2022 (Exhibit C).

The Ralph A. Douglas & Lamoyan B. Douglas Irrevocable Trust through its sole Trustee, Karen Douglas Patterson has assigned its claim and the unclaimed funds to Dilks & Knopik LLC as evidenced by the attached Assignment Agreement and the Transfer of Claim filed on 07/11/2023 (Docket # 5387).

Claimant certifies under penalty of perjury that all statements made by Claimant in this application and any attachments required for this Application are, to the best of its knowledge, true and correct. Accordingly, Claimant request the Court to enter an Order authorizing payment of the pro rata dividend due upon this claim.

July 12, 2023
DATE

Andrew T. Drake, Vice President
Dilks & Knopik, LLC
35308 SE Center St
Snoqualmie, WA 98065
(425) 836-5728
admin@dilksknopik.com

Subscribed and Sworn to Before Me this 12th day of July, 2023

MATTHEW ZETTLEY
NOTARY PUBLIC #197679
STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 19, 2026

Notary Public

In and for the State of WASHINGTON

My commission expires February 19, 2026

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Life Partners Holdings, Inc. | § | 4:15-bk-40289 |
| | § | |
| Debtor (s) | § | Bankruptcy Case No. |
| | § | |

**CERTIFICATE OF SERVICE**

In accordance with 28 U.S.C. § 2042, the undersigned hereby certifies that on the date designated below, a true and correct copy of the foregoing application with all required attachments was mailed to:

US Attorney
Attn: Unclaimed Funds
1100 Commerce Street, 3rd Floor
Dallas, TX 75242

Date: July 12, 2023

Andrew T. Drake
Dilks & Knopik, LLC

## AFFIDAVIT OF
## PHOTO IDENTIFICATION AUTHENTICITY

I, Andrew T. Drake, Vice President of Dilks & Knopik, LLC hereby certify that the
below proof of identification is a true and accurate duplicate of the original.



Dated:    July 12, 2023

Andrew T. Drake, Vice President
35308 SE Center Street
Snoqualmie, WA  98065
(425) 836-5728

On July 12, 2023 before me, Andrew T. Drake, personally appeared, personally known to
me to be the person whose name is subscribed to the within instrument and
acknowledged to me that he executed the same in his authorized capacity, and that by his
signature on the instrument the person, or entity upon behalf of which the person acted,
executed the instrument.  WITNESS my hand and official seal.

MATTHEW ZETTLEY
NOTARY PUBLIC #197679
STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 19, 2026

Matthew Zettley, Notary Public
My commission expires: February 19, 2026
Notary in and for the State of Washington

# U.S. Courts Unclaimed Funds Locator

Home    About

## Court / TXNB

Edit Search

| Case Number | 15-40289 | Page Total | $31,319.55 |
|---|---|---|---|
| Last/Business Name | Life Partners Holdings, Inc. | First Name | |

### Creditors | 1

| | Court | Creditor Name | Amount |
|---|---|---|---|
|  | TXNB | The Ralph A. Douglas & Lamoyan B. Douglas IIt | $31,319.55 |

Joshua L. Shepherd (Texas Bar No. 24058104)
QUILLING SELANDER LOWNDS
WINSLETT & MOSER, P.C.
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
E-mail: jshepherd@qslwm.com

**COUNSEL FOR MICHAEL J. QUILLING, AS**
**TRUSTEE OF THE LIFE PARTNERS POSITION**
**HOLDER TRUST**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| IN RE:  §<br>§<br>**LIFE PARTNERS HOLDINGS, INC.,**  §<br>*et. al.*  §<br>§<br>Reorganized Debtors.  §<br>§ | **CASE NO. 15-40289-mxm11**<br><br>**JOINTLY ADMINISTERED**<br>**(Chapter 11)** |

## SECOND NOTICE TO DEPOSIT UNCLAIMED FUNDS

### [Relates to Dkt. No. 4681, 4682, 4683]

A check in the amount of $3,294,399.05 was remitted to the Clerk of the Bankruptcy Court for deposit into the court's unclaimed funds registry as unclaimed property for the above-styled Chapter 11 bankruptcy case. Final distribution checks were issued in this case on September 15, 2022, and 472 claimants failed to timely cash their check or prior mail was undeliverable to the last known address. Those claimants and amounts are listed below. Instructions on how to claim the funds are provided by the Court and can be found at: https://www.txnb.uscourts.gov/forms/all-forms/unclaimed_funds.

Disposition of Case:     Complete
Explanation of Source:   Claimants failed to cash their final distribution check.

| | HolderID# | Claimant Name & Address | Amount |
|---|---|---|---|
| 1 | 1076938A11800 | 2002 The Doris M. Paretsky Revocable Living Trust<br>*c/o its agent* Marla Loucks<br>9196 Spoonbill Ridge Pl<br>Las Vegas, NV 89143-4491 | $3,097.01 |
| 2 | 1072932A11600 | Paul E Abernathy<br>4938 Williamsport Rd<br>Elizabeth, PA 15037-0000 | $2,819.13 |

| | HolderID# | Claimant Name & Address | Amount |
|---|---|---|---|
| 411 | 1077751A11600 | Robert & Helen Szana<br>30 Trafalgar Bend<br>Bowling Green, OH 43402-0000 | $1,171.33 |
| 412 | 1144915A11600 | Isabel Tacuyan<br>1429 Post Oak Dr<br>Rowlett, TX 75089-0000 | $14,607.91 |
| 413 | 1156074A11600 | Donald J Taplin<br>4239 Forrest Hill Pl Apt 3<br>Colorado Springs, CO 80907-3653 | $3,890.39 |
| 414 | 1152476A11600 | Edgar R. Taylor<br>407 Mukilteo Speedway<br>Mukilteo, WA 98275-0000 | $1,158.67 |
| 415 | 1072597A11600 | Ronald L Teed<br>14212 SE 21st St<br>Vancouver, WA 98683-8463 | $2,158.59 |
| 416 | 1140364A11600 | Timothy W. Terry<br>3105 Unicorn Lake Blvd<br>Denton, TX 76210-0000 | $ 882.29 |
| | 1071064A11800 | The Daniel L. and Bernice J. Englander Trust<br>13373 Plaza Del Rio Blvd #6631<br>Peoria, AZ 85381-0000 | $2,776.28 |
| | 1078842A11800 | The Estes Revocable Trust<br>c/o its agents Austin C. & Lois I. Estes<br>2504 Wildwood Rd<br>Springfield, MO 65804-0000 | $6,530.40 |
| | 1072208A11800 | The Jack H.Coker Revocable Trust<br>c/o its agent Craig Coker<br>1055 Third St<br>Oakland, CA 94607-0000 | $7,408.83 |
| | 1156325A11800 | The Johnson Revocable Trust<br>c/o its agent Karen Johnson-Evans<br>PO Box 8111<br>Chico, CA 95927-8111 | $ 931.16 |
| | 1131075A11800 | The Newlove Family Trust dated 3-4-1994<br>c/o its agent Linda H. Newlove<br>19251 Brookhurst St Apt 17<br>Huntington Beach, CA 92646-0000 | $15,282.80 |
| | 1155018A11800 | The Ralph A. Douglas & Lamoyan B. Douglas ILT<br>c/o its agents Rhonda Cellner or Karen Patterson<br>11506 Brook Meadows Ln<br>Meadows Place, TX 77477-0000 | $31,319.55 |
| | 1076681A11800 | The Rullo Trust<br>c/o its agents Richard Rullo or Hilda Rullo, CO-TTEE<br>782 Sandra Dr<br>Boulder City, NV 89005-0000 | $1,947.76 |
| | 1160343A11800 | Thomas A. Leister Revocable Trust<br>c/o its agent Thomas A. Leister<br>121 Madara Dr<br>Hanover, PA 17331-0000 | $1,915.63 |







## CERTIFICATE OF LLC RESOLUTION

The undersigned Members of Dilks & Knopik, LLC, an LLC, duly organized under the laws of Washington (hereinafter "The LLC"), hereby certify that the following resolutions were duly adopted by said Members of The LLC on June 7th, 2002 and that such resolutions have not been modified or rescinded as of the date hereof:

RESOLVED, that Brian J Dilks, Caryn M Dilks f/k/a Caryn M Knopik, Andrew T. Drake and Jeffrey Hudspeth, is hereby authorized and directed for and on behalf of The LLC to execute all legal documents as approved by him/her as being in the best interests of The LLC; and to take any and all further actions which may be necessary or appropriate to commence and complete said construction in such a manner as being, in his/her opinion, in the best interests of the LLC.

