BTXN 127 (rev. 1/14)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

FILED
AUG 31 2023
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | | |
|---|---|---|---|
| In Re: Life Holding Partners, Inc. | § | Case No.: 15-40289 |
| | § | |
| | § | |
| Debtor(s) | § | |
| | § | |
| | § | |

## APPLICATION FOR PAYMENT OF UNCLAIMED FUNDS

Comes now the undersigned, to make application for an order directing payment of unclaimed funds now on deposit in the Treasury of the United States. Claimant is a __X__creditor ____ debtor (check one) in the above captioned bankruptcy case and on whose behalf these funds were deposited.

| | | |
|---|---|---|
| 1. | **Name of Claimant(s)** | Kenneth Copeland Ministries |
| 2. | **Name and Title of Authorizing Officer or Representative** (*If Claimant is an individual, skip to Question No. 3)* | Jan Harbour, CFO |
| 3. | **Current Mailing Address** | P.O. Box 728 Newark, TX 76071 |
| 4. | **Telephone Number** | 817-252-5791 |
| 5. | **SS#** *(last 4 digits only)* **or EIN #** | 75-1300831 |
| 6. | **Amount Being Claimed** | $92,098.73 |

I, Jan Harbour, do hereby state under penalty of perjury that I am legally entitled to claim these funds for whom the unclaimed funds were deposited into the treasury in the above referenced bankruptcy case. I certify to the best of my knowledge that all information submitted in support of this claim is true and correct.

Date 8/22/23 [signature]
Claimant Signature

Co-Claimant Signature

Subscribed and Sworn to Before Me this 22nd day of August, 2023.

[signature: Sharon J McCloud]
Notary Public
In and for the State of Texas
My commission expires September 6, 2024

NOTARY PUBLIC STATE OF TEXAS
SHARON J. MCCLOUD
ID #6466273
My Commission Expires
September 06, 2024

**CERTIFICATE OF SERVICE**

In accordance with 28 U.S.C. § 2042, the undersigned hereby certifies that on the date designated below, a true and correct copy of the foregoing application with all required attachments was mailed to:

Office of the United States Attorney
Attn: Unclaimed Funds
1100 Commerce Street, 3rd Floor
Dallas, TX 75242

Date: 8/22/23

Claimant's Signature

# Funds for Life Ministries, Inc.
# Charitable Gift Instruments Policy

Funds for Life Ministries, Inc., policies concerning Charitable Gift Instruments, charitable recipients and donors:

**Charitable Recipients**

1. Funds For Life Ministries, Inc. will work with all charities that fall within our mission statement: empowering, equipping and encouraging Christian ministries in their fulfillment of the Great Commission through Grace-based solutions assuring each ministry's maximization of their talents and realization of their unique missions.
2. All organizations must be approved by a majority of the Funds For Life Ministries Board of Directors.

**Donors**

1. Funds for Life Ministries, Inc. will accept current gift instruments, which begin payments within one year of the gift date, as well as deferred payment gift instruments, whose initial payment is at least one year after the gift date. The deferral period will be at the discretion of the donor.
2. Funds for Life Ministries, Inc. will accept gift annuities for one life, two lives in succession, or joint and survivor annuity agreements. Gift annuity agreements will be limited to one life or two lives in being at the time of the gift.
3. The maximum annuity rates offered will be the current Uniform Gift Annuity rates and in the case of deferred payment gift annuities, the current Uniform Interest Factors, both adopted by the American Council on Gift Annuities, 233 McCrea Street, Suite 400, Indianapolis, IN 46225. Funds For Life Ministries, Inc. may establish a maximum annuity rate chart that is lower, but not higher than the Uniform Gift Annuity Rates of the American Council on Gift Annuities. To conform to the federally mandated "Clay-Brown Rule," the annuity rate offered will generate a charitable deduction of more than 10 percent of the fair market value of the assets given, or the instrument rate will be reduced to quality for the deduction. (We realize that the monthly changing Applicable Federal Rate [AFR] affects the calculated deduction.)
4. To conform to various state laws, Funds For Life Ministries, Inc. will always offer the maximum instrument rate to each potential donor/annuitant, based on the actuarial age of the annuitants, but we may suggest that if the person were willing to accept a lower rate, a larger charitable deduction would be obtained for the same size gift.
5. Gift assets will be limited to cash and securities for which a ready market exists. Closely held stock will not be accepted. Funds For Life Ministries, Inc. may accept real property into our gift instrument fund.
6. To conform to various state laws, Funds for Life Ministries, Inc. will operate a segregated gift instrument fund in which identifiably separate investments will be maintained and which is not part of any other investment or endowment fund of FFLM. The full instrument gift will be admitted to the gift instrument fund of FFLM and will be maintained until the demise of the last annuitant in the agreement.

7. A policy or methodology will be established to identify the changing market value of each agreement, so that an appropriate amount may be withdrawn from the gift instrument fund at the termination of the agreement.
8. The minimum acceptable gift is as follows: One life: ($10,000); Two lives: ($10,000); Deferred Payment Instruments ($5,000).
9. The minimum actuarial age of an annuitant on the date the payments start is negotiable according to applicable state or federal laws.
10. Funds For Life Ministries. Inc. conforms to various state laws in which Charitable Gift Instruments are issued and we will maintain sufficient reserves to meet state standards and to meet all CGI obligations.
11. The gift instrument will be effective on the postmark date on the envelope that brings it to us, or the date it is given to our representative; provided funds are received in our office within seven (7) days.
12. Annuity payments may be paid quarterly, semiannually or annually, or in the case of annuity gifts of ($20,000 or more), monthly. Annuity payment amounts will be rounded upward to the nearest cent to ensure that each payment will be exactly the same amount. Annuity payments will be mailed prior to the payment due date.
13. Funds For Life Ministries, Inc. will maintain the investment and reporting requirements of each state that is applicable regarding gift instrument funds, and we will be guided by input from our own legal counsel and staff as to the necessity for filing for a permit to write instrument agreements in those states.
14. Funds For Life Ministries, Inc. will maintain investment and administrative records of our gift instrument fund and program to ensure that questions of our board can be answered appropriately.
15. Funds For Life Ministries undergoes annual audits, including all gift instrument funds, conducted by an independent Certified Public Accountant.

