# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

In Re:

Life Partner Holdings, Inc.         §
                                    §      Case No.:   **15-40289**
                                    §
Debtor(s)                           §
                                    §      **FILED**
                                    §
                                    §      SEP 0 3 2024

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

## APPLICATION FOR PAYMENT OF UNCLAIMED FUNDS

Comes now the undersigned, to make application for an order directing payment of unclaimed funds now on deposit in the Treasury of the United States. Claimant is a ✓ creditor_____ debtor (check one) in the above captioned bankruptcy case and on whose behalf these funds were deposited.

| | | |
|---|---|---|
| 1. | **Name of Claimant(s)** | Premium-Refunds LLC, Assignee Janice Elaine Crocker |
| 2. | **Name and Title of Authorizing Officer or Representative** (*If Claimant is an individual, skip to Question No. 3*) | Debashish Roy, President, Premium-Refunds LLC |
| 3. | **Current Mailing Address** | 950 Herrington Road, Suite C-220, Lawrenceville, GA 30044 |
| 4. | **Telephone Number** | 404-975-5225 |
| 5. | **SS#** *(last 4 digits only)* **or EIN #** | 88-4015783 |
| 6. | **Amount Being Claimed** | $50,750.00 |

I, _____Debashish Roy_____,do hereby state under penalty of perjury that I am  legally entitled to claim these funds for whom the unclaimed funds were deposited into the treasury in the above referenced bankruptcy case. I certify to the best of my  knowledge that all information submitted in support of this claim is true and correct.

Date 08/30/2024

_____        _____n/a_____
Claimant Signature              Co-Claimant Signature

Subscribed and Sworn to Before Me this 21st day of August 2024.

_____Heman Patel_____
Notary Public
In and for the State of Georgia

My commission expires 08/02/2028

HEMAN PATEL
My Commission Expires
NOTARY
PUBLIC
08/02/2028
GWINNETT COUNTY, GEORGIA

## CERTIFICATE OF SERVICE

In accordance with 28 U.S.C. § 2042, the undersigned hereby certifies that on the date designated below, a true and correct copy of the foregoing application with all required attachments was mailed to:

Office of the United States Attorney
Attn: Unclaimed Funds
1100 Commerce Street, 3rd Floor
Dallas, TX 75242

Date: _____8|8|24_____

Claimant's Signature _____



USA

**Georgia**

GOVERNOR *Nathan Deal*

070870

COMMISSIONER *Spencer R. Moore*

## DRIVER'S LICENSE

DL NO. **051016366**    DOB **07/08/1970**
CLASS **C**    EXP **07/08/2025**
**DEBASHISH ROY**

**436 MUSICAL WAY
LAWRENCEVILLE, GA 30044-7453
GWINNETT**
Restrictions **A**    End **NONE**
Iss **03/29/2017**

Sex **M**    Eyes **BRO**
Hgt **5'-08"**    Wgt **165 lb**

DD **303317648140041970**

**PLEASE NOTE THIS IS A FORM AGREEMENT PLEASE CONSULT WITH LOCAL COUNSEL ON APPLICABLE STATE AND REGULATIONS**

**LIMITED POWER OF ATTORNEY**

I, **JANICE ELAINE CROCKER** , hereby appoint PREMIUM - REFUNDS LLC to act in my place for the purposes of claiming monies in my name.

This Power of Attorney takes effect _7/13/24_ and shall continue until terminated in writing or until 180 days , whichever comes first. In the event of my incapacity or death, this Power of Attorney shall terminate immediately.

I grant said attorney in fact and Agent, full authority and power to exercise or perform any act, power, duty, right or obligation whatsoever that I now have or may hereafter acquire, relating to the Assets as fully as I might or could do if personally present, including but not limited to any request by the Company as my Agent or the Company's Attorney-at-Law to the then holder of the Assets for the direct transmission to and receipt of the Assets paid to the Company and later disbursement to me in accordance with the outstanding Agreement between the Agent and me. Attorney-in-fact full authority to act in any manner both proper and necessary to exercise of the foregoing powers, and I ratify every act that my attorney-in fact may lawfully perform in exercising those powers.

I, **JANICE ELAINE CROCKER** authorize PREMIUM - REFUNDS LLC to claim $ **50,750.00** located in US Bankruptcy Court Northern District of Texas  Court Case # 15-40289  LIFE PARTNER HOLDINGS INC

IN WITNESS WHEREOF, I have signed this Power of Attorney this _13th_ day of _July_ , 20_24_, and I direct that photographic copies of this Limited Power of Attorney be made, which shall have the same force and effect as an original.

Signed this _13th_ day of _July_ . 20_24_.

_____
Client

SUBSCRIBED AND SWORN TO BEFORE ME this _13th_ day of _July_ , 20_24_ .

County of _Dallas_
State of _Texas_

_____
Notary Public

Date of Commission Expires:
_11-04-2026_

CASEY PARKER
Notary Public, State of Texas
Comm. Expires 11-04-2026
Notary ID 134050836



## ASSIGNMENT OF RIGHTS TO FOUND MONIES

For valuable consideration, the receipt and sufficiency of which is hereby acknowledged, **JANICE ELAINE CROCKER**   ("Assignor") and , hereby assigns to **Premium-Refunds LLC**, ("Assignee"), all rights, title and interest to all of the monies (the "Monies") currently held by a government agency, and which Assignor could claim on his or her own, or with Assignee's assistance.