RESOLVED, that this action may be executed in counterparts and by facsimile signatures, each of which shall be deemed an original and all of which together shall constitute one action.

IN WITNESS WHEREOF, the undersigned has executed this instrument as of this **5th** day of **January**, 20**22**

Brian J Dilks – Member

Date: **1/5/22**

Subscribed and sworn to me this **1/5/2022**

Notary Signature _____

My Commission Expires: **6/19/2025**

Caryn M Dilks f/k/a Caryn M Knopik – Member

Date: **1/5/2022**

Subscribed and sworn to me this **1/5/2022**

Notary Signature _____

My Commission Expires: **6/19/2025**



**WASHINGTON**
Secretary of State
**Corporations & Charities Division**

Filed
Secretary of State
State of Washington
Date Filed: 05/19/2023
Effective Date: 05/19/2023
UBI #: 602 211 447

# EXPRESS ANNUAL REPORT WITHOUT CHANGES

## BUSINESS INFORMATION

Business Name:
**DILKS & KNOPIK, LLC**

UBI Number:
**602 211 447**

Business Type:
**WA LIMITED LIABILITY COMPANY**

Business Status:
**ACTIVE**

Principal Office Street Address:
**35308 SE CENTER ST, SNOQUALMIE, WA, 98065-9216, UNITED STATES**

Principal Office Mailing Address:

Expiration Date:
**06/30/2024**

Jurisdiction:
**UNITED STATES, WASHINGTON**

Formation/Registration Date:
**06/07/2002**

Period of Duration:
**PERPETUAL**

Inactive Date:

Nature of Business:
**OTHER SERVICES, ANY LAWFUL PURPOSE**

## REGISTERED AGENT    RCW 23.95.410

| Registered Agent Name | Street Address | Mailing Address |
|---|---|---|
| BRIAN DILKS | 28431 SE PRESTON WAY, ISSAQUAH, WA, 98027-0000, UNITED STATES | 28431 SE PRESTON WAY, ISSAQUAH, WA, 98027-0000, UNITED STATES |

## GOVERNORS

| Title | Type | Entity Name | First Name | Last Name |
|---|---|---|---|---|
| GOVERNOR | INDIVIDUAL | | BRIAN | DILKS |
| GOVERNOR | INDIVIDUAL | | CARYN | DILKS |

This document is a public record. For more information visit www.sos.wa.gov/corps

Work Order #: 2023051900346920 - 1
Received Date: 05/19/2023
Amount Received: $60.00

## CONTROLLING INTEREST

1. Does this entity own (hold title) real property in Washington, such as land or buildings, including leasehold improvements?
- **No**
2. In the **past 12 months**, has there been a transfer of at least 16-2/3 percent of the ownership, stock, or other financial interest in the entity?
- **No**
   a. If "Yes", in the **past 36 months**, has there been a transfer of controlling interest (50 percent or greater) of the ownership, stock, or other financial interest in the entity?
- **No**
3. If you answered "Yes" to question 2a, has a controlling interest transfer return been filed with the Department of Revenue?
- **No**

You **must** submit a Controlling Interest Transfer Return form if you answered "yes" to questions 1 **and** 2a.

Failure to report a Controlling Interest Transfer is subject to penalty provisions of RCW 82.45.220.

For more information on **Controlling Interest**, visit www.dor.wa.gov/REET.

## CONFIRMATION EMAIL ADDRESS

Note: Please enter in the email address you would like confirmation sent of this annual report and payment receipt.

Email Address:
**BRIAN.DILKS@DILKSKNOPIK.COM**

## EMAIL OPT-IN

By checking this box, I hereby opt into receiving all notifications from the Secretary of State for this entity via email only. I acknowledge that I will no longer receive paper notifications.

## AUTHORIZED PERSON

Person Type:
**INDIVIDUAL**

First Name:
**BRIAN**

Last Name:
**DILKS**

Title:
**MANAGING MEMBER**
☑ This document is hereby executed under penalty of law and is to the best of my knowledge, true and correct.

This document is a public record. For more information visit www.sos.wa.gov/corps

**Work Order #: 2023051900346920 - 1**
**Received Date: 05/19/2023**
**Amount Received: $60.00**



## Dilks | & | Knopik

*When Success Matters*

**Brian Dilks**
Member

35308 SE Center Street
Snoqualmie, WA 98065
Ph. 877-836-5728 x 101
Fx. 877-209-8249
brian.dilks@dilksknopik.com

www.dilksknopik.com





## Dilks | & | Knopik

*When Success Matters*

**Caryn Knopik**
Managing Member

35308 SE Center Street
Snoqualmie, WA 98065
Ph. 877-836-5728 x 102
Fx. 877-209-8249
caryn.knopik@dilksknopik.com

www.dilksknopik.com



## Dilks | & | Knopik

*When Success Matters*

**Jeff Hudspeth**
Vice President - Accounts

35308 SE Center Street
Snoqualmie, WA 98065
Ph. 877-836-5728 x 104
Fx. 877-209-8249
jeff.hudspeth@dilksknopik.com

www.dilksknopik.com





## Dilks | & | Knopik

*When Success Matters*

**Andrew Drake**
Vice President - Operations

35308 SE Center Street
Snoqualmie, WA 98065
Ph. 877-836-5728 x 123
Fx. 877-209-8249
andrew.drake@dilksknopik.com
www.dilksknopik.com

BBB
accredited
since 2003

ACCREDITED
BUSINESS



B 2100A (Form 2100A) (12/15)

# UNITED STATES BANKRUPTCY COURT

## Northern District of Texas

In re    Life Partners Holdings, Inc.                    ,        Case No. _    4:15-bk-40289


## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee
hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than
for security, of the claim referenced in this evidence and notice.


| Dilks & Knopik, LLC | The Ralph A. Douglas & Lamoyan B. Douglas ILT |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee
Should be sent:

Court Claim # (if known):        HolderID#
                                                    1155018A11800

   35308 SE Center Street
   Snoqualmie WA 98065

Amount of Claim:

Date Claim Filed:


Phone:    425-836-5728                Phone:   713-291-5898

Last Four Digits of Acct #:                Last Four Digits of Acct #:


Name and Address where transferee payments
should be sent (if different from above):



Phone: _____
Last Four Digits of Acct #:_____


I declare under penalty of perjury that the information provided in this notice is true and correct to the best
of my knowledge and belief.

By:____/s/ Brian J Dilks - President_____        Date:___7/11/2023_____
      Transferee/Transferee's Agent


*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 19, 2026

MATTHEW ZETTLEY
NOTARY PUBLIC #197679
STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 19, 2026

# Dilks | & | Knopik

On this 12th day of July, 2023. I certify that the preceding or attached document titled (Assignment Agreement), (3 pages) is a true, accurate and complete redacted copy of the original being held at 35308 SE Center Street, Snoqualmie, WA 98065

Matthew Zettley – Notary Public
My commission expires: February 19, 2026

**Assignment Agreement**

This Assignment Agreement (the "Agreement") is entered into as of July 6, 2023 (the "Effective Date") by and between Dilks & Knopik, LLC, with a principal place of business at 35308 SE Center Street, Snoqualmie, WA 98065, (the "Assignee") and The Ralph A. Douglas & Lamoyan B. Douglas Irrevocable Trust with an address of 7107 Moss Creek, San Antonio TX 78238 (the "Assignor").