# Funds For Life Ministries, Inc.
# Management Fee Schedule

Funds For Life Ministries charges are as follows:

CGI program

- 1.75% on the CGI amount for the first year
- .75% for the subsequent years based on the annual account value

Endowment Funds Management Fees

- FFLMinistries will manage any portion or all of your endowment type funds, and charges .75% of the annual account value for this service. Liquidity and regular cash payments from the funds vary with each situation and circumstance. We tailor our management to meet your needs.

# CONTRACT

Consenting Parties: FUNDS FOR LIFE MINISTRIES, INC. AND EAGLE MOUNTAIN INTERNATIONAL CHURCH, INC. AKA KENNETH COPELAND MINISTRIES

## PARTIES

The parties to this contract are the following:

Funds For Life Ministries, Inc., 2601 Ridgmar Plaza, Suite 10, Fort Worth, TX 76116, hereinafter called FFLM, and

Eagle Mountain International Church, Inc. AKA Kenneth Copeland Ministries, 14355 Morris Dido Road, Newark, Texas 76071-9501 hereinafter called KCM.

## LOCATION

It is hereby agreed that this contract and the performance of such will take place in the following locations:

Funds For Life Ministries, Inc. maintains its current corporate offices at 2601 Ridgmar Plaza, Suite 10, Fort Worth, TX 76116. FFLM will conduct its contractual performance at the above-noted addresses, or a successor address if KCM is so notified within thirty (30) days of such a change. FFLM will always maintain its main corporate office in Texas, although FFLM may open satellite offices at other various locations. Certain meetings, seminars and other required activities may be held and conducted by FFLM in other states, as agreed by all parties.

Eagle Mountain International Church, Inc. AKA Kenneth Copeland Ministries is located at 14355 Morris Dido Road, Newark, Texas 76071-9501. KCM will conduct its contractual performance at the above-noted address, or a successor address if FFLM is so notified within thirty (30) days of such a change. KCM is not required to perform any activities outside of Texas.

## PRODUCTS PROVIDED BY FFLM

FFLM will offer to Copeland Ministries and its donor base the following three services:

Charitable Gift Annuities issued through FFLM;

Charitable Trusts issued through FFLM; and

Endowment Funds management.

## JURISDICTION

The Charitable Gift Annuities will be issued according to the laws of the Internal Revenue Service and the State of Domicile of the Donor. The Charitable Gift Annuities will comply with all the applicable laws.

The Charitable Trusts will be issued according to the laws of the Internal Revenue Service and the State of Texas.

FFLM further warrants that it is a 501(c)(3) non-profit corporation registered under the laws of the State of Texas and the Internal Revenue Service. FFLM additionally warrants that it complies with the laws of the States in which Charitable Gift Annuities are issued.

KCM further warrants that it is a 501(c)(3) non-profit corporation registered under the laws of the State of Texas and the Internal Revenue Service; and, that KCM is eligible to issue Charitable Gift Annuities.

## FUNDS FOR LIFE MINISTRIES, INC. COMMITS TO THE FOLLOWING:

1. FFLM will perform its contractual duties in a best efforts manner and in a way best suited to the Christian belief.
2. FFLM will conduct its program and operations in accordance with the Charitable Gift Instruments Policy of FFLM.
3. FFLM will inform KCM of its receipt of any monies from the donors within fourteen (14) days of such receipt.
4. FFLM will pay to KCM 5.0% of the monies received from the KCM donors for Charitable Gift Annuities or Charitable Remainder Annuity Trusts, within thirty (30) days of the receipt of such monies.
5. FFLM will not solicit, try to sell products to or contact any Covenant Partner, Partner, Friend, customer, parent, student, employee, church member or other such person, unless it is a specific part of the campaign and is agreed to by all parties.
6. FFLM will pay to KCM .75% of the account balance within fourteen (14) days of the end of each quarter, with the first such quarter to begin on the first day of the second annuity year. These payments will continue for as long as the annuity or trust is in force.
7. The quarterly payments to KCM will never be less than .25% of the original contribution to the annuity or trust, even if the donor outlives the distributions from the original contribution.
8. The residuum balance at the end of the annuity or trust will be distributed with 100% going to KCM.

9. FFLM will charge a management fee on the first day of each annuity year that is identified in the FFLM fee schedule for that year, enclosed. Once the fee schedule is agreed to, it will not be changed unless six months notice is given by FFLM. As laws change, tax situations change and costs increase, FFLM reserves the right to change management fees with notice to KCM. Additionally, fees cannot be changed more than once every four years and they cannot increase more than 50% at that change. FFLM reserves the right to waive the management fee at its own discretion.

## PERIOD OF TIME

This contract shall be in force for as long as FFLM maintains charitable gift annuities or charitable trusts for the donors of KCM.

## TERMINATION

Either party may terminate this contract with 90-day written notice. The terms of this contract shall be in force for any charitable gift annuities or charitable trusts issued prior to termination date. All charitable gift annuities and/or charitable trusts issued under this contract and their respective payments to the donor and to KCM are irrevocable and will continue in the event this contract between FFLM and KCM should be canceled by either party.

## SUCCESSOR CHARITIES

If FFLM ceases to exist, fails to maintain its 501(c)(3) status or terminates, then KCM has the first right of refusal to assume FFLM's position and contractual agreements. If KCM does not assume such position, then they have the first right of refusal to replace FFLM.

If KCM or one of its charitable partners ceases to exist or terminates, then the successor organization to that organization shall assume the old charity's position, provided that the successor charity is a qualified 501(c)(3) organization, within six (6) months of the termination. In the absence of a successor charity or a charity that is not a qualified 501(c)(3) organization, FFLM assumes the position of that charity and is required to find a qualified replacement organization with a similar purpose within six (6) months.

It is imperative that all parties understand that KCM and their successors must all be qualified 501(c)(3) organizations, or a qualified church.