Assignor understands that Assignee is willing to work with Assignor on a contingent basis – meaning Assignee would apply for the Monies and pay all costs involved in pursuing said Monies. If Assignee succeeded in getting the Monies Assignee would then be reimbursed its costs and receive **10%** of the Monies recovered.  Assignor would receive **_90 %_** of the Monies recovered. If no Monies were recovered, unless due to the fault of the Assignor, then Assignee would absorb all costs and Assignor would owe nothing to Assignee.

Assignor prefers instead of working with Assignee on a contingent basis to receive **$ 0.00 **(the "Assignment Fee") now, up front, in exchange for all rights to the Monies.

Assignor understands the approximate amount of the Monies that may be recovered are: **$50, 750.00 ** ("Claimable Funds").

**Representations and Responsibilities of Assignor:**
a) Assignor represents that to the best of their knowledge: they have not assigned or sold the claim being assigned via this assignment to any person, company or organization; and they have not hired anyone or any company to claim the monies being assigned herein for them or on their behalf.

b) In the event Assignor becomes aware through this transfer process or later that they have already assigned rights to the Monies involved in this agreement or have hired a company, organization or individual to claim the Monies, Assignor will immediately notify the Assignee in writing and offer the Assignee an opportunity to cancel this Assignment and receive any monies paid under this agreement back.

c) Assignor agrees not to attempt to assign part or all of the right to claim Monies being transferred under this agreement to any person, company or organization in the future.

d) Assignor agrees in the future not to hire anyone to process a claim for the Monies on their behalf.

e) Assignor agrees to cooperate with future requests to fill in forms or sign papers if needed for Assignee to process the claim as needed.

If Assignor does attempt to assign their claim to another party or hires another person, company or organization to make a claim on their behalf, or does not cooperate with future requests to fill in forms or sign papers to enable Assignee to process a claim for the Monies then Assignor is in breach of this agreement and agrees to reimburse Assignee for the full amount of Claimable Funds.  Assignor agrees to waive any arguments that a claim would have ultimately been unsuccessful.

Assignor has had the opportunity to consult with any attorney or person of their choice prior to executing this Assignment.

Assignor recognizes that, although all claims are not successful, if their claim was successful, they would likely receive much more money through a contingent arrangement than by assigning the claim.

Assignor recognizes that under this assignment: they will receive money now, up front; regardless of whether Assignee is successful in making a claim for funds the Assignor will not need to return the Assignment Fee if the claim fails.

Assignor will hold harmless, protect, and indemnify the Government Agency holding the Monies and each of its employees from all claims Assignor could make against any Government agency, department or entity that may arise from the Government Agency paying out funds to the Assignee or otherwise working with the Assignee.

Assignor herein names Assignee, for the purpose of processing a claim for the Monies (hiring an attorney paid for out of Monies recovered, submitting the claim, resolving any issues, receiving and cashing the check(s), disbursing checks to the appropriate parties, etc.), as his/her/its Attorney-in-Fact.

This assignment is binding on all heirs, successors in interest, and assigns. Assignor declares under penalty of perjury and under the laws of the state where this Assignment is executed that the foregoing is true and correct to the best of my knowledge.

Dated this _13th_ day of _July_ , 20_24_

_____        _(214) 733-4098_____
Signature                                                      Phone

_Janice Crocker_____             _1411 S. Montreal Ave_____
Printed Name                                           Address

                                                             _Dallas      Tx      75208_
                                                              City           State          Zip

State of _Texas_____    )
                                                   : ss.

County of _Dallas_____                 )

      I, the undersigned Notary Public in and for the State of _Texas_____,
hereby certify that on the _13th_ day of _July_____, 20_24_, personally appeared
before me _Janice Elaine Crocker_, to me known to be the individual(s) described
in and who executed the within instrument, and acknowledged that he signed the
same as his free and voluntary act and deed, for the uses and purposes therein
mentioned.

                Signed _____

     Notary Public in and for the State of _Texas_____

             residing at _5020 Heatherglen Ter   Ft Worth, TX 76179_

        My commission expires _11-04-2026_____



**CASEY PARKER**
Notary Public, State of Texas
Comm. Expires 11-04-2026
Notary ID 134050836

## Usage Notes

This form is for use when the claimant does not want to hire you on a contingent fee basis. But would rather receive a small amount of money up front in exchange for an assignment of the entire claim. In our view the amount that should be paid for a claim is much smaller than what someone would receive as a contingent fee.

We would want to pay 5% of the claim amount for an assignment because you are taking risk of a claim not working out, putting out money up-front that will be lost if the claim fails, and you are putting out money now that will not come back until a successful claim is made which could be months later.

Treat this form as the fee agreement. It essentially replaces the fee agreement but everything else is the same in a sign up. Meaning use the full forms package-meaning have the claimant sign the Letter of Direction, Power of Attorney, County Claim form and all other documents used in a standard sign up. The only document you don't need is the Fee Agreement.

Make sure the Notary has this Assignment signed and put away in their briefcase before showing the rest of the claiming paperwork to the claimant. Because once they see the rest of the paperwork they will know where the money is and might not cooperate by signing this Assignment or a fee agreement.

### Special Notes for Estates.
If you are dealing with an Estate the only one who can assign the claim is the Executor, Administrator or Personal Representative. If no estate was opened then you will need to open one, have someone appointed as Executor, Administrator or Personal Representative and then they can Assign the claim in their capacity as Executor, Administrator or Personal Representative.

Use the Pre-Estate Agreement if you need to open an estate first. Once you have a duly appointed Executor, Administrator or Personal Representative then they can sign this Assignment on behalf of the estate, or they can sign on a contingent fee basis.