1. Assignor is/was a creditor in Life Partners Holdings, Inc. (4:15-bk-40289) as filed in the Northern District of Texas (the "Case"). As a creditor in the Case, Assignor was entitled to distribution of funds from the assets of the Debtor's Bankruptcy Estate in the approximate amount of **$31,319.55** (the "Funds"). Remittance to Assignor was not successful, and pursuant to Federal Rule of Bankruptcy Procedure 3011 and 11 U.S.C. 347, the Funds were deposited into the Registry of the Court. The Funds then being subject to withdrawal in accordance with 28 U.S.C. 2042.

2. Assignor not desirous of attempting collection of the Funds, nor wishing to incur the time and expense of such collection, does hereby wish and does assign, and convey to the Assignee, for good and valuable consideration, all of Assignor's rights, title and interest in the Funds, without the presence of undue influence or coercion.

NOW THEREFORE, in consideration of mutual obligations, covenants, representations, and warranties herein, the parties agree as follows:

3. Assets Assigned: The assets herein assigned to Assignee are those stated in paragraph 1 above, that collectively are the Funds held for the benefit of Assignor by the Clerk of the Court of the court identified in paragraph 1 in the Unclaimed Funds Registry.

4. Consideration: The consideration herein given by Assignee to Assignor shall be the sum $_____ which sum shall be remitted to Assignor. A check will be issue to the Assignor for the above stated amount once this claim is approved. In the event Assignee recovers an amount over and above the Funds then Assignor shall be entitled to ___% of the additional amount recovered.

5. This assignment shall be deemed an absolute and unconditional assignment of funds/claim for the purpose of collection and satisfaction, and shall not be deemed to create a security interest.

6. Assignor represents and warrants to Assignee that no payment or other distribution has been received by or on behalf of Assignor in full or partial satisfaction of the assigned rights; that Assignor has not previously sold or assigned the rights, in whole or in part, to any party.

7. Power of Attorney: To the extent necessary under applicable law, the Assignor does hereby appoint for the limited purpose of collection of the Funds and fulfillment of Assignor's obligation(s) under this Agreement, Dilks and Knopik, LLC as its attorney-in-fact.

8. This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter above.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the day and year first written above.

Assignor: _____

The Ralph A. Douglas & Lamoyan B. Douglas
Irrevocable Trust
Karen Douglas Patterson – Trustee

Adobe Acrobat Sign Transaction Number: CEJCHBCAABAAd-bA3A5MWUugc2m-cxaz1raD44sW_zYjk

Assignee: _____

Dilks & Knopik, LLC
Andrew T. Drake – Vice President

**Karen Patterson**
E-signed 2023-07-06 01:52PM CDT
karenpatterson648@gmail.com



## NOTICE OF ASSIGNMENT

For good and valuable consideration, the undersigned, The Ralph A. Douglas & Lamoyan B. Douglas Irrevocable Trust ("Assignor"), hereby, assigns, conveys and transfers over and unto Dilks & Knopik, LLC ("Assignee"), any and all of right, title and interest in and to the below referenced funds/claim(s).

The Assigned funds/claim(s):

Debtor: Life Partners Holdings, Inc.
Court: United States Bankruptcy Court - Northern District of Texas
Case Number: 4:15-bk-40289
Chapter: 11
Original Creditor: The Ralph A. Douglas & Lamoyan B. Douglas ILT


FUNDS/CLAIM(S) ARE BEING ASSIGNED "AS-IS, WHERE-IS" WITH NO WARRANTIES OR REPRESENTATIONS WHATSOEVER, EXCEPT AS EXPRESSLY PROVIDED IN THE ASSIGNMENT AGREEMENT, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

IN WITNESS WHEREOF, the parties hereto have caused this notice of assignment to be executed as of the Thursday, July 06, 2023.


The Ralph A. Douglas & Lamoyan B. Douglas Irrevocable Trust

_____
Karen Douglas Patterson - Trustee

Adobe Acrobat Sign Transaction Number: CBJCHBCAABAAd-bA3ASMWUugc2m-cxazHaD44sW_JYjk

> Karen Patterson
> E-signed 2023-07-06 01:52PM CDT
> karenpatterson648@gmail.com



# Douglas, Ralph - Assignment

Final Audit Report                                        2023-07-06

| | |
|---|---|
| Created: | 2023-07-06 |
| By: | Michelle Thomas (michelle.thomas@dkllc.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAd-bA3A5MWUugc2m-cxazHaD44sW_JYjk |

## "Douglas, Ralph - Assignment" History

📄 Document created by Michelle Thomas (michelle.thomas@dkllc.com)
2023-07-06 - 5:42:33 PM GMT- IP address: 173.10.87.137

📧 Document emailed to karenpatterson648@gmail.com for signature
2023-07-06 - 5:43:29 PM GMT

📄 Email viewed by karenpatterson648@gmail.com
2023-07-06 - 6:38:35 PM GMT- IP address: 75.1.82.208

✍️ Signer karenpatterson648@gmail.com entered name at signing as Karen Patterson
2023-07-06 - 6:52:54 PM GMT- IP address: 75.1.82.208

✍️ Document e-signed by Karen Patterson (karenpatterson648@gmail.com)
Signature Date: 2023-07-06 - 6:52:56 PM GMT - Time Source: server- IP address: 75.1.82.208

✅ Agreement completed.
2023-07-06 - 6:52:56 PM GMT

**Adobe Acrobat Sign**



Photo ID

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS:  YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

## CERTIFICATION OF TRUST

STATE OF TEXAS                    §

                                 §

COUNTY OF FORT BEND              §

The undersigned hereby certify that THE RALPH A. DOUGLAS AND LAMOYAN B. DOUGLAS REVOCABLE LIVING TRUST (the "Trust") was formed and executed on the 10th day of November, 2003, listing Ralph A. Douglas and Lamoyan B. Douglas as Trustors and Trustees, and providing that upon the end of the terms of the original Trustees, RHONDA S. CELLNER and KAREN L. PATTERSON were designated as Joint Successor Trustees;

That the property commonly described as 11306 Brook Meadows Lane, Stafford, Texas, Fort Bend County, with a legal description of "LOT TWENTY-FIVE (25), in BLOCK EIGHT (8), THE MEADOWS, SECTION ONE(I), subdivision in Fort Bend County, Texas, according to the map or plat thereof recorded in Volume 6, Page 12, Plat Records of Fort Bend County, Texas;" (the "Property") was transferred by Special Warranty Deed from Ralph A. Douglas and Lamoyan B. Douglas into the Ralph A. Douglas and Lamoyan B. Douglas Revocable Living Trust on December 9th, 2003;

That Ralph A. Douglas died on January 14th, 2009, and that Lamoyan B. Douglas died on May 2nd, 2011, and that as a result of their demise, the Trust has now become THE RALPH A. DOUGLAS AND LAMOYAN B. DOUGLAS IRREVOCABLE

**Exhibit A**

TRUST (also hereinafter known as the "Trust") and under the terms of the Trust, Rhonda S. Cellner, residing at 11506 Brook Meadows Lane, Stafford, Texas 77477, and Karen L. Patterson, residing at 7107 Moss Creek, San Antonio, Texas 78238, are currently the Joint Successor Trustees of the Trust, the Trustors of the Trust, and the Beneficiaries of the Trust;

That the powers of the Trustees include the powers granted a trustee by Subchapter A, Chapter 113 of the Texas Property Code;

That the current Trustees are Joint Successor Trustees and the only Trustees under the Trust, and that both shall sign any deed transferring title of the Property to any third party;

That there is no indebtedness or liens on the Property, whether of record, or not of record;

That, other than the modification of the Trust from a revocable living trust to an irrevocable trust, there has been no other revision, modification, or amendment to the Trust in any manner that would cause the representations in this Certification to be incorrect;

That Vicky L. Martinez, attorney-at-law has reviewed the Trust and has prepared this Certification in accordance with Texas Property Code §114.086.