## ARBITRATION

Any disputes under this agreement shall be submitted to arbitration with a single arbitrator under the rules of the American Arbitration Association. Any ruling made by the Arbitrators shall be final and may be entered as a judgment in any court of competent jurisdiction.

## SPECIAL PURPOSE

This contract is for the express purpose of FFLM issuing the charitable gift instruments and services previously stated. It is not a contract for any other purpose. It should be understood by all parties involved that the raising of any monies by FFLM under this contract is for the sole purpose of assisting KCM in funding their non-profit endeavors, as long as such endeavors are in agreement with their non-profit or 501(c)(3) purposes, so stated in any Internal Revenue Service documents or church bylaws.

IN WITNESS WHEREOF, Funds For Life Ministries, Inc. and Eagle Mountain International, Inc. AKA Kenneth Copeland Ministries do hereby execute this Agreement (four pages and three pages of enclosures) on the date stated below.

EAGLE MOUNTAIN INTERNATIONAL CHURCH, INC.
AKA KENNETH COPELAND MINISTRIES

_______________________________ Date: September 13, 2002
Jan N Harbour, Chief Financial Officer

_______________________________ Date: September 13, 2002
Lyndon R. Thompson, Manager Covenant Partner Planned Giving

FUNDS FOR LIFE MINISTRIES, INC.

_______________________________ Date: September 13, 2002
Don Leverett, Chief Executive Officer

_______________________________ Date: September 13, 2002
Gerald Johnson, Chief Operations Officer

**Reyna, Christina**

**From:** Hayes, Robert
**Sent:** Monday, August 13, 2012 4:32 PM
**To:** 'Don'
**Cc:** Davis, Charlie
**Subject:** RE: From Don Leverett

**Importance:** High

Don,
So you are saying that the underlying asset that the funds for the CGA's was life settlements, correct? Then the primary issue is timing of funds available as you can't predict the passing of the insured who the contract is on, is that also correct? How many other ministries are you working with along these same lines? I know these seem like tough questions, however we need this information to determine the ability of repayment to occur.

In the working out of the financial issue, you are asking us to make the payments due from May 2012 through January 2014 at which time Funds for Life will begin making the payments to the Annuitants, correct? Your plan will then begin to re-pay KCM in March 2014, correct? That would mean 20 months of payments due and 22 months before we would begin to see any repayment, correct?

If these items are correct, then I will draw up a document to be executed by Funds for Life that will detail the amounts due per the schedule and terms for those repayments to be over a 12 month time period. Please review this e mail and let me know at your earliest convenience if you have questions so we can get this plan in place and begin paying the Partners.

On a different note, I spoke to Abe Miller and he will be faxing me the copy of the POA on the Hartsock' estate. I will let you know when we have it and get a copy to you.

*Robert R. Hayes, CRM, ARM-P, CITRMS*
**Risk Manager**

**From:** Don [mailto:dfleverett@gmail.com]
**Sent:** Friday, August 10, 2012 9:29 AM
**To:** Hayes, Robert
**Subject:** RE: From Don Leverett

Robert,

The primary investment of Annuity funds is with Life Partners, Inc. in Waco Texas. Our portfolio is approximately $480,000. This is a life settlement company which we have done business with for about 10 to 12 years. Life Settlements are for the most part not liquid until maturity, however we have had access to some in the past through what is essentially a loan on maturities. This is what we have not been able to secure recently which has caused our liquidity issue.

It is our belief that we will return to financial stability by the end of January 2014. Our desire is that we would begin to repay to KCM the annuity payments in March of 2014 and pay it out over a one year time frame to avoid an burden on cash flow.

I think you can see that this is not a loss issue but rather a liquidity issue.

Hopefully we can assure annuity holders of our intentions to honor commitments to their contracts and avoid actions that might be taken by the Attorney General. Charitable Gift Annuities are not regulated by the Department of Insurance so I doubt that there will be any involvement from that area.

I do not have a POA from the Hartsocks at this time but I will continue to watch for it.

Blessings!
Don Leverett

**From:** Hayes, Robert [mailto:rhayes@kcm.org]
**Sent:** Thursday, August 09, 2012 5:57 PM
**To:** Don
**Cc:** Davis, Charlie
**Subject:** RE: From Don Leverett

Don,
I need to get some additional answers as we are having to take this to our CEO and he will want the answers to these questions. As we are willing to make these payments in the short-term with the understanding that you would repay these to us at a time in the future to be determined, we will need to know what time period you estimate that it will take to get back on your feet financially. Next we will need to know what the underlying investment was that these funds went into. Is it a timing issue or is it a loss issue? Finally we have at least one person that has talked about contacting the Commissioner of Insurance and or the Attorney General so we need to get our ducks in a row. We need to get the Power of Attorney for the Hartsocks. This will allow us to speak with them without concern for the planning that was done.

We appreciate your willingness to share this information and will help us to get payments out quickly. I look forward to your call at 817-805-3566 or you can e mail the information. Thank you.

*Robert R. Hayes, CRM, ARM-P, CITRMS*
**Risk Manager**

**From:** Don [mailto:dfleverett@gmail.com]
**Sent:** Thursday, August 09, 2012 8:47 AM
**To:** Hayes, Robert
**Subject:** From Don Leverett

Robert,

I updated the sheet I sent you yesterday with the ach info as well as the months for which the payments are due. Thank you for your parience.

Don

The information contained in this transmission may contain privileged and confidential information, as well as information subject to the protection of copyright and other applicable laws. It is intended only for use of those persons listed above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. Be advised that such illegal actions are governed by the Electronic Communications Privacy Act. All personal messages express solely the sender's view and not the views of the employer of the sender. If you are not the intended recipient, please contact the sender by reply email, destroy all copies of the original message, and do not disclose any of the information contained in this message. Thank you for your assistance.

**Reyna, Christina**

---

**From:** Hayes, Robert
**Sent:** Monday, August 13, 2012 4:57 PM
**To:** 'Woodie Rains'
**Cc:** Davis, Charlie
**Subject:** RE: CGA's with Funds For Life

Woodie,
I got added information from Don. They put funds into life settlements with Life Partners, Inc. in Waco Texas. Their portfolio was approximately $480,000. As ours was about $270,000 that means about $210,000 came from other areas. Funds for Life has done this for about 10 to 12 years. They had been able to borrow against these funds in the past, but are currently not being allowed to do so.