### Special Notes for Incompetent Folks (where they have or need a guardian)
If you are dealing with a situation with a legal incompetent person (i.e. they are disabled, suffering from Alzheimer's, under age to enter into a contract) then the only one who can assign the claim is a court-appointed Guardian. If no Guardian has been appointed, then you will need to coordinate that and have someone appointed as Guardian. Then they can Assign the claim in their capacity as Guardian.

Use the Pre-Estate Agreement if you need to have a Guardian appointed to be able to get this assignment. Once you have a duly appointed Guardian then they can sign this Assignment on behalf of the incompetent person, or they can sign on a contingent fee basis on behalf of the incompetent person.

DocuSign Envelope ID: E39F2DAB-FA43-4446-8E78-BC4F76306E27



### LOST PROPERTY AUDIT & BENEFICIARY LOCATOR SERVICE
### FEE AGREEMENT

This Agreement ("Agreement") is by and between **Janice Elaine Crocker** ("Claimant") and **Premium-Refunds LLC** ("Organization") and is effective when signed by Claimant.

**Background**

This Agreement is made with reference to the following facts and circumstances:

Organization is in the business of locating people, heirs to estates, beneficiaries of trusts, corporations, LLCs or other legal entities who are entitled to claim money or property that Organization has located;

As a result of examining government accounts the Organization believes that Claimant directly or an estate, trust, corporation or LLC that Claimant is associated with is eligible to claim approximately **$50,750.00** (the "Monies") which is a total from one or multiple accounts held by a government agency or agencies;

Estates, trusts, corporations, LLCs or other legal entities that a Claimant is associated with are referred to herein as "Associated Entity"; and

Claimant wishes for Organization to verify that Monies are due to Claimant or an Associated Entity and for Organization to then go and get those Monies for Claimant in exchange for Organization receiving a portion of the monies recovered.

### 1. Claimant and Organization agree as follows:

a) Organization will advance all reasonable and necessary costs (to be reimbursed to Organization from Monies recovered if Monies are recovered);

R18 Copyright MMXIX

DocuSign Envelope ID: E39F2DAB-FA43-4446-8E78-BC4F76306E27

b) Organization will perform all duties reasonably necessary to obtain the Monies;

c) Organization agrees to provide all forms and documents required to process the claim for the Monies;

d) Claimant authorizes Organization to act as its exclusive agent to process a claim for the Monies and agrees not to work with any other person or organization to claim the Monies or to attempt to claim the Monies on Claimant's own;

e) Claimant agrees that Organization may hire an attorney or law firm(s) of Organizations choosing to perform and manage the claiming process;

f) Claimant agrees to <u>sign and return all documents needed to claim the Monies to Organization within three (3) business days of request to Claimant;</u>

g) After a successful claim, when monies are received, Claimant shall be promptly notified, provided a copy of the check or other form of payment received and an accounting for any expenses and fees.  In turn Claimant shall provide written confirmation of Claimant's agreement on the proposed distribution of the monies received, confirm how to make out the check and where to send the payment;

h) Claimant agrees to provide a confirmation or objection to the proposed distribution noted in paragraph "g" above <u>within three (3) business days of receipt</u>.  If confirmation or objection is not received within those three (3) business days distribution may be made according to the proposed distribution without further input from Claimant; and

i) All parties agree to cooperate fully with all reasonable requests from the other in performance of this Agreement.

**2. COMPENSATION:**
a) *Claimant and Organization agree that payment to Organization is contingent upon Organization actually recovering the Monies. If no Monies are recovered for any reason other than the Claimant breaching this Agreement or another agreement with Organization, then all parties to this Agreement are released of their duties and obligations under this Agreement.  Claimant will have no obligation whatsoever to pay the Organization.  In such event Organization will absorb all costs advanced.*

b) Competing claims to the Monies may be made by third parties.  Should Organization and Claimant receive an offer to settle the claim for less

R18 Copyright MMXIX

DocuSign Envelope ID: E39F2DAB-FA43-4446-8E78-BC4F76306E27

than one hundred percent (100%) of the Monies from one or more of these third parties and Organization wishes to accept the offer but Claimant declines the settlement offer, Claimant shall owe to Organization a sum equal to the amount due Organization as if the offer was accepted.  Such payment shall be in accordance with payment under section No. 3 below, Non-Circumvention.

c) Claimant and Organization agree to that Claimant shall receive **90** % of any Monies recovered and that Organization shall receive **10** % of any Monies recovered as a compensation for Organization's work.  In addition, Organization shall receive reimbursement for expenses ("Expenses") actually incurred to third parties in recovering Monies – including but not limited to overnight mail/delivery service charges, notary fees, postage, counsel fees and costs if an Attorney is retained to recover the Monies and other reasonable and ordinary expenses determined at Organizations sole and absolute discretion.

d) Under no circumstances is Claimant responsible for paying any of Expenses unless and until Monies are recovered in which case the Expenses shall be deducted from the total Monies received and then the Organization shall receive a percentage of the Monies net of Expenses.  For example, if $10,200 was recovered with Expenses $200, and the Organization was to be paid 45% of the Monies recovered, then the Organization would receive $4,500.  The calculations are as follows: $10,200 - $200 = $10,000 net to distribute.  $10,000 X 55% = $5,500 to Claimant, and $10,000 X 45% = $4,500 to Organization.

e) For clarification, Organization is ONLY entitled to a percentage of the Monies that are actually collected and ONLY reimbursed for Expenses if money is recovered.