CERTIFIED THIS 22nd DAY OF JUNE, 2012

_Rhonda S. Cellner_
_____

Rhonda S. Cellner, Joint Successor Trustee, Trustor and Beneficiary of the RALPH A. DOUGLAS AND LAMOYAN B. DOUGLAS IRREVOCABLE TRUST

Exhibit A

_Karen L. Patterson_

Karen L. Patterson, Joint Successor Trustee, Trustor, and Beneficiary of the RALPH
A. DOUGLAS AND LAMOYAN B. DOUGLAS IRREVOCABLE TRUST

_Vicky L. Martinez_

Vicky L. Martinez, Attorney-at-Law

STATE OF TEXAS                    §

                                 §

COUNTY OF FORT BEND               §

Before me, the undersigned authority, personally appeared RHONDA S.
CELLNER, and KAREN L. PATTERSON, who acknowledged to me that they are the
Joint Successor Trustees, Trustors and Beneficiaries of the Ralph A. Douglas and
Lamoyan B. Douglas Irrevocable Trust, and Vicky L. Martinez, Attorney-at-Law and
who acknowledged that they did sign the foregoing Certification, and
acknowledged to me that they executed the same for the uses and purposes
therein expressed.

Given under my hand and seal this 22nd day of June, 2012.

Notary Public, State of Texas

**Exhibit A**

After recording, please return to:


Indian Lake Properties LLC

Vicky L. Martinez, Chief Executive Manager

17573 Pleasant Dr.

Montgomery, Texas 77316

**Exhibit A**



**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2012 Jul 10 12:21 PM                    2012075307
JN $23.00
Dianne Wilson COUNTY CLERK
FT BEND COUNTY TEXAS

**Exhibit A**

CERTIFIED COPY OF RECORD

# FORT BEND COUNTY

**STATE OF TEXAS**      **CERTIFICATE OF DEATH**      **STATE FILE NUMBER**

| 1. LEGAL NAME OF DECEASED (Include AKA's, if any) (First, Middle, Last) | | | 2. DATE OF DEATH – ACTUAL OR PRESUMED |
|---|---|---|---|
| RALPH ARNOLD DOUGLAS | | | 01/14/2009 |

| 3. SEX | 4. DATE OF BIRTH | 5. AGE–Last Birthday (Years) | IF UNDER 1 YR / Mo / Days | IF UNDER 1 DAY / Hours / Min | 6. BIRTHPLACE (City & State or Foreign Country) |
|---|---|---|---|---|---|
| MALE | 1918 | 90 | | | ATOKA, OK |

| 7. SOCIAL SECURITY NUMBER | 8. MARITAL STATUS AT TIME OF DEATH | 9. SURVIVING SPOUSE'S NAME (if wife, give name prior to first marriage) |
|---|---|---|
| 1191 | ☒ Married ☐ Widowed ☐ Divorced ☐ Never Married ☐ Unknown | LAMOYAN BAKER |

| 10a. RESIDENCE STREET ADDRESS | 10b. APT. NO. | 10c. CITY OR TOWN |
|---|---|---|
| 11306 BROOK MEADOWS LANE | | STAFFORD |

| 10d. COUNTY | 10e. STATE | 10f. ZIP CODE | 10g. INSIDE CITY LIMITS? |
|---|---|---|---|
| FORT BEND | TEXAS | 77477 | ☒ Yes ☐ No |

| 11. FATHER'S NAME | 12. MOTHER'S NAME PRIOR TO FIRST MARRIAGE |
|---|---|
| ARTHUR DOUGLAS | ANNIE WARD |

13. PLACE OF DEATH (CHECK ONLY ONE)

IF DEATH OCCURRED IN A HOSPITAL:    IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL:
☒ Inpatient ☐ ER/Outpatient ☐ DOA      ☐ Hospice Facility ☐ Nursing Home ☐ Decedent's Home ☐ Other (Specify)

| 14. COUNTY OF DEATH | 15. CITY/TOWN, ZIP (IF OUTSIDE CITY LIMITS, GIVE PRECINCT NO) | 16. FACILITY NAME (If not institution, give street address) |
|---|---|---|
| FORT BEND | SUGAR LAND, 77478 | ST. LUKE'S–SUGAR LAND HOSPITAL |

| 17. INFORMANT'S NAME & RELATIONSHIP TO DECEASED | 18. MAILING ADDRESS OF INFORMANT (Street and Number, City, State, Zip Code) |
|---|---|
| LAMOYAN DOUGLAS - WIFE | 11306 BROOK MEADOWS LANE, STAFFORD, TX 77477 |

| 19. METHOD OF DISPOSITION | 20. SIGNATURE AND LICENSE NUMBER OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH: | 21 ☒ Unknown |
|---|---|---|
| ☒ Burial ☐ Cremation ☐ Donation ☐ Entombment ☐ Removal from state ☐ Other (Specify) | TROY D. HANES , BY ELECTRONIC SIGNATURE - 6004 | Section ___ Block ___ Lot ___ Space ___ |

| 22. PLACE OF DISPOSITION (Name of cemetery, crematory, other place) | 23. LOCATION (City/Town, and State) |
|---|---|
| CEDARLAWN MEMORIAL PARK | SHERMAN, TX |

| 24. NAME OF FUNERAL FACILITY | 25. COMPLETE ADDRESS OF FUNERAL FACILITY (Street and Number, City, State, Zip Code) |
|---|---|
| BRATCHER FH For: BRATCHER FUNERAL HOME DENISON TEXAS | 401 W. WOODARD, DENISON, TX 75020 |

26. Certifying physician–To the best of my knowledge, death occurred due to the cause(s) and manner stated.

☐ Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion, death occurred at the time,date and place, and due to the cause(s) and manner stated.

| 27. SIGNATURE OF CERTIFIER | 28. DATE CERTIFIED (Mo/Day/Yr) | 29. LICENSE NUMBER | 30. TIME OF DEATH (Actual or presumed) |
|---|---|---|---|
| SUBODH SONWALKAR , BY ELECTRONIC SIGNATURE | 01/23/2009 | K1683 | 12:42 PM |

| 31. PRINTED NAME, ADDRESS OF CERTIFIER (Street and Number, City, State,Zip Code) | 32. TITLE OF CERTIFIER |
|---|---|
| SUBODH SONWALKAR 1602 SOUTH PARKWAY BLVD, SUGARLAND, TX 77478 | MD |

33. PART I. ENTER THE CHAIN OF EVENTS – DISEASES, INJURIES, OR COMPLICATIONS – THAT DIRECTLY CAUSED THE DEATH. DO NOT ENTER TERMINAL EVENTS SUCH AS CARDIAC ARREST, RESPIRATORY ARREST, OR VENTRICULAR FIBRILLATION WITHOUT SHOWING THE ETIOLOGY. DO NOT ABBREVIATE. ENTER ONLY ONE CAUSE ON EACH.

|  | | Approximate interval Onset to death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) ⟶ | ▇▇▇▇▇▇ | 3 DAYS |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated, the events resulting in death) LAST | ▇▇▇▇▇▇ | 3 DAYS |
| | ▇▇▇▇▇▇ | 3 DAYS |
| | | YEARS |

| 33. PART II. ENTER OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH, BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I. | 34. WAS AN AUTOPSY PERFORMED? |
|---|---|
| HYPERTENSION, CHRONIC RENAL FAILURE, CHRONIC ATRIAL FIBRILLATION | ☐ Yes ☒ No |
| | 35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☐ Yes ☐ No |

| 36. MANNER OF DEATH | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? | 38. IF FEMALE: | 39. IF TRANSPORTATION INJURY, SPECIFY: |
|---|---|---|---|
| ☒ Natural ☐ Accident ☐ Suicide ☐ Homicide ☐ Pending Investigation ☐ Could not be determined | ☐ Yes ☐ No ☐ Probably ☐ Unknown | ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to one year before death ☐ Unknown if pregnant within the past year | ☐ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify) |

| 40a. DATE OF INJURY (Mo/Day/Yr) | 40b. TIME OF INJURY | 40c. INJURY AT WORK? ☐ Yes ☐ No | 40d. PLACE OF INJURY (e.g., Decedent's home, construction site, restaurant, wooded area) |
|---|---|---|---|
| | | | |

| 40e. LOCATION (Street and Number, City, State, Zip Code) | 40f. COUNTY OF INJURY |
|---|---|
| | |

41. DESCRIBE HOW INJURY OCCURRED

| 42a. REGISTRAR FILE NO. | 42b. DATE RECEIVED BY LOCAL REGISTRAR | 42c. REGISTRAR |
|---|---|---|
| 01-0103 | 02/05/2009 | REGISTRAR - FORT BEND COUNTY CLERK, ELECTRONICALLY FILED |
| EDR NUMBER  000000517379 | | |

VS-112 REV 1/2006

## Exhibit B

This is a true and correct copy of the record as registered in the State of Texas. Issued under the authority of Section 191.051, Health and Safety Code.