Our pool consists of 23 annuities, 12 single 12 joint annuitants. I checked on the issue of inurement. This only applies to someone who has owner ship in your ministry or can influence financial decisions on the purchase of certain assets. None of our partners would fall in this category. I am drawing up a document to be executed for the repayment and we will be starting to make payment to them hopefully beginning in September.

Let me know if you have other questions, if you know of other ministries that were involved with Funds for Life on Charitable Gift Annuities and we can talk further.

*Robert R. Hayes, CRM, ARM-P, CITRMS*
**Risk Manager**

**From:** Woodie Rains [mailto:WRains@vom-usa.org]
**Sent:** Wednesday, August 08, 2012 3:34 PM
**To:** Hayes, Robert
**Subject:** RE: CGA's with Funds For Life

Thank you, Robert, for taking my call and the good conversation we had. As I mentioned, I am going to be away until next Monday, so I am pushing to get out at a decent hour today. So, I may be missing something in this email that I should include.

First, we are concerned for the annuitants and want to get to them the funds they are due. Be it a loan, assuming the contracts, or just sending the money. However, we have to be concerned about the shifting of liability from FFL to VOM without careful legal consideration. We do not wish to have any payments be construed as "private inurement" by the IRS, and we also do not wish to cause undue tax consequences for the annuitants.

Secondly, we want to be prudent concerning the financial condition of FFL. We do not know anything about their financial condition except what we been told recently. We would like to have audited financial statements from FFL, but we have not received that information as requested.

I will continue to keep in touch with you as we go forward. Hopefully, by sharing information we can work toward and achieve a common goal.

Best regards,

Woodie Rains
Vice President for Financial Operations

**From:** Hayes, Robert [mailto:rhayes@kcm.org]
**Sent:** Wednesday, August 08, 2012 2:58 PM
**To:** Woodie Rains
**Subject:** CGA's with Funds For Life

Woodie,
Thank you for your call. I will research this and get back to you. Please send me your questions and We will respond.

*Robert R. Hayes, CRM, ARM-P, CITRMS*
**Risk Manager**

The information contained in this transmission may contain privileged and confidential information, as well as information subject to the protection of copyright and other applicable laws. It is intended only for use of those persons listed above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. Be advised that such illegal actions are governed by the Electronic Communications Privacy Act. All personal messages express solely the sender's view and not the views of the employer of the sender. If you are not the intended recipient, please contact the sender by reply email, destroy all copies of the original message, and do not disclose any of the information contained in this message. Thank you for your assistance.

**Assumption of Position and Financial Responsibility**

This Agreement is between Funds For Life Ministries, Inc., a Texas nonprofit corporation located at 2601 Ridgmar Plaza, Suite 10, Fort Worth, Texas 76116 ("FFLM") and its agent Don F. Leverett and Eagle Mountain International Church, Inc., a/k/a Kenneth Copeland Ministries located at 14355 Morris Dildo Road, Newark, Texas 76071-9501 ("KCM"), together the "Parties". This Agreement will cover payments delinquent from the Charitable Gift Annuity Program between the Parties, payments to be received from and control of the Life Partners, Inc. account(s) as well as liabilities and on-going duties of FFLM.

Recitals: Whereas the Parties had previously entered into that certain Contract dated September 13, 2002 for Charitable Gift Annuity and other services to be provided by FFLM (the "Contract");

Whereas the Contract provided that KCM had the right of first refusal to replace FFLM if certain conditions were not met by FFLM and the Parties do now agree that those conditions are not being met by FFLM;

Whereas KCM offered Charitable Gift Annuities in accordance with the Contract to its partners ("Annuitants" or "Annuitant"), and partners were free to participate at their discretion;

Whereas FFLM was obligated to receive principal contributions from those Annuitants, place funds into an interest bearing investment, return a periodic payment to each Annuitant per contract, pay KCM an initial payment on each account, a quarterly account balance payment on the same account, and 100% of remaining account balance if any, upon death of Annuitant, and where necessary place funds into a separate account as mandated by law;

Whereas FFLM has paid KCM the initial payment on all but one (1) Annuitant and FFLM has failed to pay any of the quarterly account balances; and whereas FFLM has not paid any remaining account balances on those three (3) accounts where an Annuitant has passed away as of the effective date of this Agreement;

Whereas FFLM has failed to meet its monthly payment obligations under this same Contract, so that from August 1, 2012 to the effective date of this Agreement approximately Twenty Three Thousand and No/100 Dollars ($23,000.00) has been paid to Annuitants representing back payments owed by FFLM to KCM as KCM performed for FFLM and brought all accounts current for all Annuitants;

Whereas FFLM has purchased Life Accounts on the Secondary Life Insurance Market with Life Partners, Inc., a subsidiary of Sterling Trust, Waco, Texas ("Life Partners") with funds collected from KCM, Voice of the Martyrs ("VOM"), and FARMS International, Inc. ("FARMS") (collectively, the "Ministries"), totaling One Million Two Hundred Eight Thousand Seven Hundred Fifty and No/100 Dollars ($1,208,750.00) ("Total"),

WAY

Whereas FFLM invested Three Hundred and One Thousand Eight Hundred Eleven and 69/100 Dollars ($301,811.69) of the Total with Life Partners and the remainder of the Total was used by FFLM to make periodic payments to these Ministries as well as other expenses. Life Partners account L09973 has a future asset value to be realized to maturity of Four Hundred Ninety One Thousand Nine Hundred Twenty Nine and 72/100 Dollars ($491,929.72) with payment of annual funds to keep investments current. Current arrangement with Life Partners is to allow annual payments to accrue. Current total is $31,570.77 in back payments due and is to be subtracted from matured amounts prior to disbursements.