## 3. NON-CIRCUMVENTION:

a) Claimant understands that during the process of working with the Organization the Claimant may learn where the Monies are located. Claimant agrees that he/she/they will not attempt to circumvent the Organization by making the claim without the Organization's involvement.  Claimant acknowledges and agrees that much of the Organization's effort is already expended by the time the Claimant hears from the Organization.  Prior to reaching out to the Claimant, Organization has checked government accounts to verify that Monies are being held, used investigative resources to locate the Claimant and then reached out to Claimant.  The claiming process is only a portion of the overall work and is not indicative of much of the value brought by the Organization which is auditing government held accounts then doing the investigative work to locate the Claimant, then reaching out to Claimant.

R18 Copyright MMXIX

DocuSign Envelope ID: E39F2DAB-FA43-4446-8E78-BC4F76306E27

b) In the event the Claimant does attempt to circumvent the Organization, Claimant agrees that as soon as Claimant starts to work on recovering the money independent of the Organization that Claimant shall immediately pay the agreed upon percentage of the claim amount listed in the government account to the Organization and reimburse Organization for its costs.  Such payment shall be made via wire transfer within two business days of Claimant starting to work on recovering the money.

c) If Claimant does not pay within two business days Claimant agrees to pay all costs incurred by Organization in enforcing this Agreement including Organization's attorneys' fees, legal costs, collection fees, and all other expenses incurred by the Organization in enforcing its rights to payment of its portion of the claim.  In addition to the costs incurred by the Organization the Claimant agrees to pay interest on all monies due the Organization at the lesser of the legally permitted rate or twelve percent per annum.

## 4. CLAIMANT'S WARRANTY:

a) Claimant represents and warrants that he/she/they have the right and legal capacity to claim the Monies listed in the first paragraph of this Agreement   Claimant further represents and warrants that he/she/they have not conveyed, sold, assigned or otherwise disposed of their right to claim the Monies.  In the event Claimant does not know where the Monies are until after signing this Agreement, Claimant agrees to alert Organization within thirty minutes of learning where the Monies are if Claimant has sold, assigned or otherwise disposed of their right to claim the Monies or any right to the Monies and to immediately provide a copy of documentation showing the assignment or disposition of the Monies.

b) Claimant represents and warrants that he/she/they will not convey, sell, assign or otherwise dispose of their right to claim the Monies subsequent to entering this Agreement.

c) Any breach of the representations and warranties in this paragraph No. 4 will also constitute breach on paragraph No. 3 above (Non-Circumvention) and will obligate Claimant to pay to Organization the same sums due under that paragraph.

## 5. LIMITATION OF LIABILITY:

In no event shall liability exceed the amount actually paid by Claimant to Organization on account of fees or costs. Claimant agrees Organization will not be liable for any alleged loss of monies that could have been claimed, business, direct or indirect damages, consequential or punitive damages, attorneys' fees and/or any other claims in excess of payments actually paid

R18 Copyright MMXIX

DocuSign Envelope ID: E39F2DAB-FA43-4446-8E78-BC4F76306E27

by Claimant to Organization. Claimant is responsible for compliance with all state & local statutes, laws, and regulations. Claimant agrees to indemnify and hold Organization harmless from all claims arising from work performed under this Agreement.

## 6. MISCELLANEOUS PROVISIONS:

*a) Counterparts and Facsimile Transmission* – This Agreement may be signed in counterparts. A signed copy of this Agreement received by fax, scan, hard copy or email shall be deemed an original.

*b) Governing Law, Venue, and Relief* – This Agreement shall be governed under the laws of the State of **Georgia** which is where Organization has its office.  In the event a dispute arises by either party the venue shall be in the County Courts in the County in which the Organization has its office. The prevailing party shall be entitled to reasonable attorney's fees and other relief awarded by the Court.

*c) Binding* – This Agreement is binding upon all heirs, successors in interest, and assigns.

*d) Signor Represents they Have Authority to Sign this Agreement* – If this Agreement is being signed on behalf of an Estate, LLC, Corporation, Trust, LP, or other non-natural entity (jointly "Non-Natural Party") the signatories hereto represent that they are authorized to sign this Agreement and have obtained any and all authority needed to sign this Agreement on behalf of the Non-Natural Party for whom they are signing this Agreement.

By signing below Claimant agrees to hire Company to claim the Monies under the terms of this Agreement.

_____          (214) 733-4098
Claimant's Signature                         Phone

Janice Crocker                                  N/A
_____          _____
Print Claimant's Name                        Fax

Date:


## CLAIMANT 2


R18 Copyright MMXIX

DocuSign Envelope ID: E39F2DAB-FA43-4446-8E78-BC4F76306E27

_____          _____
Claimant's Signature                              Phone

_____          _____
Print Claimant's Name                            Fax

Date: **<u>\<CLAIMANT 2 WRITES DATE THEY SIGN HERE\></u>**

R18 Copyright MMXIX

# CERTIFICATION OF VITAL RECORD

## CITY OF DALLAS

TEXAS DEPARTMENT OF STATE HEALTH SERVICES - VITAL STATISTICS
Apr 29 2021

| STATE OF TEXAS | CERTIFICATE OF DEATH | STATE FILE NUMBER 142-21-086140 |
|---|---|---|

| 1. LEGAL NAME OF DECEASED (Include AKA's, if any) (First, Middle, Last) | (Before Marriage) RIVES | 2. DATE OF DEATH - ACTUAL OR PRESUMED (mm-dd-yyyy) APRIL 5, 2021 |
|---|---|---|