ISSUED    June 14, 2023

*Laura Richard*
Laura Richard
County Clerk/Local Registrar

WARNING: THIS DOCUMENT HAS A DARK BLUE BORDER AND A COLORED BACKGROUND

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

THE STATE OF TEXAS


FORT BEND COUNTY · LOCAL REGISTRAR

CERTIFIED COPY OF RECORD

# GRAYSON COUNTY

## STATE OF TEXAS                    CERTIFICATE OF DEATH                    STATE FILE NUMBER

| 1. LEGAL NAME OF DECEASED (Include AKA's, if any) (First, Middle, Last) | (Maiden) | 2. DATE OF DEATH – ACTUAL OR PRESUMED |
|---|---|---|
| LAMOYAN FAYE DOUGLAS | BAKER | 05/02/2011 |

| 3. SEX | 4. DATE OF BIRTH | 5. AGE-Last Birthday (Years) | IF UNDER 1 YR. MO / DAYS | IF UNDER 1 DAY HOURS / MIN | 6. BIRTHPLACE (City & State or Foreign Country) |
|---|---|---|---|---|---|
| FEMALE | 1921 | 89 | | | LAWN, TX |

| 7. SOCIAL SECURITY NUMBER | 8. MARITAL STATUS AT TIME OF DEATH | 9. SURVIVING SPOUSE'S NAME (If Wife, give name prior to first marriage) |
|---|---|---|
| 9950 | ☑ Widowed ☐ Divorced ☐ Never Married ☐ Unknown  ☐ Married | |

| 10a. RESIDENCE STREET ADDRESS | 10b. APT. NO. | 10c. CITY OR TOWN |
|---|---|---|
| 11306 BROOK MEADOWS LANE | | STAFFORD |

| 10d. COUNTY | 10e. STATE | 10f. ZIP CODE | 10g. INSIDE CITY LIMITS? |
|---|---|---|---|
| FORT BEND | TEXAS | 77477 | ☑ Yes   ☐ No |

| 11. FATHER'S NAME | 12. MOTHER'S NAME PRIOR TO FIRST MARRIAGE |
|---|---|
| BURL BAKER | ELSIE CUMBY |

13. PLACE OF DEATH (CHECK ONLY ONE)

| 13a. IF DEATH OCCURRED IN A HOSPITAL: | IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: |
|---|---|
| ☑ Inpatient  ☐ ER/Outpatient  ☐ DOA | ☐ Hospice Facility  ☐ Nursing Home  ☐ Decedent's Home  ☐ Other (Specify) |

| 14. COUNTY OF DEATH | 15. CITY/TOWN, ZIP CODE (If outside city limits, give precinct no) | 16. FACILITY NAME (If not institution, give street address) |
|---|---|---|
| GRAYSON | DENISON, 75020 | TEXOMA MEDICAL CENTER -DENISON |

| 17. INFORMANT'S NAME & RELATIONSHIP TO DECEASED | 18. MAILING ADDRESS OF INFORMANT(Street and Number,City,State,Zip Code) |
|---|---|
| RHONDA CELLNER - DAUGHTER | 11506 BROOK MEADOWS LANE, STAFFORD, TX 77477 |

| 19. METHOD OF DISPOSITION | 20. SIGNATURE AND LICENSE NUMBER OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH | 21. |
|---|---|---|
| ☑ Burial  ☐ Cremation  ☐ Donation | | ☑ Unknown |
| ☐ Entombment  ☐ Removal from state | LARRY RIDDLE ,BY ELECTRONIC SIGNATURE- 5876 | Section ___ Block ___ Lot ___ |
| ☐ Other (Specify) | | |

| 22. PLACE OF DISPOSITION (Name of Cemetery, crematory, other place) | 23. LOCATION (City/Town, and State) | Space ___ |
|---|---|---|
| CEDARLAWN MEMORIAL PARK | SHERMAN,TX | |

| 24. NAME OF FUNERAL FACILITY | 25. COMPLETE ADDRESS OF FUNERAL FACILITY (Street and Number, City State, Zip Code) |
|---|---|
| BRATCHER FUNERAL HOME | 401 W. WOODARD, DENISON, TX 75020 |

26. CERTIFIER (Check only one)
☐ Certifying physician-To the best of my knowledge, death occurred due to the cause(s) and manner stated.
☐ Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion, death occurred at the time,date and place, and due to the cause(s) and manner stated.

| 27. SIGNATURE OF CERTIFIER | 28. DATE CERTIFIED (Mo/Day/Yr) | 29. LICENSE NUMBER | 30. TIME OF DEATH(Actual or presumed) |
|---|---|---|---|
| | 5/9/11 | L4827 | 01:30 PM |

| 31. PRINTED NAME, ADDRESS OF CERTIFIER (Street and Number, City,State,Zip Code) | 32. TITLE OF CERTIFIER |
|---|---|
| Aaron Cernero, 300 N. Highland, Suite 320, Sherman, TX 75092 | D.O. |

33. PART 1. ENTER THE CHAIN OF EVENTS - DISEASES, INJURIES, OR COMPLICATIONS - THAT DIRECTLY CAUSED THE DEATH. DO NOT ENTER TERMINAL EVENTS SUCH AS CARDIAC ARREST, RESPIRATORY ARREST, OR VENTRICULAR FIBRILLATION WITHOUT SHOWING THE ETIOLOGY. DO NOT ABBREVIATE. ENTER ONLY ONE CAUSE ON EACH LINE.

Approximate interval Onset to death

IMMEDIATE CAUSE (Final disease or condition ———> a. ██████████
resulting in death)

Sequentially list conditions, b. ██████████
if any, leading to the cause
listed on line a. Enter the
UNDERLYING CAUSE c. ██████████
(disease or injury) that
initiated, the events
resulting in death) LAST        Due to (or as a consequence of):

d.

PART 2. ENTER OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH  BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I.

| 34. WAS AN AUTOPSY PERFORMED? |
|---|
| ☐ Yes   ☑ No |

| 35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? |
|---|
| ☐ Yes   ☐ No |

| 36. MANNER OF DEATH | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? | 38. IF FEMALE: | 39. IF TRANSPORTATION INJURY, SPECIFY: |
|---|---|---|---|
| ☑ Natural | ☐ Yes | ☐ Not pregnant within past year | ☐ Driver/Operator |
| ☐ Accident | ☑ No | ☐ Pregnant at time of death. | ☐ Passenger |
| ☐ Suicide | ☐ Probably | ☐ Not pregnant, but pregnant within 42 days of death | ☐ Pedestrian |
| ☐ Homicide | ☐ Unknown | ☐ Not pregnant, but pregnant 43 days to one year before death | ☐ Other (Specify) |
| ☐ Pending Investigation | | ☐ Unknown if pregnant within the past year | |
| ☐ Could not be determined | | | |

| 40a. DATE OF INJURY (Mo/Day/Yr) | 40b. TIME OF INJURY | 40c. INJURY AT WORK? ☐ Yes ☐ No | 40d. PLACE OF INJURY (e.g. Decedent's home, construction site, restaurant, wooded area) |
|---|---|---|---|
| | | | |

| 40e. LOCATION (Street and Number, City,State,Zip Code) | 40f. COUNTY OF INJURY |
|---|---|
| | |

41. DESCRIBE HOW INJURY OCCURRED

| 42a. REGISTRAR FILE NO. | 42b. DATE RECEIVED BY LOCAL REGISTRAR | 42c. REGISTRAR |
|---|---|---|
| 03-165 | 05-10-2011 | Della Fox Cox |

EDR   000000942082                                                    DTP. NO 1

VS-112 REV 1/2006

WARNING: The penalty for knowingly making a false statement on this form or knowingly allowing a false statement to be filed from can be 2-10 years in prison and a fine up to $10,000. (Health and Safety Code, Sec. 195, 196)

TEXAS DEPARTMENT OF STATE HEALTH SERVICES - VITAL STATISTICS UNIT

This is a true and correct copy of the record as registered in the State of Texas. Issued under the authority of Section 191.051, Health and Safety Code.