Terms: Therefore, KCM has agreed to make payments to agreed list of Annuitants; and whereas KCM has checked with each annuitant, and their financial institution to make certain of payments and has determined the full amount due to each annuitant to make them whole; and whereas KCM has made certain that partners of KCM are whole and the integrity of KCM is preserved. As such KCM has made the appropriate periodic payments to the financial institution indicated by their routing number into the Annuitants' account number for a period to begin with all payments due and owing as of 8/1/2012 and continuing until maturity of all accounts per the schedule provided by FFLM. FFLM has agreed, as evidenced below, and does hereby immediately assign and turn over the financial control of Life Partners account to KCM to administer payments received from Life Partners and to make payments to VOM and FARMS in proportion to each ministry's proportion of the original Total, and

Indemnification: Life Partners will communicate to KCM and copy Don Leverett, all decisions will be that of KCM. Any liability of FFLM to Life Partners or any of the named ministries in this document will remain with FFLM and FFLM, and its directors individually, agree to fully indemnify and protect KCM, VOM and FARMS and each of its directors, officers, employees, attorneys and contractors from any and all liability, including successor organization liability, related to the original Contract as well as the individual annuity agreements with each of the Annuitants. FFLM will continue to provide to all Annuitants annual 1099 due as required by the IRS by February 1st each year for each account.

Confidentiality: The parties to this Agreement agree to keep confidential and not to disclose, publish, discuss, communicate, or comment upon the terms and conditions of this Agreement, unless required by law. This restriction shall not apply to the parties' disclosure of the terms of this Agreement to legal, tax, or financial advisors provided that the parties advise their legal, tax, or financial advisors that the terms of this Agreement are confidential and the parties agree to use their best efforts to protect against any further disclosure by such persons.

Alternative Dispute Resolution: Any claim or dispute arising from or related to this Agreement, other than a claim for injunctive relief as otherwise provided in this Agreement, shall be settled by mediation or arbitration in Tarrant County, Texas, in accordance with the then governing *Rules of Procedure for Christian Conciliation* of the Institute for Christian Conciliation. In the event that the Institute for Christian Conciliation ceases to exist during the course of this

DFL

Agreement, arbitration under this section shall be conducted according to the rules of the American Arbitration Association. Judgment upon an arbitration award may be entered in any court otherwise having jurisdiction. The Parties each agree to bear their own costs related to any mediation or arbitration proceeding.

Applicable Law and Venue: This Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas without regard to its conflicts of law principles, and venue shall be fixed in Tarrant County, Texas.

The purpose of this document is to record the debt FFLM owes to KCM Annuitants, shift financial control of the Life Partners Account L09973 to KCM and allow KCM to administer funds owed to it as well as VOM and FARMS proportionally. No liability of FFLM shall be accepted, shifted or levied against KCM, VOM or FARMS as detailed in this contract. The parties are of legal ability to bind themselves individually and their organizations by this writing. It is hereby agreed to and entered into this 24th day of December, 2013 ("effective date of this Agreement") as evidenced by our signatures below.

**Kenneth Copeland Ministries**

Date: 12/29/2013 By: Robert R. Hayes

Title: Risk Manager

**Funds for Life Ministries, Inc.**

Date: 12-24-2013 By: [signature]

Title: President

**Its Agent (Don F. Leverett)**

Date: ______________ By: ______________

Title: ______________

**Alan M. Jacobs, Trustee**
**Life Partners' Creditors' Trust**
c/o Jay H. Ong
Munsch Hardt Kopf & Harr, P.C.
Colorado Tower
303 Colorado Street, Suite 2600
Austin, Texas 78701-3924

To the Beneficiaries of the Life Partners' Creditors' Trust ("Creditors' Trust"):

You are receiving this letter because our records indicate that you currently hold a beneficial interest in the Creditors' Trust on account of one or more claims that you held against Life Partners, Inc. or one of its affiliates in bankruptcy.[1]

There are two purposes to this letter.

## I. REALLOCATION OF S.E.C.'S $38 MILLION CLAIM TO INVESTOR BENEFICIARIES

First, you may note that the Allocated Trust Value shown on your enclosed 2018 Trust Equity Account Statement has increased from the amount recited in your prior 2017 Trust Equity Account Statement. If so, the Creditors' Trustee wishes to specifically inform you that this increase is due to the agreement of the Securities and Exchange Commission that its allowed claim in the amount of $38.7 million, is to be reallocated among other allowed investor beneficiaries of the Creditors' Trust. The Creditors' Trust has accordingly implemented this agreed reallocation, proportionately based on each such investor beneficiary's beneficial interest percentage (relative to the aggregate interests of investor beneficiaries) in the Creditors' Trust.

This adjustment is reflected on your Statement in two ways: (1) the line item titled "Plus/(Minus): 2018 Equity Adjustment" represents the portion of the SEC's beneficial interest that is reallocated to you; and (2) the line item titled "Plus/(Minus): 2018 Ordinary income/(loss) true-up" represents a reconciliation for the amount of Creditors' Trust income/(loss) that you should have been allocated in prior years based on the new reallocation. Please note that although these two lines on your letter may include and reflect other reallocations within the Creditors' Trust, the majority reflected on this Statement will be due specifically to the SEC's reallocation.

## II. REQUEST FOR REQUIRED BENEFICIARY TAX IDENTIFICATION NUMBERS

The second purpose of this letter is to request that you complete and submit to the Creditors' Trust, a Form W-9 or W-8BEN (a form W-8BEN is generally intended to be submitted by foreign payees). If the "Tax ID Number" line item of your Statement reflects "None Provided", the Creditors' Trust does NOT have your required Tax Identification Number. If the Creditors' Trust does have your Tax Identification Number on record, it will be shown in this "Tax ID Number" line item.

Under the confirmed bankruptcy plan, Creditors' Trust beneficiaries **MUST** have a Form W-9 or W-8BEN on file with the Creditors' Trust in order to receive any distribution from the Creditors' Trust on

---

[1] Please note that the fact that you currently hold a beneficial interest in the Creditors' Trust is not a guarantee of any distributions. The Creditors' Trustee has not yet completed his administration of the Creditors' Trust, which may include objections to claims and beneficial interests, and reserves all rights to object to any claim unless he has previously, expressly agreed to its allowance. The timing and amount of any distributions from the Creditors' Trust to its beneficiaries have not yet been determined and remain subject to the uncertainties of litigation.

account of an interest in the Creditors' Trust. **PLEASE TAKE NOTE THAT** if you have not provided your Form W-9 or W-8BEN to the Creditors' Trust, the Creditors' Trust will withhold any distribution that it has otherwise scheduled to be made to you on account of your beneficial interests. Furthermore, your rights to any such distribution, as well as to your beneficial interest itself, will eventually be **ENTIRELY FORFEITED**.