ROBIN ANN TUCKER

| 3. SEX FEMALE | 4. DATE OF BIRTH (mm-dd-yyyy) JANUARY 2, 1943 | 5. AGE-Last Birthday (Years) 78 | IF UNDER 1 YR Mo Days | IF UNDER 1 DAY Hours Min | 6. BIRTHPLACE (City & State or Foreign Country) SHREVEPORT, LA |
|---|---|---|---|---|---|

| 7. SOCIAL SECURITY NUMBER 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 | 8. MARITAL STATUS AT TIME OF DEATH ☐ Married ☒ Widowed (and not remarried) ☐ Divorced (and not remarried) ☐ Never Married ☐ Unknown | 9. SURVIVING SPOUSE'S NAME (If spouse, give name prior to first marriage) |
|---|---|---|

| 10a. RESIDENCE STREET ADDRESS 816 CHERRYWOOD COURT | 10b. APT. NO. | 10c. CITY OR TOWN MESQUITE |
|---|---|---|

| 10d. COUNTY DALLAS | 10e. STATE TEXAS | 10f. ZIP CODE 75149 | 10g. INSIDE CITY LIMITS? ☒ Yes ☐ No |
|---|---|---|---|

| 11. FATHER/PARENT 2 NAME PRIOR TO FIRST MARRIAGE THOMAS MURRAY RIVES | 12. MOTHER/PARENT 1 NAME PRIOR TO FIRST MARRIAGE NORMA JUNE PIERCE |
|---|---|

**13. PLACE OF DEATH (CHECK ONLY ONE)**

IF DEATH OCCURRED IN A HOSPITAL: ☐ Inpatient ☐ ER/Outpatient ☐ DOA
IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: ☒ Hospice Facility ☐ Nursing Home ☐ Decedent's Home ☐ Other (Specify)

| 14. COUNTY OF DEATH DALLAS | 15. CITY/TOWN, ZIP (IF OUTSIDE CITY LIMITS, GIVE PRECINCT NO) DALLAS, 75203 | 16. FACILITY NAME (If not institution, give street address) VITAS INPATIENT HOSPICE UNIT - DALLAS |
|---|---|---|

| 17. INFORMANT'S NAME & RELATIONSHIP TO DECEASED JANICE CROCKER - DAUGHTER | 18. MAILING ADDRESS OF INFORMANT (Street and Number,City,State,Zip Code) 1411 S MONTREAL AVE, DALLAS, TX 75208 |
|---|---|

| 19. METHOD OF DISPOSITION ☐ Burial ☐ Cremation ☒ Donation ☐ Entombment ☐ Removal from state ☐ Mausoleum ☐ Other (Specify) | 20. SIGNATURE AND LICENSE NUMBER OF FUNERAL DIRECTOR OR PERSON ACTING AS SUCH KENNARD THOMAS,BY ELECTRONIC SIGNATURE - 115375 | 21. ☒ Unknown Section Block Lot Space |
|---|---|---|

| 22. PLACE OF DISPOSITION (Name of cemetery, crematory, other place) UT SOUTHWESTERN MEDICAL SCHOOL | 23. LOCATION (City/Town, and State) DALLAS, TX |
|---|---|

| 24. NAME OF FUNERAL FACILITY UT SOUTHWESTERN AS FUNERAL DIRECTOR | 25. COMPLETE ADDRESS OF FUNERAL FACILITY (Street and Number, City, State, Zip Code) 5323 HARRY HINES BLVD, DALLAS, TX 75390 |
|---|---|

**26. CERTIFIER (Check only one)**

☐ Certifying physician-To the best of my knowledge, death occurred due to the cause(s) and manner stated.
☒ Medical Examiner/Justice of the Peace - On the basis of examination, and/or investigation, in my opinion, death occurred at the time,date and place, and due to the cause(s) and manner stated.

| 27. SIGNATURE OF CERTIFIER IRENE PRATHER , BY ELECTRONIC SIGNATURE | 28. DATE CERTIFIED (mm-dd-yyyy) APRIL 7, 2021 | 29. LICENSE NUMBER F4587 | 30. TIME OF DEATH(Actual or presumed) 05:30 PM |
|---|---|---|---|

| 31. PRINTED NAME, ADDRESS OF CERTIFIER (Street and Number, City, State, Zip Code) IRENE PRATHER 8585 N. STEMMONS FWY., SUITE 700 S, DALLAS, TX 75247 | 32. TITLE OF CERTIFIER MD |
|---|---|

**33. PART 1. ENTER THE CHAIN OF EVENTS - DISEASES, INJURIES, OR COMPLICATIONS - THAT DIRECTLY CAUSED THE DEATH. DO NOT ENTER TERMINAL EVENTS SUCH AS CARDIAC ARREST, RESPIRATORY ARREST, OR VENTRICULAR FIBRILLATION WITHOUT SHOWING THE ETIOLOGY. DO NOT ABBREVIATE. ENTER ONLY ONE CAUSE ON EACH LINE.**

| | | Approximate interval Onset to death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition —→ resulting in death) | a. COMPLICATIONS OF SEPSIS | UNKNOWN |
| | Due to (or as a consequence of): | |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated, the events resulting in death) LAST | b. CUTANEOUS ABSCESS UPPER LIMB | UNKNOWN |
| | Due to (or as a consequence of): | |
| | c. | |
| | Due to (or as a consequence of): | |
| | d. | |