ISSUED   JUN 0 5 2023

Deana Patterson
County Clerk/Local Registrar

**Exhibit C**

WARNING: THIS DOCUMENT HAS A DARK BLUE BORDER AND A COLORED BACKGROUND

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

# STATE OF TEXAS
## CERTIFICATION OF VITAL RECORD

## DEPARTMENT OF STATE HEALTH SERVICES
## VITAL STATISTICS

TEXAS DEPARTMENT OF STATE HEALTH SERVICES - VITAL STATISTICS

Aug 01 2022

**STATE OF TEXAS**  **CERTIFICATE OF DEATH**  **STATE FILE NUMBER** 142-22-137970

| 1. LEGAL NAME OF DECEASED (Include AKA's, if any) (First, Middle, Last) | (Before Marriage) | 2. DATE OF DEATH - ACTUAL OR PRESUMED (mm-dd-yyyy) |
|---|---|---|
| RHONDA   SUE   CELLNER | DOUGLAS | JULY 26, 2022 |

| 3. SEX | 4. DATE OF BIRTH (mm-dd-yyyy) | 5. AGE-Last Birthday (Years) | IF UNDER 1 YR Months  Days | IF UNDER 1 DAY Hours  Min | 6. BIRTHPLACE (City & State or Foreign Country) |
|---|---|---|---|---|---|
| FEMALE | 1943 | 78 | | | ABILENE, TX |

| 7. SOCIAL SECURITY NUMBER | 8. MARITAL STATUS AT TIME OF DEATH | 9. SURVIVING SPOUSE'S NAME (If spouse, give name prior to first marriage) |
|---|---|---|
| 8801 | ☒ Married  ☐ Widowed (but not remarried)  ☐ Divorced (but not remarried)  ☐ Never Married  ☐ Unknown | JIMMIE   KEITH   CELLNER |

| 10a. RESIDENCE STREET ADDRESS | 10b. APT. NO. | 10c. CITY OR TOWN |
|---|---|---|
| 5055 WEST PANTHER CREEK DR. | 3303 | SPRING |

| 10d. COUNTY | 10e. STATE | 10f. ZIP CODE | 10g. INSIDE CITY LIMITS? |
|---|---|---|---|
| MONTGOMERY | TEXAS | 77381 | ☐ Yes  ☒ No |

| 11. FATHER/PARENT 2 NAME PRIOR TO FIRST MARRIAGE | 12. MOTHER/PARENT 1 NAME PRIOR TO FIRST MARRIAGE |
|---|---|
| RALPH   ARNOLD   DOUGLAS | LAMOYAN   FAYE   BAKER |

**13. PLACE OF DEATH (CHECK ONLY ONE)**

IF DEATH OCCURRED IN A HOSPITAL:  ☐ Inpatient  ☐ ER/Outpatient  ☐ DOA

IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL:  ☐ Hospice Facility  ☒ Nursing Home  ☐ Decedent's Home  ☐ Other (Specify)

| 14. COUNTY OF DEATH | 15. CITY/TOWN, ZIP. (IF OUTSIDE CITY LIMITS, GIVE PRECINCT NO) | 16. FACILITY NAME (If not institution, give street address) |
|---|---|---|
| MONTGOMERY | PRECINCT 3, 77384 | PARK MANOR IN THE WOODLANDS |

| 17. INFORMANT'S NAME & RELATIONSHIP TO DECEASED | 18. MAILING ADDRESS OF INFORMANT (Street and Number, City, State, Zip Code) |
|---|---|
| DOUG CELLNER - SON | 154 WEST BURBERRY CIRCLE, CONROE, TX 77384 |

| 19. METHOD OF DISPOSITION | 20. SIGNATURE AND LICENSE NUMBER OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH | 21. |
|---|---|---|
| ☐ Burial  ☒ Cremation  ☐ Donation  ☐ Entombment  ☐ Removal from state  ☐ Mausoleum  ☐ Other (Specify) | JESSICA LEE MARSH, BY ELECTRONIC SIGNATURE - 117576 | ☒ Unknown  Section:  Block:  Lot:  Space: |

| 22. PLACE OF DISPOSITION (Name of cemetery, crematory, other place) | 23. LOCATION (City/Town, and State) |
|---|---|
| GULF COAST CREMATORY | HOUSTON, TX |

| 24. NAME OF FUNERAL FACILITY | 25. COMPLETE ADDRESS OF FUNERAL FACILITY (Street and Number, City, State, Zip Code) |
|---|---|
| NEPTUNE SOCIETY-HOUSTON | 2901 WEST LOOP SOUTH STE. 102, HOUSTON, TX 77027 |

**26. CERTIFIER (Check only one)**

☒ Certifying physician-To the best of my knowledge, death occurred due to the cause(s) and manner stated.

☐ Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date and place, and due to the cause(s) and manner stated.

| 27. SIGNATURE OF CERTIFIER | 28. DATE CERTIFIED (mm-dd-yyyy) | 29. LICENSE NUMBER | 30. TIME OF DEATH(Actual or presumed) |
|---|---|---|---|
| BHARAT LATTHE , BY ELECTRONIC SIGNATURE | JULY 29, 2022 | K6082 | 07:26 PM |

| 31. PRINTED NAME, ADDRESS OF CERTIFIER (Street and Number, City, State, Zip Code) | 32. TITLE OF CERTIFIER |
|---|---|
| BHARAT   LATTHE  150 PINE FOREST DR. SHENANDOAH, TX 77354 | MD |

| 33. PART 1 - ENTER THE CHAIN OF EVENTS – DISEASES, INJURIES, OR COMPLICATIONS - THAT DIRECTLY CAUSED THE DEATH. DO NOT ENTER TERMINAL EVENTS SUCH AS CARDIAC ARREST, RESPIRATORY ARREST, OR VENTRICULAR FIBRILLATION WITHOUT SHOWING THE ETIOLOGY. DO NOT ABBREVIATE. ENTER ONLY ONE CAUSE ON EACH. | Approximate interval Onset to death |
|---|---|
| IMMEDIATE CAUSE (Final disease or condition -----> resulting in death) | 1 WEEK |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST | 1 YEAR |
| Due to (or as a consequence of): | |

| PART 2 ENTER OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH - BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I. | 34. WAS AN AUTOPSY PERFORMED? ☐ Yes  ☒ No |
|---|---|
| | 35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH  ☐ Yes  ☐ No |

| 36. MANNER OF DEATH | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? | 38. IF FEMALE: | 39. IF TRANSPORTATION INJURY, SPECIFY: |
|---|---|---|---|
| ☒ Natural  ☐ Accident  ☐ Suicide  ☐ Homicide  ☐ Pending Investigation  ☐ Could not be determined | ☐ Yes  ☐ No  ☐ Previously  ☐ Probably  ☐ Unknown | ☐ Not pregnant within past year  ☐ Pregnant at time of death  ☐ Not pregnant, but pregnant within 42 days of death  ☐ Not pregnant, but pregnant 43 days to one year before death  ☐ Unknown if pregnant within the past year | ☐ Driver/Operator  ☐ Passenger  ☐ Pedestrian  ☐ Other (Specify) |

| 40a. DATE OF INJURY (mm-dd-yyyy) | 40b. TIME OF INJURY | 40c. INJURY AT WORK? ☐ Yes  ☐ No | 40d. PLACE OF INJURY (e.g. Decedent's home, construction site, restaurant, wooded area) |
|---|---|---|---|

| 40e. LOCATION (Street and Number, City, State, Zip Code) | 40f. COUNTY OF INJURY |
|---|---|

| 41. DESCRIBE HOW INJURY OCCURRED |
|---|

| 42a. REGISTRAR FILE NO. | 42b. DATE RECEIVED BY LOCAL REGISTRAR | 42c. REGISTRAR | JON |
|---|---|---|---|
| 01002942 | AUGUST 1, 2022 | | |

EDR NUMBER  000044445401996

This is a true and correct copy of the record as registered in the State of Texas. Issued under the authority of Section 191.051, Health and Safety Code.