If you have not provided a Form W-9 or W-8BEN to the Creditors' Trust, please complete the appropriate form and send it back to:

**If by First-Class Mail Hand-Delivery or Overnight Mail:** c/o Jay H. Ong, Munsch Hardt Kopf & Harr, P.C., whose address is shown at the top.

**If by Email:** LPCreditorsTrust@munsch.com

If the Creditors' Trust does not have your Tax Identification Number on record, a copy of a Form W-9 is provided with this letter. Additional W-9 and W-8BEN forms, including instructions to complete the forms, can be obtained from the Internal Revenue Service's website (https://www.irs.gov/forms-instructions) or by contacting the Creditors' Trust's counsel, Munsch Hardt Kopf & Harr, PC, at: LPCreditorsTrust@munsch.com, or by calling (214) 740-5135.

Sincerely,

Alan M. Jacobs, as Creditors' Trustee

UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS
Life Partners Holdings, Inc. et al., Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 4421
Beaverton, OR 97076-4421

COURT USE ONLY
UNIQUE IDENTIFICATION NUMBER: 995371920

| Name of Debtor: | Case Number: |
|---|---|
| LIFE PARTNERS, INC | 15-41995 (RFN) |

**NOTE: Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.**

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Name and address where notices should be sent:
LFP (MERGE2.DBF,SCHED_NO) SCHEDULE #: 995371920*****
BAR(23) MAILID *** 000094350909 ***
KENNETH COPELAND MINISTRIES
P.O BOX 728
NEWARK, TX 76071

817-805-3566 RHAYES@KCM,ORG
Telephone number: Email:

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:
(*If known*)
Filed on:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Your claim is scheduled by the Debtor as:

UNSECURED
UNLIQUIDATED
DISPUTED
CONTINGENT
UNDETERMINED

Name and address where payment should be sent (if different from above):

Telephone number: 817-805-3566 Email: RHAYES@KCM.ORG

COURT USE ONLY

1. **Amount of Claim as of Date Case Filed:** $ 431,609.70
If all or part of the claim is secured, complete item 4.
If all or part of the claim is entitled to priority, complete item 5.
☐ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest charges.

2. **Basis for Claim:** Assignment & Transfer of Various ownership Interests of Life Insurance Policies. Payment of 46,155.01 See Attached
(See instruction #2)

3. **Last four digits of any number by which creditor identifies debtor:** - - - -
3a. **Debtor may have scheduled account as:** 144265
(See instruction #3a)

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:**
☐ Real Estate ☐ Motor Vehicle ☒ Other
Describe: Assignment of ownership Interests

Value of Property: $ 3,974,293.00

Annual Interest Rate NA % ☐ Fixed or ☐ Variable
(when case was filed)

**Amount of arrearage and other charges, as of time case was filed, included in secured claim, if any:** $ N/A

**Basis for perfection:** Assignment of ownership

**Amount of Secured Claim:** $ 431,609.70

**Amount Unsecured:** $

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $12,475*), earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$________

**Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7 and definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

8. **Signature:** (See instruction #8) Check the appropriate box:
☐ I am the creditor. ☒ I am the creditor's authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.) ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Robert R. Hayes
Title: Risk Manager
Company: Kenneth Copeland Ministries

Robert R. Hayes
(Signature)
8/28/15
(Date)

Address, telephone number, and email (if different from notice address above):

Telephone number:
Email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
Fill in the debtor's full name, and the case number. The full list of debtors is provided under the general information section on the Claims Agent's website:

http://dm.epiq11.com/LFP

If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice. If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5, and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.)

If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

<u>If by First Class Mail:</u>

Life Partners Holdings, Inc. et al.,
Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 4421
Beaverton, OR 97076-4421

<u>If by Hand Delivery or Overnight Mail:</u>

Life Partners Holdings, Inc. et al.,
Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the Claims Agent's website (http://dm.epiq11.com/LFP) to view your filed proof of claim under "Claims."