| PART 2. ENTER OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I. ADULT FAILURE TO THRIVE | 34. WAS AN AUTOPSY PERFORMED? ☐ Yes ☒ No |
|---|---|
| | 35. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☐ Yes ☐ No |

| 36. MANNER OF DEATH ☒ Natural ☐ Accident ☐ Suicide ☐ Homicide ☐ Pending Investigation ☐ Could not be determined | 37. DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ No ☐ Previously ☐ Probably ☐ Unknown | 38. IF FEMALE: ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to one year before death ☐ Unknown if pregnant within the past year | 39. IF TRANSPORTATION INJURY, SPECIFY: ☐ Driver/operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify) |
|---|---|---|---|

| 40a. DATE OF INJURY(mm-dd-yyyy) | 40b. TIME OF INJURY | 40c. INJURY AT WORK? ☐ Yes ☐ No | 40d. PLACE OF INJURY (e.g. Decedent's home, construction site, restaurant, wooded area) |
|---|---|---|---|

| 40e. LOCATION (Street and Number, City,State,Zip Code) | 40f. COUNTY OF INJURY |
|---|---|

| 41. DESCRIBE HOW INJURY OCCURRED |
|---|

| 42a. REGISTRAR FILE NO. 02004926 | 42b. DATE RECEIVED BY LOCAL REGISTRAR APRIL 29, 2021 | 42c. REGISTRAR REGISTRAR - CITY OF DALLAS, ELECTRONICALLY FILED |
|---|---|---|

EDR NUMBER 000044445000460

This is a true and correct copy of the record as registered in the State of Texas. Issued under the authority of Section 191.051, Health and Safety Code.



ISSUED     DEC 02 2021

*Margarita A. Carrasco*
Margarita A. Carrasco
Local Registrar

WARNING: THIS DOCUMENT HAS A DARK BLUE BORDER AND A COLORED BACKGROUND
ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE



*Left margin text:* WARNING The penalty for knowingly making a false statement in this form can be 2-10 years in prison and fine up to $10,000. Health and Safety Code, Sec. 195.003.

VS-112 REV 1/2/06

SFO2533984

# LAST WILL AND TESTAMENT

## OF

## ROBIN ANN TUCKER

**Prepared by:**

**THE HALE LAW FIRM P.C.**
417 W. Main Street
Waxahachie, Texas 75165

214-446-5080
214-446-5081 (facsimile)

# LAST WILL AND TESTAMENT OF ROBIN ANN TUCKER

I, ROBIN ANN TUCKER, of Dallas County, Texas, make this my Last Will and Testament, and I revoke all Wills and Codicils previously made by me.

## ARTICLE I.
### Identification

**A.**     **Husband.** My husband's name is JOHN OWEN TUCKER. All references in this Will to "my husband" are to him.

**B.**     **Children.** I have one daughter, JANICE E. CROCKER. All references in this Will to "my daughter" are to her.

## ARTICLE II.
### Specific Gifts

I give all of my interest in any motor vehicles, boats and personal watercraft, household goods, appliances, furniture and furnishings, pictures, silverware, china, glass, books, clothing, jewelry or other articles of personal use or ornament, and other tangible personal property of a nature, use or classification similar to the foregoing to my daughter, or if my daughter fails to survive me, to those of my daughter's descendants who survive me per stirpes, with particular items to be allocated as they may agree, or if they cannot agree, as my Executor shall decide. If any beneficiary hereunder is a minor, my Executor may distribute such minor's share to such minor or for such minor's use to any person with whom such minor is residing or who has the care or control of such minor without further responsibility, and the receipt of the person to whom such minor's share is distributed shall be a complete discharge of my Executor. The cost of packing and shipping such property to any such beneficiary shall be charged against my estate as an expense of administration.

## ARTICLE III.
### Residue

I give all of the residue of my estate to my daughter. If my daughter fails to survive me, I give all of the residue of my estate to those of my daughter's descendants who survive me per stirpes. If neither my daughter nor any of my daughter's descendants survives me, I give all of the residue of my estate to my heirs.



1

## ARTICLE IV.
### Executor Appointments

**A.**     **Executor.** I appoint my daughter, JANICE E. CROCKER, to be Independent Executrix of my Will and estate. If JANICE E. CROCKER fails to qualify, dies, resigns, becomes incapacitated, or otherwise ceases to serve, I appoint my son-in-law, ROBERT M. CROCKER, to be Independent Executor of my Will and estate.

**B.**     **Bond; Independent Administration.** To the extent permissible by law, no bond, surety, or other security shall be required of my Executor in any jurisdiction. No action shall be required in any court in relation to the settlement of my estate other than the probating and recording of my Will and, if required by law, the return of an inventory, appraisement, and list of claims of my estate. An affidavit in lieu of inventory may be substituted for an inventory, appraisement, and list of claims if permitted by law.

**C.**     **Expenses and Compensation.** Every Executor shall be reimbursed for the reasonable costs and expenses incurred in connection with such Executor's duties. Every Executor shall be entitled to fair and reasonable compensation for services rendered by such Executor in an amount not exceeding the customary and prevailing charges for services of a similar character at the time and place such services are performed.

**D.**     **Ancillary Executors.** If my estate contains property located in another state or a foreign jurisdiction and my Executor cannot or chooses not to serve under the laws thereof, my Executor shall have the power to appoint an ancillary individual or corporate Executor of such property.