**ISSUED**  Aug 05 2022

WARNING: THIS DOCUMENT HAS A DARK BLUE BORDER AND A COLORED BACKGROUND

TARA DAS
STATE REGISTRAR



**Exhibit C**

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



Prepared by:
**FIRST CONTINENTAL MORTGAGE, LTD**

**2929 BRIARPARK, SUITE 125**
**HOUSTON, TEXAS 77042**

Mail:
**FINANCIAL FREEDOM SENIOR FUNDING CORPORATION,**
**A SUBSIDIARY OF INDYMAC BANK, F.S.B.**
**500 NORTH RIDGE ROAD STE. 500**
**ATLANTA, GEORGIA 30350**

[Space Above This Line For Recording Data]

**State of Texas**                    FHA Case No.           **493-8116045-952**
                                                             **3000012788**

## ADJUSTABLE RATE
## HOME EQUITY CONVERSION DEED OF TRUST

**NOTICE OF CONFIDENTIALITY RIGHTS:**
**IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY**
**OF THE FOLLOWING INFORMATION FROM THIS INSTRUMENT BEFORE**
**IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL**
**SECURITY NUMBER OR YOUR DRIVERS LICENSE NUMBER.**

THIS DEED OF TRUST ("Security Instrument") is made on **DECEMBER 12, 2005**
The trustor is
**JIMMIE KEITH CELLNER AND WIFE RHONDA S. CELLNER, MARRIED**

whose address is
**11506 BROOK MEADOWS LANE, STAFFORD, TEXAS 77477**

("Borrower"). The trustee is
**ROBERT K. FOWLER**
**BROWN, FOWLER & ALSUP**
**10333 RICHMOND AVENUE, SUITE 860**
**HOUSTON, TX 77042**
("Trustee"). The beneficiary is
**FIRST CONTINENTAL MORTGAGE, LTD**

which is organized and existing under the laws of State of **THE STATE OF TEXAS**
and whose address is
**2929 BRIARPARK, SUITE 125, HOUSTON, TEXAS 77042**
("Lender"). Borrower has agreed to repay to Lender amounts which Lender is obligated to advance,
including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same
date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by

SF80 : 12/03                    (Page 1)

* 3 0 0 0 0 1 2 7 8 8 *

Address Proof
Of Record

14 PGS    HOMEQUITY 2005604608

3000012788

Borrower's Adjustable Rate Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of ONE HUNDRED NINETY NINE THOUSAND FIVE HUNDRED AND 00/100 - - - - - - - - - - - - - - - - -
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Dollars (U.S. $     199,500.00                    ); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to trustee, in trust, with power of sale, the following described property located in FORT BEND                              County, Texas:

SEE LEGAL DESCRIPTION ATTACHED ON EXHIBIT A

which has the address of   11506 BROOK MEADOWS LANE                                    ,
                                                [Street]

STAFFORD              , TEXAS              77477              ("Property Address");
        [City]                  [State]              [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

53YI : 02/02                          (Page 2)

FIELD NOTES
Of A Survey Of

A tract or parcel of land, being Lot 36 and part of Lot 37, in Block 8, of THE MEADOWS, SECTION I, according to the map or plat thereof recorded in Volume 6, Page 12, of the Plat Records of Fort Bend County, Texas, and being more particularly described by metes and bounds as follows:

BEGINNING at an "X" in concrete in the North line of Brook Meadows Lane (60.00 feet wide), same being the Southwest corner of Lot 36, the Southeast corner of Lot 37, in Block 8;

THENCE in a Southeasterly direction along a curve to the right, having a radius of 1470.00 feet, a distance of 61.00 feet to a 5/8 inch iron rod found for the Southeast corner of Lot 36, same being the Southwest corner of Lot 35;

THENCE North 17 deg 57 min 27 sec East, a distance of 111.00 feet to a ½ inch iron rod set for corner of the Northeast corner of Lot 36;

THENCE North 70 deg 00 min 05 sec West, a distance of 20.53 feet to a ½ inch iron rod set for corner, said point further being the Southwest corner of Lot 11, and the Southeast corner of Lot 10;

THENCE North 76 deg 11 min 50 sec West, a distance of 54.86 feet to a ½ inch iron rod set for corner, being in the North line of Lot 37, and the South line of Lot 10;

THENCE South 15 deg 13 min 39 sec West, a distance of 109.56 feet to a 5/8 inch iron rod found for a corner on the North right of way line of said Brook Meadows Drive;

THENCE in a Southerly direction along said line, same being a curve to the right, having a radius of 1470.00 feet, a distance of 9.00 feet to the POINT OF BEGINNING, of the herein described tract.

STATE OF TEXAS
REGISTERED
H. T. WEBER
4101
PROFESSIONAL
LAND SURVEYOR

H. T. Web

Address Proof
Of Record

3000012788

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument, subject to any limitation imposed under applicable law, or be held in escrow to be so applied when permissible under applicable law. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's Principal Residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's Principal Residence for the term of the Security Instrument. "Principal Residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a Principal Residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

54Y1 : 02/02                                    (Page 3)

Address Proof
Of Record

3000012788

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws in regulations), then Lender, subject to applicable law, may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph are obligatory and shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6.    **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower. Any expenditures made in connection with the protection and preservation of the Property may be paid with Loan Advances and added to the outstanding balance to the extent the expenditures are for any of the following Borrower obligations: (a) taxes; (b) insurance; (c) costs of repairs or maintenance performed by a person or company that is not an employee of the lender or a person or company that directly or indirectly controls, is controlled by, or is under common control with Lender; (d) assessments levied against the Principal Residence; and (e) any lien that has, or may obtain, priority over Lender's lien as it is established in the Loan Documents, as defined in the Loan Agreement. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

7.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument, subject to any limitation imposed under applicable law, or be held in escrow to be so applied when permissible under applicable law. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8.    **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.    **Grounds for Acceleration of Debt.**

(a)    **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:

    (i)    All Borrowers die; or

    (ii)    All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (A) title to the Property in fee simple; (B) a leasehold under a lease for less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower (or retaining a beneficial interest in a trust with such an interest in the Property); or (C) a life estate in the Property.

(b)    **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:

    (i)    All Borrowers cease occupying the Property for 12 consecutive months without the prior written approval of the Lender; or

55YI : 02/02                                (Page 4)


Address Proof
Of Record

3000012788

(ii)    Borrower: (A) defaults on an obligation specified in the Loan Documents to repair and maintain, pay taxes and assessments on, or insure, the Property; or (B) commits actual fraud in connection with the Loan; or

(iii)    Borrower fails to maintain the priority of Lender's lien on the Property, after Lender gives notice to Borrower, by promptly discharging any lien that has priority or may obtain priority over the Lender's lien within ten (10) days after the date Borrower receives the notice. Lender shall not require immediate payment in full if Borrower: (A) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (B) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings so as to prevent the enforcement of the lien or forfeiture of any part of the Property; or (C) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by Lender's lien on the Property.