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# Life Partners Asset List

| Name | Face Amount | % Owned | $ Equivalent | Company | Policy # |
|---|---|---|---|---|---|
| Allen | $ 50,000 | 68.7096% | $ 34,354.80 | Allstate Life Ins Co | 64403225 |
| Anderson | $ 1,000,000 | 0.2480% | $ 2,480.00 | New York Life Ins Co | 62772548 |
| Antoneli | $ 48,300 | 3.6344% | $ 1,755.42 | Primerica Life Ins Co | 0421965972 |
| Cabrrera | $ 22,000 | 100.0000% | $ 22,000.00 | Metropolatan Life Ins Co | 203086213M |
| Carmichael | $ 50,000 | 5.0406% | $ 2,520.30 | American Family Life Ins Co | 10790001 |
| Cunaccia | $ 95,000 | 38.0560% | $ 36,153.20 | First Great West Life & Annuity Co | Y280319 |
| Evans | $ 50,000 | 29.9645% | $ 14,982.25 | Unum Life Ins Co of America | 930741-0001 |
| Fleming | $ 74,684 | 5.0395% | $ 3,763.70 | Sun Life Assur Co of Canada | R544712-0 |
| Goldstein | $ 100,000 | 26.4891% | $ 26,489.10 | Harleysville Life Ins Co | 112835 |
| Grainger | $ 400,000 | 0.9750% | $ 3,900.00 | Metropolatan Life Ins Co | 91017 |
| Guernsey | $ 200,000 | 1.2908% | $ 2,581.60 | New York Life Ins Co | 38314254 |
| Haven | $ 300,000 | 0.5199% | $ 1,559.70 | United States Life Ins in city of NY | G-195-182 |
| Hovey | $ 169,000 | 3.4027% | $ 5,750.56 | Conn General Life Ins Co | M102600 |
| Martinez | $ 42,000 | 5.9056% | $ 2,480.35 | Hartford Life Ins Co | LL1545632 |
| Mayrer | $ 125,000 | 14.8463% | $ 18,557.88 | Metropolatan Life Ins Co | 202397371A |
| Neil | $ 50,000 | 34.1423% | $ 17,071.15 | Fidelity &Guarantee Life Ins Co | 01137327 |
| Oconner | $ 38,000 | 6.4600% | $ 2,454.80 | Jackson National Life Ins Co | 82059418 |
| Oconnor | $ 38,000 | 10.2700% | $ 3,902.60 | Jackson National Life Ins Co | 82059418 |
| Padilla | $ 50,000 | 25.8064% | $ 12,903.20 | Prudential Life Ins Co of America | 67107186 |
| Saulsbury | $ 58,000 | 100.0000% | $ 58,000.00 | Conn General Life Ins Co | M102880 |
| Scheck Jr | $ 117,000 | 57.2649% | $ 66,999.93 | Principal Life Ins Co | GUL4957201686 |
| Singleton | $ 319,000 | 5.8732% | $ 18,735.51 | Fegli | 1235 |
| Soto | $ 140,000 | 0.5211% | $ 729.54 | Transamerica Life Ins Co | JXP4091763 |
| Voyten | $ 100,000 | 54.5454% | $ 54,545.40 | Unum Life Ins Co of America | 02039960014 |
| Walsh | $ 161,000 | 5.4830% | $ 8,827.63 | Jackson National Life Ins Co | ULCI000024 |
| Whitson | $ 102,309 | 6.1100% | $ 6,251.08 | Metropolatan Life Ins Co | 855248179UL |
| Wright | $ 75,000 | 2.4800% | $ 1,860.00 | Fegli | 5548 |
| Projected Balance | $ 3,974,293.00 | | $ 431,609.70 | | |

# LIFE PARTNERS®

P.O.Box 20034 . Waco, Texas 767 02 phone: 800 -368-5569 fax: 254 -751-1025 e-mail: dcarr@lifepartnersinc.com
Licensee No: 144265

## POLICY FUNDING AGREEMENT - SUBSEQUENT TRANSFER

THIS AGREEMENT is made on 19th of March 2014, by and between LIFE PARTNERS, INC. (referred to as "Agent") and the undersigned Kenneth Copeland Ministries (hereinafter "Transferee"). All capitalized terms not expressly herein defined shall have the meaning given them in the Agency Agreement and Special Power of Attorney previously entered into between the parties hereto.

**WHEREAS** Agent and Transferee have entered into an Agency Agreement and Special Power of Attorney whereby Agent is appointed as the Transferee's agent for the purpose of facilitating the purchase life settlement policies; and

**WHEREAS** Agent is a company principally engaged in the identification, qualification, and purchaser of life settlement policies; and

**WHEREAS** Transferee is the transferee and/or successor in interested of one or more life settlement policies previously purchased by another purchaser through Agent; and

**WHEREAS** both parties understand and agree that their relationship is one of principal and agent does not in any way constitute the sale of a security;

**NOW THEREFORE,** in consideration of the mutual coveriants herein, the parties agree as follows:

### I. POLICY INTEREST TRANSFERRED

1.01. The TRANSFEREE is the transferee/successor in the interest of a 68.709600% ownership interest in the following life settlement policy:

| | |
|---|---|
| INSURED: | Allen |
| DEATH BENEFIT: | $50,000.00 USD |
| POLICY NUMBER: | 64403225 |
| INSURANCE CO: | Allstate Life Insurance Company |

1.02. This executed agreement should be sent to Agent. Agent, in turn, shall execute and forward a copy of this agreement along with any other necessary documents to the Escrow Agent.

### II. DUTIES OF LPI

2.01. Agent shall perform the following duties:

a. forward the Policy Funding Agreement and other necessary documents to the Escrow Agent in accordance with Section 1.02 of this agreement; and

b. update its records to reflect Transferee as the transferee/successor in interest of the above referenced life settlement policy interest and prepare and maintain a confidential Transferee's file containing all data and documents pertaining to the Transferee's acquisition of said life settlement policy.

### III. AGENT FEES AND OTHER NON-FEE COSTS

3.01. Escrow Agent's fees for its services provided in changing the ownership of this account to Transferee shall be $100.00. **Transferee may also be required to pay fees assessed for subsequent transaction changes requested by Transferee. Furthermore, Transferee understands that a portion of the Acquisition Cost paid by the Transferor for this life settlement policy interest was deposited in the Premium Escrow Account with the Escrow Agent to be used to premiums on the life settlement policy. Transferee recognizes that he/she may be required to contribute additional amounts to the Premium Escrow Account in the event the amount retained for payment of premiums is, or already has been, exhausted. In the event Transferee fails or refuses to make such contributions if and when required to do so, it is specifically agreed and acknowledged by the parties that Transferee will be deemed to have abandoned all of Transferee's interest in and**

©Copyright 1991-2008 Life Partners, Inc. - All Rights Reserved

**to the life settlement policy referred to in this agreement and all Transferee's interest in said life settlement policy may be offered to any other person in exchange for payment of the outstanding premium contribution amount.** After this transfer of interest is completed, Agent shall have no further specific duties to the Transferee, but Agent shall use commercially reasonable efforts to assist Transferee, if requested.

## IV. CONFIDENTIALITY

4.01. Transferee herby agrees to keep confidential all medical, identifying, and insurance information received in connection with the transfer of this life settlement policy, as set forth in the Agency Agreement and Special Power of Attorney.