**E.**     **Multiple Executors.** Unless another meaning is clearly indicated or required by context or circumstances, the term "Executor" shall also mean and include all persons or entities who may at any time be serving and any Co-Executors, alternates, or successors. Except as otherwise specifically provided in this Will, if Co-Executors are designated to serve hereunder or if Co-Executors are already serving, and one such Co-Executor declines to serve, fails to qualify, dies, resigns, becomes incapacitated, or otherwise ceases to serve for any reason, then the remaining Executor or Co-Executors, as the case may be, shall serve or continue to serve in such capacity.

**F.**     **Actions by Co-Executors.** In all matters relating to my estate, the decision of a majority of the Executors then serving shall control. Any writing signed by the persons whose decision shall control shall be valid and effective for all purposes as if signed by all such Executors.



2

## ARTICLE V.
## Executor Powers

Each Executor shall, to the extent permitted by law, act independently and free from the control of any court as to my estate (and as to all of the property of my estate). Each Executor shall have and possess all powers and authorities conferred by statute or common law in any jurisdiction in which such Executor may act, including all powers and authorities conferred by the Texas Estates Code and by any future amendments thereto, except for any instance in which such powers and authorities may conflict with the express provisions of this Will, in which case the express provisions of this Will shall control. In addition to such powers and authorities, each Executor shall have and possess the following powers and authorities (each of which shall be exercisable in the discretion of such Executor) with respect to my estate, and the following provisions shall apply to my estate:

(1)    To retain, without liability for any depreciation or loss occasioned by such retention, any property which was owned by me when my Executor determines that, because of the circumstances involved, my estate would be better served by not diversifying the investment in such property;

(2)    To exchange, sell or lease for cash, property or credit, or to partition, publicly or privately, at such prices, on such terms, times and conditions and by instruments of such character and with such covenants as my Executor deems proper, all or any part of the properties of my estate, specifically including the power to sell and convey real property and the power to execute deeds with regard to any such sale or conveyance, and no vendee or lessee shall be required to look to the application of any funds paid to my Executor;

(3)    To borrow money from any source (including any Executor) and to mortgage, pledge, or in any other manner encumber all or any part of the properties of my estate as may be advisable in the judgment of my Executor for the advantageous administration of my estate;

(4)    To make, in the discretion of my Executor, any distribution required or permitted to be made to any beneficiary under this Will in any of the following ways when such beneficiary is a minor or is incapacitated: (i) to such beneficiary directly; (ii) to the guardian or conservator of such beneficiary's person or estate; (iii) by applying the required or permitted distribution for the benefit of such beneficiary; (iv) to a person or financial institution serving as custodian for such beneficiary under a uniform transfers to minors act of any state; (v) by reimbursing or advancing funds to the person who is actually taking care of such beneficiary (even though such person is not the legal guardian or conservator) for expenditures made or to be made by such person for the benefit



3

of such beneficiary; and (vi) by managing such distribution as a separate fund on the beneficiary's behalf, subject to the beneficiary's continuing right to withdraw the distribution; and the written receipts of the persons receiving such distributions shall be full and complete acquittances to my Executor;

(5)     To access, control, use, cancel, deactivate, or delete my Digital Accounts and Digital Assets, and to access, control, use, deactivate, or dispose of my Digital Devices. "Digital Accounts" are electronic systems for creating, generating, sending, sharing, communicating, receiving, storing, displaying, or processing information which provides access to a Digital Asset which is stored on any type of Digital Device, regardless of the ownership of the Digital Device upon which the Digital Asset is stored. "Digital Assets" mean data, files, text messages, emails, documents, audio, video, images, sounds, social media content, social networking content, apps, codes, health care records, health insurance records, credit card points, travel-related miles and points, computer source codes, computer programs, software, software licenses, databases, or the like, including access credential such as usernames, passwords and answers to secret questions, which are created, generated, sent, communicated, shared, received, or stored by electronic means on a Digital Device. "Digital Devices" are electronic devices that can create, generate, send, share, communicate, receive, store, display, or process information;

(6)     To make divisions, partitions, or distributions in money or in kind, or partly in each, whenever required or permitted to divide, partition, or distribute all or any part of my estate; and, in making any such divisions, partitions, or distributions, the judgment of my Executor in the selection and valuation of the assets to be so divided, partitioned, or distributed shall be binding and conclusive; and, further, my Executor shall be authorized to make distributions from my estate in divided or undivided interests and on a pro rata or non-pro rata basis and to adjust distributions for resulting differences in valuation;

(7)     To invest and reinvest the properties of my estate in any kind of property whatsoever, real or personal (including oil, gas and other mineral leases, royalties, overriding royalties and other interests), whether or not productive of income, and such investments and reinvestments may be made without regard to the proportion that such property or property of a similar character held may bear to my entire estate if my Executor determines that, because of the circumstances involved, my estate would be better served by not diversifying such investment or reinvestments; and

(8)     To enter into any transaction on behalf of my estate (including loans to beneficiaries for adequate security and adequate interest) despite the fact that another party to any such transaction may be (i) a trust of which any Executor under this Will is also a trustee; (ii) an estate of which any Executor under this Will is also an executor, personal representative or administrator, including my



4

estate; (iii) a business or trust controlled by any Executor under this Will or of which any such Executor, or any director, officer or employee of any such corporate Executor is also a director, officer or employee; or (iv) any beneficiary or Executor under this Will acting individually.

## ARTICLE VI.
### Miscellaneous

**A.    Spendthrift Provisions.** Prior to the actual receipt of property by any beneficiary, no property (income or principal) distributable under this Will shall, voluntarily or involuntarily, be subject to anticipation or assignment by any beneficiary, or to attachment by or to the interference or control of any creditor or assignee of any beneficiary, or taken or reached by any legal or equitable process in satisfaction of any debt or liability of any beneficiary, and any attempted transfer or encumbrance of any interest in such property by any beneficiary hereunder prior to distribution shall be void.