(c)    **Notice to Lender.**  Borrower shall notify Lender whenever any of the events listed in this Paragraph 9 occur.

(d)    **Notice to Secretary and Borrower.**  Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9. Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:

(i)    Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii)    Pay the balance in full; or

(iii)    Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv)    Provide the Lender with a deed in lieu of foreclosure.

(e)    **Trusts.**  Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a Principal Residence for purposes of this Paragraph 9.

10.    **No Deficiency Judgments.**  Borrower shall have no personal liability for the payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

11.    **Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (a) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding; (b) reinstatement will preclude foreclosure on different grounds in the future; or (c) reinstatement will adversely affect the priority of the Security Instrument.

12.    **Lien Status.**

(a)    **Modification.**  Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period

56Y1 : 02/02                  (Page 5)


Address Proof
Of Record

3000012788

under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the lien status of future loan advances. Borrower agrees to execute such documents.

(b)    **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

(c)    **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (i) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (ii) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (iii) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

**13.    Relationship to Second Security Instrument.**

(a)    **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

(b)    **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:

(i)    This Security Instrument is assigned to the Secretary; or

(ii)    The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments, but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

(c)    **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not be required to pay any amounts of principal, interest, and shared appreciation, if any, owed under the Note.

(d)    **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14.    Forfeiture by Lender.** If Lender fails to make loan advances as required by the Loan Documents and Lender fails to cure the default after notice from the Borrower, Lender forfeits all principal and interest due on this Security Instrument, provided that this forfeiture does not apply if this Security Instrument is assigned to the Secretary of Housing and Urban Development.

**15.    Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**16.    Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

57YI : 02/02                                (Page 6)



Address Proof
Of Record

3000012788

**17.   Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Secretary Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 17.

**18.   Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**19.   Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**20.   Assignment of Rents.** Borrower unconditionally assigns and transfers to lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 20.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

**21.   Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale. Except as otherwise provided herein, Borrower hereby waives any notice, demand, presentment, notice of non-payment or nonperformance, protest, notice of protest, notice of intent to accelerate, notice of acceleration, or any other notice or any other action. The failure to exercise any remedy available to Lender shall not be deemed to be a waiver of any rights or remedies of Lender under the Note, this Security Instrument or the Loan Agreement. As permitted by applicable law, Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 21, including, but not limited to, reasonable attorneys' fees.

**22.   Foreclosure; Power of Sale.** It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by applicable law, including, without limitation, foreclosure under a power of sale. The lien evidenced by this Security Instrument may be foreclosed only by court order, if the foreclosure is for a ground other than those described in Paragraph 9(a). Lender shall follow any rules of civil procedure promulgated by the Texas Supreme Court related to the foreclosure of liens under Section 50(a)(7), Article XVI of the Texas Constitution, if applicable.

58YI : 02/02                                          (Page 7)


Address Proof
Of Record

3000012788

Lender may request Trustee to proceed with foreclosure under the power of sale. Any such request shall comply with such rules of civil procedure if they apply. Trustee is hereby authorized and empowered, and it shall be Trustee's special duty, upon such request of Lender, to sell the Property, or any part thereof, at public auction to the highest bidder for cash, in one or more parcels and in any order Trustee determines, with or without having taken possession of same. Any such sale (including notice thereof) shall comply with the applicable requirements, at the time of the sale, of Section 51.002 of the Texas Property Code or, if and to the extent such statute is not then in force, with the applicable requirements, at the time of the sale, of the successor statute or statutes, if any, governing sales of Texas real property under powers of sale conferred by deeds of trust. If there is no statute in force at the time of the sale governing sales of Texas real property under powers of sale conferred by deeds of trust, such sale shall comply with applicable law, at the time of the sale, governing sales of Texas real property under powers of sale conferred by deeds of trust.

Trustee shall deliver to the purchaser who acquires title to the Property pursuant to the foreclosure of the lien a Trustee's deed conveying the Property with general warranty of title by Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, court costs and reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

If the Property is sold pursuant to this paragraph 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be tenants at sufferance and may be removed by writ of possession.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 22 or applicable law.

**23.   Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

**24.   Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with applicable law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**25.   Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by applicable law.

59YI : 02/02                                    (Page 8)

Address Proof
Of Record

3000012788

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**26. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**27. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**28. Adjustable Rate Feature.** Under the Note, the initial stated interest rate of **5.8400** % which accrues on the unpaid principal balance ("Initial Interest Rate") is subject to change, as described below. When the interest rate changes, the new adjusted interest rate will be applied to the total outstanding principal balance. Each adjustment to the interest rate will be based upon the weekly average yield on United States Treasury Securities adjusted to a constant maturity of one year ("Index") plus a margin. The Index is published in the Federal Reserve Bulletin and made available by the United States Treasury Department in Statistical Release H.15(519). If the Index is no longer available, Lender will be required to use any index prescribed by the Department of Housing and Urban Development. Lender will give Borrower notice of new index.

Lender will perform the calculations described below to determine the new adjusted interest rate. The interest rate may change on the first day of **MARCH, 2006** and on [   ] that day of each succeeding year, [ X ] the first day of each succeeding month. "Change Date" means each date in which the interest rate could change.

The value of the Index will be determined, using the most recent Index figure available thirty (30) days before the Change Date ("Current Index"). Before each Change Date, the new interest rate will be calculated by adding a margin to the Current Index. The sum of the margin plus the Current Index will be called the "Calculated Interest Rate" for each Change Date. The Calculated Interest Rate will be compared to the interest rate in effect immediately prior to the current Change Date (the "Existing Interest Rate").

[   ] **(Annually Adjusting Variable Rate Feature)** The Calculated Interest Rate cannot be more than 2.0 percentage points higher or lower than the Existing Interest Rate, nor can it be more than 5.0 percentage points higher or lower than the Initial Interest Rate.

[ X ] **(Monthly Adjusting Variable Rate Feature)** The Calculated Interest Rate will never increase above **FIFTEEN AND 840/1000** percent ( **15.84000** %).

The Calculated Interest Rate will be adjusted if necessary to comply with the rate limitation(s) described above and will be in effect until the next Change Date. At any change date, if the Calculated Interest Rate equals the Existing Interest Rate, the interest rate will not change.

**29. Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

**30. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

[   ] Condominium Rider        [ X ] Planned Unit Development Rider
[   ] Shared Appreciation Rider   [   ] Other [Specify]

60Y1 : 02/02                    (Page 9)

3000012788

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
JAMMIE KEITH CELLNER                              -Borrower

_____ (Seal)
RHONDA S. CELLNER                                 -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

Witnesses:

_____

_____

61YI : 11/00                    (Page 10)

Unofficial Document

Address Proof
Of Record

3000012788

———— [Space Below This Line For Acknowledgment] ————

State of Texas

County of Harris

This instrument was acknowledged before me this December 12, 2005, by

Jimmie Keith Cellner +
Rhonda S. Cellner

_____
Notary Public
My Commission Expires:

**ALL SIGNATURES AND SEALS APPEAR ON THE ORIGINAL***

62Y1 : 11/01                    (Page 1)

Unofficial Document

Address Proof
Of Record

# PLANNED UNIT DEVELOPMENT RIDER
## (Home Equity Conversion Mortgage)

493-8116045-952/255
3000012788

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **12TH** day of **DECEMBER, 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
**FIRST CONTINENTAL MORTGAGE, LTD**

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

**11506 BROOK MEADOWS LANE, STAFFORD, TEXAS 77477**
[Property Address]

The Property is a part of a planned unit development ("PUD") known as:
**THE MEADOWS**

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender or the Secretary require, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the payment of the premium for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 3 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

22XA : 11/96                                        Page 1 of 2



C.   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
JIMMIE KEITH CELLNER                           -Borrower

_____ (Seal)
RHONDA S. CELLNER                              -Borrower

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

2006 Jan 11 01:51 PM        2006004608
EG $61.00
Dianne Wilson, Ph.D. COUNTY CLERK
FT BEND COUNTY TEXAS

23XA : 11/96                    Page 2 of 2