## V. CONFIDENTIALITY

5.01. This agreement is further subject to the following provisions:

a. This agreement shall be construed under the laws of Texas.

b. This agreement is binding upon the successors and assigns of the parties hereto.

c. Any monies exchanged under this agreement shall not be deemed valid until funds are collected.

d. Each party hereby represents that it or its representative has the requisite authority to enter into this agreement.

e. **Transferee understands and agrees that the life settlement policy interest transferred herein is of a "buy and hold" nature, that there is no guaranteed liquidity for this life settlement policy interest and that Agent offers no buy-back guarantee or assurance that Transferee will be able to sell the life settlement policy interest at a date prior to the maturity of the life settlement policy or that Transferee will be able to receive any set amount in the event of such a sale.**

f. **Transferee understands and agrees that Transferee has no acquired the right to receive a specific amount of funds in the future, but owns the right to receive a discrete percentage of any and all proceeds paid under the terms of the above-referenced life settlement policy. Transferee further understands and agrees that any gain realized from this investment is based on the proceeds paid from the above-referenced life settlement policy and that Agent has no guaranteed any of the following: a specific return on investment, a specific amount to be paid to Transferee, payment of proceeds by the insurance carrier, or a specific date of death of the Insured.**

g. **Transferee hereby agrees not to reveal any identifying, medical, or other confidential information to anyone about any viator, life settler, or insured which Transferee may learn under this agreement, except as necessary to enforce this agreement. Transferee further acknowledges that, pursuant to the regulations regarding life settlements, only Agent may contact any viator, life settlor, or insured to determine health status and Transferee agrees not to contact any viator, life settlor, or insured unless Transferee registers with the appropriate Department of Insurance as a life settlement company. Transferee further acknowledges that unauthorized contact with a viator, life settlor, or insured may be a violation of applicable law.**

IN WITNESS WHEREOF, the parties hereto have executed this agreement as of the date first written above.

**TRANSFEREE**

Robert R. Hayes

Robert R. Hayes C/O Kenneth Copeland Ministries

printed or typed name

**ADDITIONAL TRANSFEREE SIGNATURE (IF APPLICABLE)**

______________________________

______________________________

printed or typed name

**LIFE PARTNERS, INC.**

______________________________

Corporate Officer

©Copyright 1991-2008 Life Partners, Inc. - All Rights Reserved

Address any reply to: 1600 Patterson St., Dallas, Tex. 75201

**Department of the Treasury**

District Director

**Internal Revenue Service**

Date: SEP 11 1970

In reply refer to: A:EO:BJS:157 DAL-EO-70-289

Kenneth Copeland Evangelistic
Association, Inc.
1500 Sinclair Building
Fort Worth, Texas 76102

Form 990-A Required: ☒ Yes ☐ No

Accounting Period: December 31

Gentlemen:

Based on information supplied, and assuming your operations will be as stated in your exemption application, we have determined that you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code. Any change in your purposes, character, or method of operation must be reported to us so we may consider the effect of the change on your exempt status. You must also report any change in your name and address.

We have further determined that you are not a private foundation within the meaning of section 509(a) of the Code because you are an organization described in section 509(a)(1).

If filing is required, you must file an annual information return, Form 990-A, by the fifteenth day of the fifth month after the end of your annual accounting period.

You are not required to file Federal income tax returns unless you are subject to the tax on unrelated business income under section 511 of the Code. If you are subject to this tax, you must file an income tax return on Form 990-T. In this letter we are not determining whether any of your present or proposed activities is unrelated trade or business as defined in section 513 of the Code.

Contributions made to you are deductible by donors as provided in section 170 of the Code. Bequests, legacies, devises, transfers or gifts to or for your use are deductible for Federal estate and gift tax purposes under the provisions of section 2055, 2106 and 2522 of the Code.

You are not liable for Federal Unemployment Taxes. You are liable for social security taxes only if you have filed waiver of exemption certificates as provided in the Federal Insurance Contributions Act.

Sincerely yours,

Ellis Campbell, Jr.

Ellis Campbell, Jr.
District Director

SWR AUD - 2096 (8-70)

**TEXAS SECRETARY of STATE**
**JANE NELSON**

**BUSINESS ORGANIZATIONS INQUIRY - VIEW ENTITY**

| | | | |
|---|---|---|---|
| **Filing Number:** | 24727601 | **Entity Type:** | Domestic Nonprofit Corporation |
| **Original Date of Filing:** | May 23, 1968 | **Entity Status:** | In existence |
| **Formation Date:** | N/A | **Non-Profit Type:** | N/A |
| **Tax ID:** | 17513008312 | **FEIN:** | |
| **Duration:** | Perpetual | | |

**Name:** EAGLE MOUNTAIN INTERNATIONAL CHURCH, INC.
**Address:** PO BOX 728
Newark, TX 76071-0728 USA

REGISTERED AGENT | FILING HISTORY | NAMES | MANAGEMENT | ASSUMED NAMES | ASSOCIATED ENTITIES | INITIAL ADDRESS

| Name | Address | Inactive Date |
|---|---|---|
| Jan Harbour | 14355 Morris Dido Rd<br>Newark, TX 76071-9501 USA | |

Order | Return to Search

Instructions:
- To place an order for additional information about a filing press the 'Order' button.

*Endorsements / Mentions Spéciales / Anotaciones*
If your passport expires within six months of your date of departure you may be denied entry into some countries



SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

PASSPORT
PASSEPORT / PASAPORTE

THE UNITED STATES OF AMERICA

USA



Type/Type/Tipo: P
Code/Code/Código: USA
Passport No./No. du Passeport/No. de Pasaporte: A21701342

Surname/Nom/Apellidos
HARBOUR
Given names/Prénoms/Nombres
JAN ELIZABETH
Nationality/Nationalité/Nacionalidad
UNITED STATES OF AMERICA
Date of birth/Date de naissance/Fecha de nacimiento
17 OCT 1956
Sex/Sexe/Sexo
F
Place of birth/Lieu de naissance/Lugar de nacimiento
ARKANSAS, U.S.A.
Date of issue/Date de délivrance/Fecha de expedición
06 JUL 2023
Date of expiration/Date d'expiration/Fecha de caducidad
05 JUL 2033
Authority/Autorité/Autoridad
UNITED STATES DEPARTMENT OF STATE



P<USAHARBOUR<<JAN<ELIZABETH<<<<<<<<<<<<<<<<<
A217013422USA5610174F3307054742551515<871632