**B.    Survivorship Provisions.** No person shall be deemed to have survived me if such person shall die within 30 days after my death. Any person who is prohibited by law from inheriting property from me shall be treated as having failed to survive me.

**C.    Payment of Debts.** I direct that all of my legal debts, funeral and testamentary expenses, costs and expenses of administration of my estate, and all estate, inheritance, transfer and succession taxes (Federal, State and others) upon or with respect to any property required to be included in my gross estate under the provisions of any law, and whether or not passing hereunder, shall be paid as soon after my death as in the opinion of my Executor is practical and advisable. If at the time of my death any of my property is subject to a mortgage, lien, or other debt, I direct that the devisee taking such property shall take it subject to such mortgage, lien, or other debt, and that such person shall not be entitled to have the obligation secured thereby paid out of my general estate. My Executor is specifically given the right to renew, refinance and extend, in any form that my Executor deems best, any secured or unsecured debt or charge existing at the time of my death. Under no circumstances shall my Executor be required to prepay any debt of mine.

**D.    Descendants.** References to "descendant" or "descendants" mean lineal blood descendants of the first, second or any other degree of the ancestor designated; provided, however, such references shall include, with respect to any provision of this Will, descendants who have been conceived at any specific point in time relevant to such provision and who thereafter survive birth; and provided, further, an adopted child and such adopted child's lineal descendants by blood or adoption shall be considered under my Will as lineal blood descendants of the adopting parent or parents and of anyone who is by blood or adoption a lineal ancestor of



5

the adopting parent or of either of the adopting parents.

     **E.**    **Discretion.** Whenever in this Will an action is authorized in the discretion of my Executor, the term "discretion" shall mean the absolute and uncontrolled discretion of such Executor.

     **F.**    **Incapacitated.** A beneficiary shall be deemed "incapacitated" if my Executor, in my Executor's discretion, determines that such beneficiary lacks the ability, due to a physical or mental condition, to manage his or her own personal and financial affairs. My Executor shall be deemed "incapacitated" if and for as long as (i) a court of competent jurisdiction has made a finding to that effect, (ii) a guardian or conservator of such Executor's person or estate has been appointed by a court of competent jurisdiction and is serving as such, or (iii) two physicians (licensed to practice medicine in the state where my Executor is domiciled at the time of the certification, and one of whom shall be board certified in the specialty most closely associated with the cause of such Executor's incapacity) certify that due to a physical or mental condition my Executor lacks the ability to manage his or her own personal and financial affairs. An Executor shall immediately cease to serve upon being deemed incapacitated.

     **G.**    **Heirs.** References to "heirs" are to those persons who would inherit separate personal property from the person designated under the statutes of descent and distribution of the State of Texas, if such person died intestate and single at such time.

     **H.**    **Per Stirpes.** When a distribution is to be made to a person's descendants "per stirpes," property shall be divided into as many equal shares as there are (i) living children of such person, if any, and (ii) deceased children who left descendants who survive such person. Each living child shall receive one share, and the share that would have passed to each deceased child shall be divided in a similar manner (by reapplying the preceding rule) among his or her descendants who survive such person. For example, if a person has deceased children and surviving children when a distribution is to be made, the assets will be divided into equal shares at the child level and distributed per stirpes below that level; however, if the person has no surviving children at such time, that equal division will still be made at the child level and distributed per stirpes below that level. This definition is intended to override any conflicting or contrary common law definition.



6

I, ROBIN ANN TUCKER, as testatrix, after being duly sworn, declare to the undersigned witnesses and to the undersigned authority that this instrument is my will, that I willingly make and execute it in the presence of the undersigned witnesses, all of whom are present at the same time, as my free act and deed, and that I request each of the undersigned witnesses to sign this will in my presence and in the presence of each other. I now sign this will in the presence of the attesting witnesses and the undersigned authority on _Many 2_____, 2018.

_Robin Ann Tucker_
ROBIN ANN TUCKER, Testatrix

The undersigned, _Waleeca Turner_____ and _Tareta Miles_____, each being above fourteen years of age, after being duly sworn, declare to the testatrix and to the undersigned authority that the testatrix declared to us that this instrument is the testatrix's will and that the testatrix requested us to act as witnesses to the testatrix's will and signature. The testatrix then signed this will in our presence, all of us being present at the same time. The testatrix is eighteen years of age or over (or being under such age, is or has been lawfully married, or is a member of the armed forces of the United States or of an auxiliary thereof or of the Maritime Service), and we believe the testatrix to be of sound mind. We now sign our names as attesting witnesses in the presence of the testatrix, each other, and the undersigned authority on _May 2_____, 2018.

_Waleea Turner, BSN_
Witness Signature
_825 W. Kearny Street_
Address
_Mesquite, Tx 75149_
Address

_Tareta Miles  HSKP DIR_
Witness Signature
_825 W Kearney St_
Address
_Mesquite Tx 75149_
Address

Subscribed and sworn to before me by the said ROBIN ANN TUCKER, the testatrix, and by the said _Waleeca Turner_____ and _Tareta Miles_____. witnesses, on _May 2_____, 2018.

ERIN MARIE PIWOWARSKI
Notary Public, State of Texas
Comm. Expires 09-19-2020
Notary ID 129131946

_Erin Piwowarski_
Notary Public, State of Texas

_R2_

7